IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ILLINOIS UNION INSURANCE
COMPANY,

§
§
§

      Plaintiff,

§
§

      v.

§
§

**Civil Action No. _____**

US BUS CHARTER & LIMO INC. d/b/a
US COACHWAYS, and JAMES BULL,
*individually and on behalf of a class*,

§
§
§
§

      Defendants.

§
§

## COMPLAINT FOR DECLARATORY RELIEF

1.      For its complaint against DEFENDANTS US BUS CHARTER & LIMO INC. d/b/a US COACHWAYS ("US COACHWAYS"), and JAMES BULL ("BULL"), individually and on behalf of a class, (collectively hereafter "DEFENDANTS"), Plaintiff ILLINOIS UNION INSURANCE COMPANY ("ILLINOIS UNION"), by and through its attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, hereby states as follows:

## INTRODUCTION

2.      This declaratory judgment action involves an insurance coverage dispute arising from a professional liability insurance policy issued by ILLINOIS UNION to US COACHWAYS, Policy No. G24011999 007 (the "Policy").

3.      In controversy is whether the Policy provides coverage for a putative class action brought by BULL, captioned *Bull v. US Coachways, Inc.*, Civil Action No. 1:14-cv-05789 (N.D. Ill.) (the "Underlying Lawsuit"), alleging violations by US COACHWAYS of the federal Telephone Consumer Protection Act, 47 U.S. Code § 227, *et seq.* ("TCPA"), and for the related settlement (the "Settlement").

7827389v.1

4.      Pursuant to the terms of the Settlement, US COACHWAYS paid $50,000 to resolve all claims asserted against it in the Underlying Lawsuit. In addition, US COACHWAYS agreed to the entry of a judgment against it for $49,932,375, subject to a covenant not to execute and the assignment to BULL and the Class of all US COACHWAYS' rights under the Policy against ILLINOIS UNION. The Policy's aggregate limit of liability is $5 million. Accordingly, there is an actual controversy between the parties herein.

5.      ILLINOIS UNION seeks a judgment declaring that it has no coverage obligations under the Policy for the Underlying Lawsuit, or the resulting Settlement, because the Complaint does not allege any conduct falling within the Policy's Insuring Agreement, which requires a Wrongful Act by any Insured regarding the performance of or failure to perform Professional Services. The Underlying Lawsuit, therefore, does not trigger coverage in the first instance.

6.      In the event the Court should determine that a Wrongful Act was alleged in the Underlying Lawsuit which falls within the Policy's Insuring Agreement, ILLINOIS UNION seeks a judgment declaring that the Policy does not afford coverage in the event it is established that US COACHWAYS engaged in intentional and/or knowing violations of the TCPA, for which coverage is expressly excluded and would violate public policy.

7.      Further, ILLINOIS UNION seeks a judgment declaring that, if there is coverage under the Policy, any such coverage is limited to the $50,000 in potentially covered Damages actually paid by US COACHWAYS pursuant to the Settlement, plus reasonable and necessary Claims Expenses incurred by US COACHWAYS in connection with the Underlying Lawsuit, less the $25,000 per Claim Retention.[1]

---

[1] Because the limitation of coverage to that which the Insured is legally obligated to pay is separately specified both in the Policy's definition of Damages and in the Insuring Agreement, each provision is addressed in a separate cause of action.

2

## JURISDICTION AND VENUE

8.      This is an action for declaratory judgment pursuant to the Federal Declaratory Act, 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57, for the purpose of determining an actual controversy between the parties, as hereinafter more fully detailed below.

9.      This action is currently ripe for adjudication, as an actual controversy exists between the parties.

10.     The jurisdiction of this Court is premised upon 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest. A declaratory judgment is sought regarding the coverage obligations for the Underlying Lawsuit, which resulted in a $49,932,375 settlement, under a liability insurance policy providing an aggregate limit of liability of $5 million.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), in that US COACHWAYS maintains its principal place of business in this District and certain events or alleged omissions giving rise to this action, including the issuance of the subject Policy, occurred in this District.

## PARTIES

12.     Plaintiff ILLINOIS UNION is a corporation organized pursuant to the laws of the State of Illinois and maintains its principal place of business in Chicago, Illinois.

13.     Defendant US COACHWAYS is a corporation organized pursuant to the laws of the State of New Jersey and maintains its principal place of business in Staten Island, NY.

14.     Defendant BULL is a resident of the State of Ohio who filed the Underlying Lawsuit and acted at all times as the purported representative of the putative classes set forth therein. On November 9, 2016, the court issued an order (the "Final Order") in the Underlying

3

Lawsuit granting final approval of a Class Action Settlement between BULL and US COACHWAYS (the aforementioned "Settlement"). Pursuant to the Final Order, BULL was appointed as Class Representative for a class of persons described as:

> All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date of the Settlement Agreement.

("Settlement Class" or "Class"). Additionally, the following attorneys were appointed as Class Counsel:

Brian K. Murphy
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH 43215

Matthew McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760

Edward Broderick
Anthony Paronich
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110

Under the terms of the Settlement, US COACHWAYS assigned all of its rights against ILLINOIS UNION to the Class, as represented by BULL and his attorneys, who are responsible to protect the interest of the class members.

## FACTUAL BACKGROUND

### I.    The Policy

15.    Illinois Union Insurance Company ("ILLINOIS UNION") issued Miscellaneous Professional Liability Policy No. G24011999 007 (the "Policy"), to US Bus Charter & Limo Inc. d/b/a US Coachways ("US COACHWAYS" or the "Insured") for the policy period of November

4

7827389v.1

9, 2013 to November 9, 2014. The Policy provides a $5 million Aggregate Limit of Liability for each Claim, subject to a $25,000 per Claim Retention. The terms and conditions of the Policy are incorporated herein by reference and a true and correct copy is attached hereto as Exhibit "A."

16.     The Insuring Clause at Section I.A. of the Policy provides that:

> The Company will pay on behalf of the Insured all sums in excess of the Retention that the Insured shall become legally obligated to pay as Damages and Claims Expenses because of a Claim first made against the Insured and reported to the Company during the Policy Period by reason of a Wrongful Act committed on or subsequent to the Retroactive Date and before the end of the Policy Period.

17.     Section II.F. of the Policy defines "Damages," in relevant part, as "any compensatory amount which the Insured becomes legally obligated to pay on account of any covered Claim, including judgments ... awards and settlements." "Damages" expressly does not include "any amount for which the Insured is not financially liable or legally obligated to pay."

18.     Section II.D. of the Policy defines "Claims Expenses," in relevant part, as "reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by ... the Insured ... in the investigation and defense of covered Claims."

19.     Section II.C.2. of the Policy defines "Claim," in relevant part, as "a civil proceeding against any Insured for monetary damages, non-monetary damages or injunctive relief, commenced by the service of a complaint or a similar pleading."

20.     Section II.T. of the Policy defines "Wrongful Act" as "any actual or alleged negligent act, error, omission, misstatement, misleading statement or Personal Injury Offense committed by the Insured or by any other person or entity for whom the Insured is legally liable in the performance of or failure to perform Professional Services."

21.     Section II.P. of the Policy defines "Professional Services" as "only those services specified in Item 7 of the Declarations performed for others by an Insured or by any other person

5

or entity for whom the Insured is legally liable." Professional Services is defined at Item 7 of the Declarations as "Solely in the performance of professional services as a bus charter broker for others for a fee."

22.     Pursuant to Endorsement PF-19872 (10/05) EO, "Professional Services also means Travel Agency Operations performed for others by an Insured or by any person or entity for whom the Insured is legally liable." "Travel Agency Operations" is defined in the endorsement as "services necessary or incidental to the conduct of travel agency business, including the procurement or attempted procurement for a fee or commission of travel, lodging, or guided tour accommodations, or counseling or offering recommendations concerning such accommodations."

23.     Further, Section III.A. of the Policy precludes coverage for Damages or Claims Expenses on account of any Claim:

> alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission, or any intentional or knowing violation of the law by an Insured, however, this exclusion shall not apply to Claims Expenses or the Company's duty to defend any such Claim unless and until there is an adverse admission by, finding of fact, or final adjudication against any Insured as to such conduct, at which time the Insured shall reimburse the Company for all Claims Expenses incurred[.]

24.     The Policy was issued in the State of New York to US COACHWAYS at its Staten Island address, through the New York City office of CRC Insurance Services Inc., a New York licensed insurance broker.

## II.     The Underlying Lawsuit

25.     On July 29, 2014, BULL filed a putative class action under the federal TCPA against US COACHWAYS in the United States District Court for the Northern District of Illinois, *Bull v. US Coachways, Inc.*, Civil Action No. 1:14-cv-05789 (N.D. Ill.) (the aforementioned "Underlying Lawsuit"). On December 11, 2014, BULL filed the operative

7827389v.1

Amended Class Action Complaint ("Complaint"). The allegations of the Complaint are incorporated herein by reference and a true and correct copy is attached hereto as Exhibit "B."

26. By the Complaint, BULL alleged that the defendant US COACHWAYS violated the TCPA by using an automated telephone dialing system ("ATDS") to send "thousands of" unsolicited SMS text message advertisements without the recipients' prior consent, including to numbers on the "National Do Not Call Registry." Specifically, BULL alleged that:

> Beginning in at least the end of 2013, while [BULL's] telephone number was on the National Do Not Call Registry, and continuing for months thereafter, [US COACHWAYS] caused mass transmissions of wireless spam to the cell phones of what they apparently hoped were potential customers of [US COACHWAYS'] charter bus and limo services.

(Compl., ¶ 19).

27. The Complaint includes four examples of the SMS text message advertisements purportedly sent by or on behalf of US COACHWAYS, each of with were promotional in nature to advertise its own services, including:

- a December 16, 2013 text allegedly stating: "Happy Holidays from US Coachways: For holiday party rentals of buses, limos & mini-buses call 800-359-5991. Text HELP for help, STOP to end.Msg&DataRatesMayAply" (Compl., ¶¶ 20-21);

- a January 28, 2014 text allegedly stating: "US Coachways: Call 800-359-5991 to learn about great winter deals! Be sure to book early. Msg&data rates may apply. Text HELP for help, STOP to unsubscribe." (Compl., ¶¶ 22-23);

- a March 5, 2014 text allegedly stating: "US Coachways: Learn about great winter deals as low as $399! Book now at uscoachways.com or call 800-359-5991. Text HELP for help, STOP to unsubscribe." (Compl., ¶ 24); and

- an April 15, 2014 text allegedly stating: "US Coachways Bus Rentals: Book before we're sold out! Availability is limited. Goto http://uscoachways.com or call 800-359-5991. Text HELP for help, STOP to end." (Compl., ¶ 25).

28.     As alleged in the Complaint, BULL purported to represent two classes of persons, "tentatively defined" as:

Class One

>    All persons within the United States who received one or more text message advertisements on behalf of [US COACHWAYS] at any time in the four years prior to the filing of the Complaint continuing through the date any class is certified;

Class Two

>    All persons within the United States who received more than one text message advertisements on behalf of [US COACHWAYS] at any time in the four years prior to the filing of the Complaint continuing through the date any class is certified while the telephone number that the text message was sent to was on the National Do Not Call Registry;

(Compl., ¶ 33).

29.     The Complaint purports to state two causes of action.  The first alleged "knowing and/or willful violations" of the TCPA and sought to recover "treble damages of up to $1,500 for each and every call in violation of the statute."  (Compl., ¶ 51).  The second alleged negligent violations of the TCPA and sought to recover "an award of $500 in statutory damages for each and every call in violation of the statute."  (Compl., ¶ 55).  Additionally, in connection with each cause of action, the Complaint sought injunctive relief prohibiting future violations of the TCPA by US COACHWAYS.  (Compl., ¶¶ 52, 56).

**III.     The Coverage Dispute**

30.     By letter dated August 18, 2014, ILLINOIS UNION, by and through its claims agent ACE North American Claims ("ACE") (now Chubb North American Claims), denied coverage for the Underlying Lawsuit because, among other things, the Policy's Insuring Agreement specifically limits coverage to a Wrongful Act in the performance of "Professional Services," which is defined, in relevant part, as "the performance of professional services as a

8

bus charter broker for others for a fee." A true and correct copy of the August 18, 2014 letter is attached hereto as Exhibit "C."

31.  As ACE explained, the Underlying Lawsuit did not arise from any actual or alleged act, error, omission, misstatement, misleading statement or Personal Injury Offense committed by the Insured in the performance of professional services as a bus charter broker for others for a fee. Rather, the Underlying Lawsuit arose from the alleged use of the ATDS to transmit text messages for advertising purposes only, and does not contain any allegations unique to the performance of the US COACHWAYS' services as a bus charter broker. Additionally, US COACHWAYS was not alleged to have provided any services to BULL or the Class for a fee as required under the terms of the Policy.

32.  In addition, the August 18, 2014 letter informed US COACHWAYS that it may request a re-evaluation of ILLINOIS UNION's coverage position. ACE also specifically reserved the right to deny coverage based upon grounds other than those expressly set forth in the letter.

33.  US COACHWAYS subsequently provided ILLINOIS UNION with the Amended Complaint filed on December 11, 2014. By letter dated January 13, 2015, ILLINOIS UNION, by and through its claims agent ACE, responded that "the amended complaint does not alter ACE's prior coverage determination that **there is no coverage for this matter.**" (Emphasis in original). A true and correct copy of the January 13, 2015 letter is attached hereto as Exhibit "D."

34.  As with the August 18, 2014 letter, the January 13, 2015 letter also informed US COACHWAYS that it may request a re-evaluation of ILLINOIS UNION's coverage position.

9

Further, ACE again reserved the right to deny coverage based upon grounds other than those expressly set forth in the letter.

35.    US COACHWAYS did not request a reevaluation or otherwise contest the coverage determinations set forth in the August 18, 2014 and January 13, 2015 letters. However, on July 23, 2015, BULL, through counsel, sent a letter contesting the denial of coverage and demanding that ILLINOIS UNION engage in settlement negotiations. A true and correct copy of the July 23, 2015 letter is attached hereto as Exhibit "E."

36.    In his letter, BULL asserted that ILLINOIS UNION's failure to participate in settlement negotiations would amount to "bad faith." However, the only arguments advanced by BULL in support of his assertion that the Policy affords coverage for the Underlying Lawsuit in the first instance were:  (1) that "Illinois Union's position would apparently convert the policy into an auto liability policy;" and (2) "marketing and customer retention are a vital part of the US Coachways business model, and is how US Coachways performs services as a bus charter broker for a fee." BULL did not raise any issues regarding the endorsement to the Policy amending the definition of Professional Services to include "Travel Agency Operations." Further, BULL's July 23, 2015 letter also did not include any demand that ILLINOIS UNION settle the Underlying Lawsuit within the limits of the Policy or otherwise propose settlement for any specific amount.

37.    On August 24, 2015, ILLINOIS UNION, through counsel, responded to the July 23, 2015 letter from BULL. ILLINOIS UNION maintained its position that there is no coverage obligation under the Policy for the Underlying Lawsuit and, therefore, declined BULL's request to participate in settlement negotiations.   Additionally, ILLINOIS UNION noted that it "continues to reserve all rights under the Policy, at law, or in equity with regard to this matter or

10

otherwise." A true and correct copy of the August 24, 2015 letter is attached hereto as Exhibit "F."

38.     As ILLINOIS UNION explained in its August 24, 2015 letter:

The Insuring Agreement of the policy specifically limits coverage to a Wrongful Act in the performance of Professional Services. The policy defines Professional Services to mean the performance of professional services as a bus charter broker for others for a fee. Advertising in violation of the TCPA, or otherwise, simply does not concern services unique to a bus charter broker. Further, the complaint does not allege that the wrongful conduct in dispute was in any way rendered to others for a fee, but rather includes allegations that US Bus was performing marketing services for itself. For this reason, Illinois Union must decline your invitation to participate in settlement discussions or mediation, as the allegations do not fall within the scope of the Insuring Agreement. We thus respectfully direct you to US Bus's defense counsel to discuss settlement.

Thus, even if Professional Services were in issue in the Underlying Lawsuit – which ILLINOIS UNION denies – the advertising in question was not undertaken by US COACHWAYS for others for a fee, as mandated under the terms of the Policy.

39.     ILLINOIS UNION received no response from BULL or US COACHWAYS regarding its August 24, 2015 letter, or any other subsequent correspondence from either party regarding coverage under the Policy for the Underlying Lawsuit.

**IV.     The Settlement**

40.     On March 9, 2016, US COACHWAYS entered into a settlement with BULL, individually and on behalf of the class of persons he purports to represent (the aforementioned "Settlement Class"), resolving all claims against US COACHWAYS in exchange for a judgment of $49,932,375. The terms and conditions of the agreement ("Settlement Agreement") comprising the Settlement are incorporated herein by reference and a true and correct copy is attached hereto as Exhibit "G."

11

7827389v.1

41.    As previously discussed, the proposed Settlement Class consisted of:

All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date of the Settlement Agreement.

(Settlement Agr., ¶ 10).

42.    The recitals set forth in the Settlement Agreement include, among other things, a statement that BULL's expert "identified 391,459 violative text messages, yielding potential exposure for US Coachways of $195,729,500," (*id.*, ¶ F), and that "US Coachways is without the financial means to satisfy such a judgment, or indeed to fund a reasonable, approvable class-wide settlement," (*id.*, ¶ G). Additionally, the recitals include a statement that, in its August 24, 2015 letter, ILLINOIS UNION "fail[ed] to cite the amended definition of Professional Services which includes 'Travel Agency Operations.'" (*Id.*, ¶ I).

43.    Under the terms of the Settlement Agreement, US COACHWAYS' liability is limited to $50,000, paid in five installments, for the purpose of funding notice to the Settlement Class.  (*Id.*, ¶ 4).  The full terms of the provision regarding US COACHWAYS' payment are as follows:

4.    **Payment for Initial Notice.**  If the Court preliminarily approves the Agreement, US Coachways agrees to deposit $50,000, paid in five equal monthly payments commencing ten days following the Court's preliminary approval in escrow with Kurtzman Carson Consultants ("KCC"), the Class Administrator, as escrow agent.  This payment by US Coachways represents the full extent of its monetary contribution towards satisfying the Judgment.  Initial notice to the Class shall be paid from this initial payment.

(*Id.*, ¶ 4).

44.    The provision of the Settlement Agreement which sets forth the judgment to be entered against US COACHWAYS further specifies that it may not be satisfied from or executed

12

against any assets of US COACHWAYS. (*Id.*, ¶ 5). The relevant terms of the provision

regarding the judgment to be entered against US COACHWAYS are as follows:

> 5. **Judgment.** US Coachways agrees to the entry of judgment against it in
> the amount of $49,932,375 on the First Amended Complaint in favor of the Class,
> *provided, however*, that the Judgment may not be satisfied from or executed on
> any assets or property of Defendants, and/or their past, present or future officers,
> directors, employees, members, shareholders, agents, executors, affiliates,
> divisions, subsidiaries, successors and assigns, other than Illinois Union.

(*Id.*, ¶ 5).

45.     The Settlement Agreement also includes a provision whereby US COACHWAYS

assigns all rights to payments from ILLINOIS UNION to the Class. (*Id.*, ¶6). The full terms of

the assignment are as follows:

> 6. **Assignment of Claims and Rights Against Illinois Union.** As part of
> this Agreement, US Coachways assigns to the Class (as represented by Plaintiff
> and his attorneys) all of US Coachways' claims against and rights to payments
> from Illinois Union.

(*Id.*, ¶ 6).

46.     The Settlement Agreement further includes a covenant by BULL and the Class

not to execute the judgment against US COACHWAYS, but instead to seek recovery only from

ILLINOIS UNION. The full terms of the covenant not to execute are as follows:

> 7. **Covenant Not to Execute and Not to Sue.** Plaintiff and the Class agree
> not to seek to execute on, attach or otherwise acquire any property or assets of
> Defendant and/or past, present and future officers, directors, employees,
> members, shareholders, agents, executors, subsidiaries, divisions, affiliates,
> successors and assigns of any kind other than from the Insurance Policy and
> claims against Illinois Union to satisfy or recover on the Judgment and agree to
> seek recovery to satisfy the Judgment only against Illinois Union. After
> preliminary approval, Class Counsel will undertake to prosecute actions to permit
> recovery against Illinois Union. The Parties recognize and acknowledge that it is
> possible that no recovery may be obtained from Illinois Union.

(*Id.*, ¶ 7).

## V.   Settlement Approval

47.     On March 17, 2016, the court in the Underlying Lawsuit issued an order granting preliminary approval to the Settlement ("Preliminary Order"), which was amended on August 3, 2016 to extend certain deadlines ("Amended Order"). The terms of the Preliminary Order and Amended Order are incorporated herein by reference and a true and correct copy of each is attached hereto as Exhibits "H" and "I," respectively.

48.     On November 9, 2016, the court issued an order granting final approval to the Settlement (the aforementioned "Final Order").   Among other things, the Final Order incorporates the terms of the Settlement Agreement, certifies the Settlement Class, and appoints BULL as Class Representative and his attorneys as Class Counsel. The terms of the Final Order are incorporated herein by reference and a true and correct copy is attached hereto as Exhibit "J."

49.     The Final Order includes a provision entering judgment against US COACHWAYS, which provides:

> 17.     The Court enters judgment against Defendant US Coachways, Inc. in the total amount of $49,932,375 on the First Amended Complaint in favor of the Class, from which the partial payment of $50,000 by US Coachways, Inc. shall be deducted, *provided however*, that the Judgment may not be satisfied or executed on any assets or property of Defendant, officers, directors, employees, members, shareholders, agents, executors, successors and assigns, other than Illinois Union. The Judgment may not be satisfied by attaching, executing on, or otherwise acquiring any other asset or property of Defendant and/or its officers, directors, employees, members, shareholders, agents, executors, successors and assigns (apart from US Coachways' interest in the Illinois Union Insurance Policy and any bad faith rights against Illinois Union, which US Coachways has assigned to Plaintiff and the Class). This provision does not release the Judgment against Defendant to be entered herein, nor does it release the asserted claims that are the basis for the entry of the Judgment or the right to enforce the Judgment (which claims are merged into this Judgment) in favor of the Plaintiff and the Class against Illinois Union.

(Final Order, ¶ 17).

14

50.     The Final Order also specifically enjoins BULL or the Class from seeking any

further recovery from US COACHWAYS, stating:

> 16.     The Court adjudges that the Plaintiff and the Class are enjoined from
> seeking to execute on, attach or otherwise acquire any property or assets of
> Defendant and/or its officers, directors, employees, members, shareholders,
> agents, executors, successors and assigns of any kind other than from the
> Insurance Policy and claims against Illinois Union to satisfy or recover on the
> Judgment and agree to seek recovery to satisfy the Judgment only against Illinois
> Union.

(*Id.*, ¶ 16).

### FIRST CAUSE OF ACTION
(Declaratory Judgment – Insuring Agreement/Professional Services)

51.     ILLINOIS UNION repeats, restates, and reiterates each and every allegation set

forth in paragraphs "1" through "50" of this Complaint, as if fully set forth herein.

52.     As set forth above, the Insuring Clause at Section I.A. of the Policy provides that:

> The Company will pay on behalf of the Insured all sums in excess of the
> Retention that the Insured shall become legally obligated to pay as Damages and
> Claims Expenses because of a Claim first made against the Insured and reported
> to the Company during the Policy Period *by reason of a Wrongful Act* committed
> on or subsequent to the Retroactive Date and before the end of the Policy Period.

(Emphasis added).

53.     As previously described, "Wrongful Act" is defined at Section II.T. of the Policy

as "any actual or alleged negligent act, error, omission, misstatement, misleading statement or

Personal Injury Offense committed by the Insured or by any other person or entity for whom the

Insured is legally liable *in the performance of or failure to perform Professional Services*."

(Emphasis added).

54.     Further, "Professional Services" is defined at Section II.P. of the Policy as "only

those services specified in Item 7 of the Declarations performed for others by an Insured or by

any other person or entity for whom the Insured is legally liable." "Professional Services" is

15

7827389v.1

defined at Item 7 of the Declarations as "Solely in the performance of professional services *as a bus charter broker for others for a fee*." (Emphasis added).

55.    Pursuant to Endorsement PF-19872 (10/05) EO, "Professional Services also means Travel Agency Operations *performed for others* by an Insured or by any person or entity for whom the Insured is legally liable." (Emphasis added).  "Travel Agency Operations" is defined in the endorsement as "*services* necessary or incidental to the *conduct of travel agency business*, including the procurement or attempted procurement *for a fee* or commission of travel, lodging, or guided tour accommodations, or counseling or offering recommendations concerning such accommodations." (Emphasis added).

56.    In the Underlying Lawsuit BULL only alleged that US COACHWAYS violated the TCPA by using an ATDS to send "thousands of" unsolicited SMS text message advertisements without the recipients' prior consent, including to numbers on the "National Do Not Call Registry." No allegation was asserted at any time that US COACHWAYS performed any service to others for a fee. Rather, BULL alleged that:

> Beginning in at least the end of 2013, while [BULL's] telephone number was on the National Do Not Call Registry, and continuing for months thereafter, [US COACHWAYS] caused mass transmissions of wireless spam to the cell phones of what they apparently hoped were potential customers of [US COACHWAYS'] charter bus and limo services.

(Compl., ¶ 19).

57.    These allegations of advertising in violation of the TCPA do not concern services unique to a bus charter broker or a travel agency. Further, the Complaint does not allege that the wrongful conduct in dispute was in any way rendered to others for a fee, but rather includes allegations that US COACHWAYS was performing marketing services for itself.  The Underlying Lawsuit, therefore, does not allege any Wrongful Act in connection with the performance of or failure to perform "Professional Services," as defined in the Policy.

16

58.    For the foregoing reasons, the allegations set forth in the Complaint filed in the Underlying Lawsuit do not trigger coverage under the Policy's Insuring Clause in the first instance. Accordingly, ILLINOIS UNION is entitled to entry of a judgment declaring that no coverage is afforded under the Policy for the Underlying Lawsuit or the resulting Settlement.

## SECOND CAUSE OF ACTION
(Declaratory Judgment – Intentional and/or Knowing Violation of Law)

59.    ILLINOIS UNION repeats, restates, and reiterates each and every allegation set forth in paragraphs "1" through "58" of this Complaint, as if fully set forth herein.

60.    Section III.A. of the Policy precludes coverage for Damages or Claims Expenses on account of any Claim:

> alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission, or *any intentional or knowing violation of the law by an Insured*, however, this exclusion shall not apply to Claims Expenses or the Company's duty to defend any such Claim unless and until there is an adverse admission by, finding of fact, or final adjudication against any Insured as to such conduct, at which time the Insured shall reimburse the Company for all Claims Expenses incurred[.]

("Exclusion A")(emphasis added).

61.    The First Count alleged in the Complaint filed in the Underlying Lawsuit purports to assert claims based on US COACHWAYS "numerous and multiple knowing and/or willful violations of the TCPA." (Compl., ¶ 50). The above-quoted Exclusion A plainly bars coverage for "any intentional or knowing violation of the law by an Insured," including coverage for Claims Expenses where such conduct is established by "an adverse admission by, finding of fact, or final adjudication against any Insured." Additionally, the public policy of the State of New York precludes indemnification for intentional misconduct.

62.    For the foregoing reasons, if it were established that US COACHWAYS engaged in intentional and/or knowing violations of the TCPA, coverage for the Underlying Lawsuit

would be barred under Exclusion A of the Policy and on public policy grounds. Accordingly, to the extent that such conduct is established in this action, ILLINOIS UNION is entitled to entry of a judgment declaring that no coverage is afforded under the Policy for the Underlying Lawsuit or the resulting Settlement.

### THIRD CAUSE OF ACTION
(Declaratory Judgment – Definition of Damages)

63. ILLINOIS UNION repeats, restates, and reiterates each and every allegation set forth in paragraphs "1" through "62" of this Complaint, as if fully set forth herein.

64. Again, the Insuring Clause at Section I.A. of the Policy provides that:

> The Company will pay on behalf of the Insured all sums in excess of the Retention that the Insured shall become *legally obligated to pay as Damages and Claims Expenses* because of a Claim first made against the Insured and reported to the Company during the Policy Period by reason of a Wrongful Act committed on or subsequent to the Retroactive Date and before the end of the Policy Period.

(Emphasis added).

65. As discussed above, "Damages" is defined at Section II.F. of the Policy, in relevant part, as "any compensatory amount which the Insured becomes *legally obligated to pay* on account of any covered Claim, including judgments ... awards and settlements." (Emphasis added). "Damages" expressly does not include "any amount for which the Insured *is not financially liable or legally obligated to pay*." (Emphasis added).

66. Under the terms of the Settlement Agreement, US COACHWAYS' liability is limited to $50,000, paid in five installments, for the purpose of funding notice to the Settlement Class. (Compl., ¶ 4). The provision of the Settlement Agreement regarding the judgment to be entered against US COACHWAYS further specifies that it may not be satisfied from or executed against any assets of US COACHWAYS. (*Id.*, ¶ 5). The Settlement Agreement also includes a

18

7827389v.1

covenant by BULL and the Class not to execute the judgment against US COACHWAYS, but instead to seek recovery only from ILLINOIS UNION. (*Id.*, ¶ 7).

67.     Thus, under the terms of the Settlement, US COACHWAYS is not financially or legally obligated to pay any portion of the $49,932,375 judgment against it, other than its initial payments totaling $50,000. Therefore, only the portion of the settlement actually paid by US COACHWAYS would constitute potentially covered Damages under the Policy.

68.     Additionally, while US COACHWAYS has not submitted any invoices regarding its defense to ILLINOIS UNION for payment, we note that potentially covered "Claims Expenses" are specifically limited under Section II.D. of the Policy to "reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by … the Insured … in the investigation and defense of covered Claims." Payment of Claims Expenses and/or Damages is also subject to the applicable $25,000 per Claim Retention.

69.     For the foregoing reasons, ILLINOIS UNION's obligations under the Policy, if any, would be limited to Damages in the amount of $50,000 paid by US COACHWAYS pursuant to the Settlement, plus reasonable and necessary Claims Expenses incurred by US COACHWAYS in defending the Underlying Lawsuit, less the $25,000 per Claim Retention. Accordingly, to the extent it may be determined that there is coverage under the Policy for the Underlying Lawsuit and resulting Settlement, ILLINOIS UNION is entitled to entry of a judgment declaring that its obligations under the Policy are so limited.

### FOURTH CAUSE OF ACTION
(Declaratory Judgment – Insuring Agreement/Damages)

70.     ILLINOIS UNION repeats, restates, and reiterates each and every allegation set forth in paragraphs "1" through "69" of this Complaint, as if fully set forth herein.

7827389v.1

71.     As set forth above, the Insuring Clause at Section I.A. of the Policy provides that:

The Company will pay on behalf of the Insured all sums in excess of the Retention that the Insured shall become *legally obligated to pay as Damages and Claims Expenses* because of a Claim first made against the Insured and reported to the Company during the Policy Period by reason of a Wrongful Act committed on or subsequent to the Retroactive Date and before the end of the Policy Period.

72.     As discussed, under the terms of the Settlement in the Underlying Lawsuit, US COACHWAYS is only legally obligated to pay $50,000. Thus, in the event that this Court should determine that coverage for the Underlying Lawsuit is otherwise afforded, ILLINOIS UNION's coverage obligations for the Settlement are also limited under the terms of the Policy's Insuring Agreement to the amount US COACHWAYS actually paid.

73.     For these additional reasons, ILLINOIS UNION's obligations under the Policy, if any, would be limited to Damages in the amount of $50,000 paid by US COACHWAYS pursuant to the Settlement, plus reasonable and necessary Claims Expenses incurred by US COACHWAYS in defending the Underlying Lawsuit, less the $25,000 per Claim Retention. Accordingly, ILLINOIS UNION is further entitled to entry of a judgment declaring that its obligations under the Policy are so limited.

## **RESERVATION OF RIGHTS**

74.     ILLINOIS UNION repeats, restates, and reiterates each and every allegation set forth in paragraphs "1" through "73" of this Complaint, as if fully set forth herein.

75.     In its August 18, 2014 letter, ILLINOIS UNION, by and through its claims agent ACE, specifically reserved the right to deny coverage based upon grounds other than those expressly set forth in the letter. ILLINOIS UNION repeated that reservation of rights in its January 13, 2015 and August 24, 2015 letters.

76.     ILLINOIS UNION continues to reserves all of its rights, privileges and defenses under the Policies, at law, and in equity, to deny or limit coverage on any of the bases set forth

20

herein or on any other basis. No action taken by or on behalf of ILLINOIS UNION should be interpreted as or deemed a waiver of or estoppel of its rights under the Policy or otherwise.

77.     ILLINOIS UNION's position as to coverage for the Underlying Lawsuit and Settlement is based on the facts presently known. ILLINOIS UNION specifically reserves the right to supplement or amend its coverage position and to seek leave to assert additional claims or defenses revealed through discovery in the action or otherwise.

**WHEREFORE,** in light of the foregoing, Plaintiff ILLINOIS UNION INSURANCE COMPANY respectfully submits that judgment should be entered in its favor and against DEFENDANTS as follows:

a.      on the First Cause of Action, declaring that no coverage is afforded under the Policy for the Underlying Lawsuit or the resulting Settlement because the Complaint does not allege any Wrongful Act by any Insured regarding the performance of or failure to perform Professional Services, as is necessary to trigger coverage in the first instance; or

b.      on the Second Cause of Action, in the event it is established in this action that US COACHWAYS intentionally and/or knowingly violated the TCPA, declaring that no coverage is afforded under the Policy for the Underlying Lawsuit or the resulting Settlement pursuant to Exclusion A and the public policy of the State of New York; or

c.      on the Third Cause of Action, in the event it may be determined that there is coverage under the Policy for the Underlying Lawsuit and resulting Settlement, declaring that ILLINOIS UNION'S obligations under the Policy are limited to Damages in the amount of $50,000 paid by US COACHWAYS pursuant to the Settlement, plus reasonable and necessary Claims Expenses incurred by US COACHWAYS in defending the Underlying Lawsuit in an amount to be proven, less the $25,000 per Claim Retention; or

d.      on the Fourth Cause of Action in the event it may be determined that there is coverage under the Policy for the Underlying Lawsuit and resulting Settlement, declaring that ILLINOIS UNION'S obligations under the Policy are limited to Damages in the amount of $50,000 paid by US COACHWAYS pursuant to the Settlement, plus reasonable and necessary Claims Expenses incurred by US COACHWAYS in defending the Underlying Lawsuit in an amount to be proven, less the $25,000 per Claim Retention; and/or

e.      awarding ILLINOIS UNION attorney fees and costs incurred in this action together with such other further and necessary relief as this Court may deem just and necessary.

Dated:      New York, New York
            November 29, 2016                    Respectfully submitted,

                                                 WILSON, ELSER, MOSKOWITZ,
                                                 EDELMAN & DICKER LLP


                                                 By: /s/David S. Sheiffer
                                                     David S. Sheiffer
                                                     Richard W. Boone Jr.
                                                     Attorneys for Plaintiff
                                                     Illinois Union Insurance Company
                                                     150 East 42nd Street
                                                     New York, New York 10017-5639
                                                     Phone:    (212) 490-3000
                                                     Fax:      (212) 490-3038
                                                     E-mail:   David.Sheiffer@wilsonelser.com
                                                               Richard.Boone@wilsonelser.com

7827389v.1

# EXHIBIT A



10 Exchange Place, 13th Floor       *201.356.5251*      *tel*
Jersey City  NJ 07302                                   *fax*
                                                        *cell*

**ace westchester**
**specialty group**

daniel.toutoungi@acegroup.com
www.ace-ina.com

**Daniel Toutoungi**
*Professional Associate*

November 25, 2013

Brandon Testa
CRC INSURANCE SERVICES INC
1120 AVENUE OF THE AMERICAS
SUITE 4081
NEW YORK  NY 10036

RE:    **Insured:  US Bus Charter & Limo Inc. dba US Coachways**
       Coverage:  Miscellaneous Professional Liability
       Policy No:  G24011999 007
       **Company Paper: Illinois Union Insurance Company**
       Policy Form:  PF-18873 (11/05) & PF-18874 (02/06)
       Policy Period:  11/09/2013 to 11/09/2014

Dear Brandon,

We are pleased to enclose the original and two (2) copies of the captioned policy.

As producer of record, you are responsible for collecting and filing all necessary surplus lines taxes, fees and documentation in accordance with state surplus lines laws and/or regulations, if applicable.

Also, as a reminder, all claim notices under this policy should be provided in writing to the following address:

ACE Westchester Specialty Group
Attention:  Professional Risk Claims Unit
PO Box 5119
Scranton, PA  18505-0549

We have reviewed the policy and trust you will find it to be in order.  Should you have any questions or concerns, please advise us promptly.

Thank you for working with us on the placement of this risk.  We appreciate your support and look forward to working with you in the future.

Regards,

Daniel Toutoungi
Professional Associate
ACE Westchester – Professional Risk

*One of the ACE Group of Insurance & Reinsurance Companies*

# *Policy Declarations*



| Policy No. **G24011999 007** | Renewal of: **G24011999 006** |
|---|---|

**NAMED INSURED & MAILING ADDRESS**
US Bus Charter & Limo Inc. dba US Coachways
100 St. Mary's Avenue,Suite 2B
Staten Island  NY 10305

**POLICY PERIOD**

| When Coverage Begins: | **11/09/2013** | 12:01 A. M. Local Time At Named Insured's Address |
|---|---|---|
| When Coverage Ends: | **11/09/2014** | 12:01 A. M. Local Time At Named Insured's Address |

| **INSURING COMPANY** | Producer's Name & Address: |
|---|---|
| **Illinois Union Insurance Company** | **CRC INSURANCE SERVICES INC**<br>**1120 AVENUE OF THE AMERICAS**<br>**SUITE 4081**<br>**NEW YORK  NY 10036**<br><br>Producer No:  **72993W** |

> THE INSURER NAMED HEREIN IS NOT LICENSED BY THE STATE OF NEW YORK, NOT SUBJECT TO ITS SUPERVISION, AND IN THE EVENT OF THE INSOLVENCY OF THE INSURER, NOT PROTECTED BY THE NEW YORK SECURITY FUNDS.   THE POLICY MAY NOT BE SUBJECT TO ALL OF THE REGULATIONS OF THE INSURANCE DEPARTMENT PERTAINING TO POLICY FORMS.

**ATTACHED FORMS**
This policy is completed by the following: **PF-18873 (11/05)** and forms and endorsements attached thereto.

**Authorization Information**

Dated: **11/25/2013**

_____
Authorized Representative

SLPD (03/08)



**Illinois Union Insurance Company**

# ACE Advantage®
## Miscellaneous Professional Liability Policy
### Declarations

This Policy is issued by the stock insurance company listed above.

THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY.  EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.

THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES.  FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.

TERMS THAT APPEAR IN BOLD FACE TYPE HAVE SPECIAL MEANING.  PLEASE REFER TO SECTION II, DEFINITIONS.

| Policy No.    G24011999 007 | Renewal of: G24011999 006 |
|---|---|

| | | |
|---|---|---|
| Item 1. | **Named Insured**<br>Principal Address: | US Bus Charter & Limo Inc. dba US Coachways<br>100 St. Mary's Avenue,Suite 2B<br>Staten Island,  NY 10305 |
| Item 2. | **Policy Period:** | From 12:01 a.m. 11/09/2013  To 12:01 a.m. 11/09/2014<br>(Local time at the address shown in Item 1) |
| Item 3. | Limit of Liability (including **Claims** Expenses) | |
| | $ 5,000,000 | Each **Claim** |
| | $ 5,000,000 | Aggregate Limit |
| | $ 5,000.00 | **Disciplinary Proceeding Claims Expenses** Aggregate Limit (in addition to the Each **Claim** and Aggregate Limits set forth above) |
| Item 4. | Retention<br>$ 25,000 | Each **Claim** |
| Item 5. | Premium | $45,959 |
| Item 6. | **Retroactive Date** (if applicable):     11/09/2005 | |
| Item 7. | **Professional Services**: Solely in the performance of professional services as a bus charter broker for others for a fee. | |

| | | |
|---|---|---|
| Item 8. | Notice to **Company**: | |
| | A. | Notice of **Claim** or **Wrongful Act**: |
| | | PO Box 5119<br>Scranton, PA 18505-0549<br>First Notices Fax:<br>215.640.5040 or 1.877.746.4671<br>General Correspondence Fax:<br>1.866.635.5688<br>First Notices Email:<br>WSGPROFRISKCLAIMS@ACEGROUP.COM |
| | B. | All other notices: |
| | | Chief Underwriting Officer<br>ACE Westchester Specialty Group – Professional Risk<br>11575 Great Oaks Way, Suite 200<br>Alpharetta, GA 30022 |

| | |
|---|---|
| Item 9. | Optional **Extended Reporting Period**:<br>Additional Premium: 100% of last annual premium<br>Additional Period: 12 Months |

| | |
|---|---|
| Item 10. | Endorsements attached upon **Policy** effective date: See attached |

IN WITNESS WHEREOF, the **Company** has caused this **Policy** to be countersigned by a duly authorized representative of the **Company**.

DATE: 11/25/2013

_____
Authorized Representative

 **Illinois Union Insurance Company**

# ACE Advantage®
# Miscellaneous Professional
# Liability Policy

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insureds** and the **Company** agree as follows:

I.  INSURING AGREEMENT AND DEFENSE

A.  Insuring Agreement

The **Company** will pay on behalf of the **Insured** all sums in excess of the Retention that the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** because of a **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period** by reason of a **Wrongful Act** committed on or subsequent to the **Retroactive Date** and before the end of the **Policy Period**.

B.  Defense

1.  The **Company** shall have the right and duty to defend any covered **Claim** brought against the **Insured** even if the **Claim** is groundless, false or fraudulent.  The **Insured** shall not admit or assume liability or settle or negotiate to settle any **Claim** or incur any **Claims Expenses** without the prior written consent of the **Company** and the **Company** shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary.

2.  The **Company's** duty to defend ends if the **Insured** refuses to consent to a settlement acceptable to the claimant/plaintiff and the **Company**.  In such event, the **Company** shall tender a check to the **Insured** for the recommended settlement amount, and shall be relieved of any further duty or obligation, other than for covered **Claims Expenses** incurred until the date of such refusal. The **Insured** thereafter has the duty to defend at its own expense.  This paragraph shall not apply to a settlement in which the total incurred **Damages** and **Claims Expenses** do not exceed the Retention.

3.  The **Company** shall not be obligated to commence or continue to investigate, defend, pay or settle any **Claim** after the applicable Limit of Liability specified in Item 3 of the Declarations has been exhausted, or after the **Company** has deposited the remaining available Limit of Liability with a court of competent jurisdiction.  In such case, the **Company** shall withdraw from investigation, defense, payment or settlement of such **Claim** and shall tender control of such **Claim** to the **Insured**.

4.  If the **Insureds** attend hearings, depositions or trials at the request of the **Company**, the **Company** shall reimburse the **Insureds** for actual loss of earnings and reasonable and necessary expenses due to such attendance, up to $250.00 per day and a maximum amount of $5,000 for all **Claims** covered by this **Policy**.  Such reimbursement payments by the **Company** to the **Insured** are not subject to the Retention and shall not reduce the Limits of Liability.

II.  DEFINITIONS

A.  **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Company** in connection with the **Company** underwriting this **Policy** or any policy of which this **Policy** is a direct or indirect renewal

or replacement or which it succeeds in time. All such applications, attachments, information, and materials are deemed attached to and incorporated into this **Policy**.

B. **Bodily Injury** means injury to the body, sickness, or disease, and death. **Bodily Injury** also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person.

C. **Claim** means:
   1. a written demand against any **Insured** for monetary or non-monetary damages;
   2. a civil proceeding against any **Insured** for monetary damages, non-monetary damages or injunctive relief, commenced by the service of a complaint or similar pleading;
   3. an arbitration proceeding against any **Insured** for monetary damages, non-monetary damages or injunctive relief;
   4. a civil, administrative or regulatory investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document;
   5. a **Disciplinary Proceeding**;
   including any appeal therefrom.

D. **Claims Expenses** means:
   1. reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the **Company**, or by the **Insured** with the **Company's** prior written consent, in the investigation and defense of covered **Claims**; and
   2. premiums for any appeal bond, attachment bond or similar bond, provided the **Company** shall have no obligation to apply for or furnish such bond.
   **Claims Expenses** shall not include wages, salaries, fees or costs of directors, officers or employees of the **Company** or the **Insured**.

E. **Company** means the insurance company providing this insurance.

F. **Damages** means any compensatory amount which the **Insured** becomes legally obligated to pay on account of a covered **Claim**, including judgments, any award of prejudgment and post-judgment interest on that part of any judgment paid under this **Policy**, awards and settlements. **Damages** shall not include:
   1. any amount for which the **Insured** is not financially liable or legally obligated to pay;
   2. taxes, fines or penalties;
   3. matters uninsurable under the law pursuant to which this **Policy** is construed;
   4. disgorgement of profits by an **Insured**; cost of an **Insured's** correction; fees, commissions, expense or costs paid to or charged by an **Insured**;
   5. the cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief; or
   6. any amount relating to a **Disciplinary Proceeding**, other than **Claims Expenses**.

   **Damages** includes punitive and exemplary damages and the multiplied portion of any multiple damage award, to the extent such damages are insurable under the internal laws of any jurisdiction which has a substantial relationship to the **Insured**, the **Company**, this **Policy** or such **Claim**.

G. **Disciplinary Proceeding** means any proceeding by a regulatory or disciplinary official, board or agency to investigate charges of professional misconduct by an **Insured** in the performance of **Professional Services**.

H. **Extended Reporting Period** means the period for the extension of coverage, if elected, described in Section IV, **Extended Reporting Period**.

I. **Insured** means:
   1. the **Named Insured**;
   2. any **Subsidiary**, but only with respect to **Wrongful Acts** which occur while it is a **Subsidiary**;
   3. any past or present principal, partner, officer, director, trustee or employee of the **Named Insured** or **Subsidiary** thereof (and if the **Named Insured** is a partnership, limited liability

partnership or limited liability company, then any general or managing partner or principal thereof), but only with respect to **Professional Services** performed on behalf of the **Named Insured** or any **Subsidiary**;

4.  the estate, heirs, executors, administrators or legal representatives of any **Insured** described in paragraph 3 above in the event of such **Insured's** death, incapacity, insolvency, or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this **Policy**; and

5.  independent contractors who are natural persons, but only with respect to **Professional Services** performed on behalf of the **Named Insured** or **Subsidiary** thereof.

J. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

K. **Named Insured** means the entity or person specified in Item 1 of the Declarations.

L. **Personal Injury Offense** means one or more of the following offenses:
1.  false arrest, detention or imprisonment;
2.  malicious prosecution;
3.  defamation, including libel and slander, and disparagement;
4.  publication or an utterance in violation of an individual's right to privacy; and
5.  invasion of the right to private occupancy, including wrongful entry or eviction.

M. **Policy** means collectively, the Declarations, the **Application**, this policy form and any endorsements.

N. **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section VI.E, Termination of the Policy.

O. **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county or municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, or noise.

P. **Professional Services** means only those services specified in Item 7 of the Declarations performed for others by an **Insured** or by any other person or entity for whom the **Insured** is legally liable.

Q. **Property Damage** means:
1.  physical injury to, or loss or destruction of, tangible property, including the loss of use thereof; and
2.  loss of use of tangible property which has not been physically injured, lost, damaged or destroyed.

R. **Retroactive Date** means the date specified in Item 6 of the Declarations.

S. **Subsidiary** means any entity, other than a joint venture, in which the **Named Insured**:

1.  owns interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of the board of directors if such entity is a corporation, the management committee members if such entity is a partnership, the members of the management board if such entity is a limited liability company; or

2.  has the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Named Insured** or any **Subsidiary**, to elect, appoint or designate a majority of the board of directors if such entity is a corporation, the management

committee members if such entity is a partnership, the members of the management board if such entity is a limited liability company,

on or before the inception date of the **Policy**, either directly or indirectly, in any combination, by one or more other **Subsidiaries**.

T.   **Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading statement or **Personal Injury Offense** committed by the **Insured** or by any other person or entity for whom the **Insured** is legally liable in the performance of or failure to perform **Professional Services**.

U.   **Wrongful Employment Practices** means any actual or alleged:
1.   wrongful dismissal or discharge or termination of employment, whether actual or constructive;
2.   employment-related misrepresentation;
3.   violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;
4.   sexual harassment or other unlawful workplace harassment;
5.   wrongful deprivation of a career opportunity or failure to employ or promote;
6.   wrongful discipline of employees;
7.   retaliation against employees for the exercise of any legally protected right or for engaging in any legally protected activity;
8.   negligent evaluation of employees;
9.   failure to adopt adequate workplace or employment policies and procedures;
10.  employment-related libel, slander, defamation, or invasion of privacy;
11.  employment-related wrongful infliction of emotional distress;
12.  any actual or alleged discrimination, sexual harassment, or violation of a natural person's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

III.   EXCLUSIONS

The **Company** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim**:

A.   alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission, or any intentional or knowing violation of the law by an **Insured,** however, this exclusion shall not apply to **Claims Expenses** or the **Company's** duty to defend any such **Claim** unless and until there is an adverse admission by, finding of fact, or final adjudication against any **Insured** as to such conduct, at which time the **Insured** shall reimburse the **Company** for all **Claims Expenses** incurred;

B.   alleging, based upon, arising out of, or attributable to any **Bodily Injury** or **Property Damage**;

C.   alleging, based upon, arising out of, or attributable to any liability of others assumed by the **Insured** under any express, implied, actual or constructive contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

D.   alleging, based upon, arising out of, or attributable to **Professional Services** performed for any entity if at the time the **Professional Services** were performed:
1.   any **Insured**, or any other natural person or entity for whom or which an **Insured** is legally liable, was a partner, director, officer or employee of such entity;
2.   any **Insured**, or any other natural person or entity for whom or which an **Insured** is legally liable, owned, directly or indirectly, 10% or more of any such entity if it was a publicly held company, or 30% or more of any such entity if it was a privately held or not-for-profit company;

E.   brought or maintained by, on behalf of, or in the right of any **Insured**;

F.      alleging, based upon, arising out of or attributable to any **Wrongful Employment Practice;**

G.      alleging, based upon, arising out of, or attributable to any discrimination on any basis, including, but not limited to, race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

H.      alleging, based upon, arising out of or attributable to any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

I.      alleging, based upon, arising out or attributable to any violation of:
        1.   the Employee Retirement Income Security Act of 1974;
        2.   the Securities Act of 1933, the Securities Exchange Act of 1934;
        3.   the Racketeering Influenced and Corrupt Organizations Act of 1970;
        and any rules or regulations promulgated thereunder, amendments thereof, or any similar federal, state or common law;

J.      alleging, based upon, arising out of, or attributable to the gaining in fact of any profit or advantage to which the **Insured** is not legally entitled;

K.      alleging, based upon, arising out of, or attributable to any **Wrongful Act** committed prior to the beginning of the **Policy Period**, if, on or before the earlier of the effective date of this **Policy** or the effective date of any **Policy** issued by the **Company** to which this **Policy** is a continuous renewal or replacement, the **Insured** knew or reasonably could have foreseen that such **Wrongful Act** would result in a **Claim;**

L.      alleging, based upon, arising out of, or attributable to:
        1.   any **Wrongful Act,** fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or
        2.   any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts;**

M.      alleging, based upon, arising out of, or attributable to:
        1.   the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants;** or
        2.   any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants,** or any voluntary decision to do so;

N.      alleging, based upon, arising out of, or attributable to any validity, invalidity, infringement, violation or misappropriation of any patent, copyright, service mark, trademark, trade name, trade secret or any other intellectual property right;

## IV.   EXTENDED REPORTING PERIOD

If the **Company** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Named Insured** terminates or does not renew this **Policy** and does not obtain replacement coverage as of the effective date of such termination or nonrenewal, the **Named Insured** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this **Policy** for at least one **Extended Reporting Period** as follows:

### A.   Automatic **Extended Reporting Period**

The **Named Insured** shall have continued coverage granted by this **Policy** for a period of 60 days following the effective date of such termination or nonrenewal, but only for **Claims** first made

during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. This Automatic **Extended Reporting Period** shall immediately expire upon the purchase of replacement coverage by the **Named Insured**.

B. Optional **Extended Reporting Period**

1. The **Named Insured** shall have the right, upon payment of the additional premium set forth in Item 9 of the Declarations, to an Optional **Extended Reporting Period**, for the period set forth in Item 9 of the Declarations following the effective date of such termination or nonrenewal, but only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

2. This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Company**, and the **Company** receives payment of the additional premium, within 60 days following the effective date of termination or nonrenewal.

3. The 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

C. The **Company** shall give the **Named Insured** notice of the premium due for the Optional **Extended Reporting Period** as soon as practicable following the date the **Named Insured** gives such notice of such election, and such premium shall be paid by the **Named Insured** to the **Company** within 10 days following the date of such notice by the **Company** of the premium due. The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

D. The Automatic and Optional **Extended Reporting Periods** shall be part of and not in addition to the Limit of Liability for the immediately preceding **Policy Period**. The Automatic and Optional **Extended Reporting Periods** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Company** for the **Policy Period** and the Automatic and Optional **Extended Reporting Period**, combined.

E. A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**

V.   LIMITS OF LIABILITY AND RETENTION

A. Limits

1. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Damages** and all **Claims Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claims Expense**.

2. The Each Claim Limit stated in Item 3 of the Declarations shall be the **Company's** maximum aggregate liability for the sum of all **Damages** and **Claims Expenses** because of each **Claim**, including each **Claim** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

3. The Aggregate Limit stated in Item 3 of the Declarations shall be the maximum aggregate liability of the **Company** for all **Damages** and **Claims Expenses** because of all **Claims**, including all **Claims** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

4. The **Disciplinary Proceeding Claims Expenses** Aggregate Limit stated in Item 3 of the Declarations shall be the maximum aggregate liability of the **Company** for **Claims Expenses** for **Disciplinary Proceedings** for each **Policy Period** regardless of the number of

**Disciplinary Proceedings** or **Insureds**. This limit is in addition to and is not part of the **Each Claim** Limit or the Aggregate Limit otherwise stated in Item 3 of the Declarations.

5. **Claims Expenses** shall be part of and not in addition to the Aggregate Limit of Liability shown in Item 3 of the Declarations, and shall reduce such Aggregate Limit of Liability.

6. If the Limit of Liability is exhausted by payment of **Damages** or **Claims Expenses**, the obligations of the **Company** under this **Policy** shall be completely fulfilled and extinguished.

B. Retention

1. The liability of the **Company** shall apply only to that part of **Damages** and **Claims Expenses** which are excess of the Retention amount shown in Item 4 of the Declarations. Such Retention shall be borne uninsured by the **Insureds** and at their own risk. However, the Retention shall not apply to **Claims Expenses** in a **Disciplinary Proceeding**.

2. A single Retention amount shall apply to **Damages** and **Claims Expenses** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

VI. CONDITIONS

A. Notice:

1. The **Insured** shall, as a condition precedent to their rights under this **Policy**, give to the **Company** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after: (i) the end of the **Policy Period**, or (ii) with respect to **Claims** first made during any applicable Automatic or Optional **Extended Reporting Period**, the end of such Automatic or Optional **Extended Reporting Period**.

2. If, during the **Policy Period**, any **Insured** becomes aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds** give written notice to the **Company** during the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period** of:

   a. the identity of the potential claimants;
   b. a description of the anticipated **Wrongful Act** allegations;
   c. the identity of the **Insureds** allegedly involved;
   d. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;
   e. the consequences which have resulted or may result; and
   f. the potential monetary damages;

   then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Company**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3. All notices under any provision of this **Policy** shall be in writing and given by prepaid express courier, certified mail or facsimile transmission properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address shown in Item 1 of the Declarations. Notice to the **Company** of any **Claim** or **Wrongful Act** shall be given to the **Company** at the address set forth in Item 8A of the Declarations. All other notices to the **Company** under this **Policy** shall be given to the **Company** at the address set forth in Item 8B of the Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee, or one day following the date such notice is sent, whichever is earlier.

B. Assistance and Cooperation

The **Insured** shall cooperate with the **Company**, and provide to the **Company** all information and assistance which the **Company** reasonably requests including without limitation attending hearings, depositions and trials and assisting in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any **Claim** covered by this **Policy**. The **Insured** shall immediately forward to the **Company** at the address indicated in Item 8A of the Declarations every demand, notice, summons, or other process or pleadings received by the **Insured** or its representatives. The **Insured** shall do nothing that may prejudice the **Company's** position.

C. Other Insurance

If any **Damages** or **Claims Expenses** covered under this **Policy** are covered under any other valid and collectible insurance, then this **Policy** shall cover such **Damages** or **Claims Expenses**, subject to its terms and conditions, only to the extent that the amount of such **Damages** or **Claims Expenses** are in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**.

D. Representations

1.  The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and accurate and:
    a.  are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**; and
    b.  shall be deemed material to the acceptance of this risk or the hazard assumed by the **Company** under this **Policy**.
    It is understood and agreed that this **Policy** is issued in reliance upon the truth and accuracy of such representations.

2.  In the event the **Application,** including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or hazard assumed by the **Company** under this **Policy**, this **Policy** shall be void ab initio.

E. Termination

1.  This **Policy** shall terminate at the earliest of the following times:
    a.  the effective date of termination specified in a prior written notice by the **Named Insured** to the **Company**;
    b.  60 days after receipt by the **Named Insured** of a written notice of termination from the **Company**;
    c.  10 days after receipt by the **Named Insured** of a written notice of termination from the **Company** for failure to pay a premium when due, unless the premium is paid within such 10 day period;
    d.  upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations; or
    e.  at such other time as may be agreed upon by the **Company** and the **Named Insured**.

2.  If the **Policy** is terminated by the **Named Insured**, the **Company** shall refund the unearned premium computed at the customary short rate. If the **Policy** is terminated by the **Company**, the **Company** shall refund the unearned premium computed *pro rata*. Payment or tender of any unearned premium by the **Company** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

F.  Territory And Valuation

1.  Coverage under this **Policy** shall extend to **Wrongful Acts** taking place anywhere in the world, provided that the **Claim** is made within the jurisdiction, and subject to the substantive laws of the United States of America, Canada, or their territories or possessions.

2.  All premiums, limits, retentions, **Damages** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated, or another element of **Damages** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon, or the other element of **Damages** is due, respectively or if not published on such date, the next date of publication of *The Wall Street Journal*.

G.  Subrogation

In the event of any payment under this **Policy**, the **Company** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

H.  Action Against the **Company** and Bankruptcy

No action shall lie against the **Company**. No person or organization shall have any right under this **Policy** to join the **Company** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Company** be impleaded by any **Insured** or its legal representatives. Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this **Policy**.

I.  Authorization

By acceptance of this **Policy**, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving of notice of **Claim**, the giving or receiving of notice of termination or non renewal, the payment of premiums, the receiving of any premiums that may become due under this **Policy**, the agreement to and acceptance of endorsements, consenting to any settlement, exercising the right to the **Extended Reporting Period,** and the giving or receiving of any other notice provided for in this **Policy**, and all **Insureds** agree that the **Named Insured** shall so act on their behalf.

J.  Alteration, Assignment and Headings

1.  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this **Policy** nor prevent the **Company** from asserting any right under the terms of this **Policy**.

2.  No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Company**.

3.  The titles and headings to the various parts, sections, subsections and endorsements of the **Policy** are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

K. Interpretation

The terms and conditions of this **Policy** shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this **Policy** is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions of this **Policy,** without regard to the authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either any **Insured** or the **Company** and without reference to the reasonable expectations of either the **Insured** or the **Company.**

VII. MATERIAL CHANGES IN CONDITIONS

A. Acquisition or Creation of Another Organization

If, during the **Policy Period,** the **Named Insured:**

1. acquires voting securities in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary;** or
2. acquires any organization by merger into or consolidation with the **Named Insured;**

then, subject to the terms and conditions of this **Policy,** such organization shall be covered under this **Policy** but only with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Company** agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition or creation.

If the total revenue of such acquired organization, as reflected in the then most recent consolidated financial statements of the organization, exceeds 10% of the total revenue of the **Named Insured** and the **Subsidiaries** as reflected in the then most recent consolidated financial statements of the **Named Insured,** the **Named Insured,** as a condition precedent to coverage with respect to such **Insureds,** shall, no later than 60 days after the effective date of such acquisition or creation:

a. give written notice of such acquisition or creation to the **Company;**
b. pay any additional premium required by the **Company;** and
c. agree to any additional terms and conditions of this **Policy** as required by the **Company**.

B. Acquisition of the **Named Insured**

If, during the **Policy Period,** any of the following events occurs:

1. the acquisition of the **Named Insured,** or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or
2. the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of i) the directors of the **Named Insured** if a Corporation; ii) the management committee members of the **Named Insured** if a partnership; iii) the management board of the **Named Insured** if a limited liability company;

then coverage under this **Policy** will continue in full force and effect until termination of this **Policy,** but only with respect to **Claims** for **Wrongful Acts** taking place before such event. Coverage under this **Policy** will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.

C. Termination of a **Subsidiary**

If before or during the **Policy Period** an organization ceases to be a **Subsidiary,** coverage with respect to the **Subsidiary** and its **Insureds** shall continue until termination of this **Policy.** Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary.**

© 2005



*Illinois Union*

INSURANCE COMPANY

525 West Monroe Street, Suite 400
Chicago, IL  60661

# NOTICE

POLICY NO.    G24011999 007

NAME OF INSURED:    US Bus Charter & Limo Inc. dba US Coachways

ADDRESS:                100 St. Mary's Avenue, Suite 2B
                               Staten Island  NY 10305

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be the remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

You further confirm that any applicable state requirement concerning a diligent search for coverage by admitted carriers has been fulfilled in accordance with state law.

Thank you for this placement and your regulatory compliance.

Date:  11/25/2013

WSG-084 (05/11)



### ACE Producer Compensation
### Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04        © ISO Properties, Inc., 2004        **Page 1 of 1**

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013 to 11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

ALL-21101 (11/06) Ptd. in U.S.A.                                                    Page 1 of 1

# SIGNATURE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **US Bus Charter & Limo Inc. dba US Coachways** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G24011999 007** | **11/09/2013 to 11/09/2014** | **11/09/2013** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

CARMINE A. GIGANTI, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

LD-5S23i (12/11)

# SERVICE OF SUIT ENDORSEMENT

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013 to 11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Saverio Rocca, Assistant General Counsel
> ACE Group of Insurance Companies
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

The law of some jurisdictions of the United States of America requires that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

SL-34255 (09/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| US Bus Charter & Limo Inc. dba US Coachways | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| EON | G24011999 007 | 11/09/2013 to 11/09/2014 | 11/09/2013 |
| Issued By (Name of Insurance Company) | | | |
| Illinois Union Insurance Company | | | |

## Fungi Exclusion

It is agreed that:

1.  Section III, Exclusions, is amended by adding the following additional exclusion:

    *   alleging, based upon, arising out of, or attributable to **Fungi**;

2.  Section II, Definitions, is amended by adding the following additional definition:

    *   **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by such fungus, including mold or mildew, but does not include any fungus intended by the **Insured** for consumption.


All other terms and conditions of this **Policy** remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013  to 11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

### Terrorism Exclusion

It is agreed that the Policy is amended as follows:

1.  Section II, Definitions, is amended by adding the following:

    - **Terrorism** means activities against persons, organizations or property of any nature:

        1.  That involve the following or preparation for the following:

            a.  Use or threat of force or violence; or

            b.  Commission or threat of a dangerous act; or

            c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system;  and

        2.  When one or both of the following applies:

            a.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

            b.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objective or to express (or express opposition to) a philosophy or ideology.

2.  Section III, Exclusions, is amended by adding the following:

    - alleging, based upon, arising out of, or attributable to, directly or indirectly, **Terrorism**, including action in hindering or defending against an actual or expected incident of **Terrorism**.  **Damages** and **Claims Expenses** are excluded regardless of any other cause or event that contributes concurrently or in any sequence to such **Damages**.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-19962 (02/06) EO                                    © 2006                                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013 to 11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

### Travel Agent's Endorsement

It is agreed that the **Policy** is amended as follows:

1.  Section III, Exclusions, is amended by adding the following additional exclusions:

    - alleging, based upon, arising out of or attributable to the failure to effect or maintain any insurance or bond;

    - alleging, based upon, arising out of or attributable to commingling of funds;

    - alleging, based upon, arising out of or attributable to hotel security operations;

    - alleging, based upon, arising out of or attributable to invasion, act of foreign enemies, hostilities (whether war being declared or not), civil war, rebellion, revolution, insurrection, military or usurped power, confiscation or nationalization, or destruction of or damage to property by or under the order of any government or public or local authority;

    - alleging, based upon, arising out of or attributable to unauthorized or illegal credit card transactions;

    - alleging, based upon, arising out or attributable to:

        1.  sexual molestation, abuse or harassment, including any alleged direct sexual activity and any allegation that the **Insured** negligently or recklessly employed, investigated, supervised or retained any person who committed such acts, or

        2.  any practice, custom or policy, including any violation of a civil right, that gave rise to, caused, or resulted in such molestation, abuse or harassment;

    - alleging, based upon, arising out of or attributable to a governmental intervention, cease or desist order, insolvency, receivership, bankruptcy, licensing or liquidation of any organization;

2.  Section II, Definitions, is amended as follows:

    a.  The following definition is added:

        - **Travel Agency Operations** shall mean services necessary or incidental to the conduct of travel agency business including the procurement or attempted procurement for a fee or commission of travel, lodging, or guided tour accommodations, or counseling or offering recommendations concerning such accommodations.

    b.  Subsection P, the definition of **Professional Services**, is amended by adding the following:

        **Professional Services** also means **Travel Agency Operations** performed for others by an **Insured** or by any other person or entity for whom the **Insured** is legally liable.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-19872 (10/05) EO                    © 2005                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **US Bus Charter & Limo Inc. dba US Coachways** | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **EON** | **G24011999 007** | **11/09/2013 to 11/09/2014** | **11/09/2013** |

| Issued By (Name of Insurance Company) |
|---|
| **Illinois Union Insurance Company** |

### Insured Definition Amended-Leased, Part Time, Seasonal Employees

It is agreed that Section II, Definitions, Subsection I, the definition of **Insured** is amended by adding the following:

> **Insured** also means any leased, part time, or seasonal employees who are natural persons, but only with respect to **Professional Services** performed on behalf of the **Named Insured** or a **Subsidiary** thereof;

All other terms and conditions of this **Policy** remain unchanged.

Authorized Representative

PF-19236 (12/05) EO                    © 2005                    Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **US Bus Charter & Limo Inc. dba US Coachways** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G24011999 007** | **11/09/2013 to 11/09/2014** | **11/09/2013** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

## Additional Insured (Automatic Pursuant to Contract)

It is agreed that:

1.  Section II, Definitions, subsection I, the definition of **Insured**, is amended by adding the following:

    **Insured** also means any client or customer of the **Named Insured**, but only if a written contract entered into by the **Named Insured** specifically requires that such client or customer be added as an additional **Insured** for professional liability or errors and omissions insurance, and only for **Claims** (i) first made on or after the effective date of this endorsement and (ii) for vicarious or imputed liability of such client or customer which results from **Wrongful Acts** committed solely by the **Named Insured**.

    The **Policy** will not provide coverage for any **Wrongful Act** committed by such client or customer referenced above which is added to this **Policy** as an additional **Insured**.

2.  Section III, Exclusions, is amended by deleting exclusion E, but solely with respect to **Claims** asserted by such client or customer referenced above for **Wrongful Acts** actually or allegedly committed by an **Insured** in the performance of or failure to perform **Professional Services**.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-19806 (02/06) EO                     © 2006                     Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013  to 11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## Defense and Settlement Endorsement

It is agreed that Section I, Insuring Agreement and Defense, subsection B, Defense is amended by deleting numbered paragraph 2 in its entirety and inserting the following:

2.  If the **Insured** refuses to consent to a settlement or a compromise acceptable to the claimant/plaintiff and the **Company**, then the **Company's** liability to pay **Damages** and **Claims Expenses** under this **Policy** with respect to such **Claim** shall be reduced to (i) the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred until the date of such refusal, and (ii) 50% of all subsequent covered **Claims Expenses** in excess of such amount, which sum shall not exceed the unexhausted Limit of Liability specified in Item 3 of the Declarations.  The remaining 50% of **Claims Expenses** and all subsequent **Damages** shall be borne by the **Insureds** uninsured and at their own risk.  In such event, the **Company** shall tender a check to the **Insured** for the recommended settlement amount, and shall be relieved of any further duty or obligation, other than for covered **Claims Expenses** referenced above.  This paragraph shall not apply to a settlement in which the total incurred **Damages** and **Claims Expenses** do not exceed the Retention.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-19861 (11/05) EO                © 2005                Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **US Bus Charter & Limo Inc. dba US Coachways** | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G24011999 007** | **11/09/2013 to 11/09/2014** | **11/09/2013** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

### Spousal Coverage Extension

It is agreed that Section VI, Conditions, is amended by adding the following subsection:

- **Spouses**

  The spouses and legally recognized domestic partners of **Insureds** shall be considered **Insureds** under this **Policy**, but coverage is afforded only for a **Claim** arising solely out of their status as a spouse or domestic partner where the **Claim** seeks damages from marital community property, jointly held property or property transferred from a natural person **Insured** to such spouse or legally recognized domestic partner. No coverage is provided for any **Wrongful Act** actually or allegedly committed by such spouse or legally recognized domestic partner. All of the terms and conditions of this **Policy** including, without limitation, the Retention applicable to **Damages** and **Claims Expenses** incurred by **Insureds** shown in Item 4 of the Declarations shall also apply to **Damages** and **Claims Expenses** incurred by such spouses and legally recognized domestic partners.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

PF-19061 (10/05) EO                    © 2005                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013  to  11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## Contingent Bodily Injury, Property Damage

It is agreed that:

1.   Section III, Exclusions, is amended as follows:

  a.   Subsection B, is amended by adding the following:

   However, this exclusion does not apply if the **Bodily Injury** or **Property Damage** results from a **Wrongful Act** committed by the **Insured** in the performance of **Professional Services,** provided that:

   1)   such **Wrongful Act** was not the proximate cause of such **Bodily Injury** or **Property Damage** and
   2)   there is no other policy applicable to such **Claim**.

  b.   The following exclusions are added, but solely with respect to coverage afforded by this  endorsement:

  - alleging, based upon, arising out of, or attributable to the ownership, maintenance, operation, use, loading of any motor vehicle, aircraft or watercraft owned or operated by or loaned to any **Insured**;
  - for which the **Insured** or any carrier as his insurer may held liable under any workers' compensation, unemployed compensation or disability benefits law, or similar law;
  - to indemnify or contribute with another employer for **Bodily Injury** to any employee of the **Insured** arising out of his or her employment by the **Insured**.

2.   Section VI, Conditions, is amended by adding the following to subsection C, Other Insurance:

  - It is a condition precedent to any coverage afforded by this endorsement that the **Named Insured** maintain in full force and effect during the **Policy Period** Comprehensive General Liability insurance, including Products/Completed Operations and Premises/Operations coverage, covering **Bodily Injury** and **Property Damage** in the amount of $1,000,000 aggregate and applying to the **Named Insured's** operations.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-19145 (12/05) EO                © 2005                Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013  to  11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## Network Security or Privacy Liability Exclusion

1.  Section II, Definitions, is amended by adding the following:

- **Network Security or Privacy Breach** means:

   1.  the failure by the **Insured** to properly handle, manage, store, destroy or otherwise control confidential corporate or personally identifiable information;

   2.  any violation of the **Insured's** privacy policy, or any violation by the **Insured** of:

      (a) the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);
      (b) the Gramm-Leach-Bliley Act of 1999;
      (c) the California Security Breach Notification Act (CA SB 1386);
      (d) Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce; or
      (e) any violation of any other similar state, federal, and foreign identity theft and privacy protection legislation that requires commercial entities that collect personal information to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that personal information has potentially been compromised; or

   3.  a failure in network security, including but not limited to activities performed by the **Insured** to protect against unauthorized access to, unauthorized use of, a denial of service attack directed against, or transmission of malicious code to the **Insured's** computer system.

2.  Section III, Exclusions, is amended by adding the following:

- alleging, based upon, arising out or attributable to a **Network Security or Privacy Breach**.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-23294b (07/08) EO                    © 2008                    Page 1 of 33

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| | | | | Endorsement Number |
|---|---|---|---|---|
| Named Insured **US Bus Charter & Limo Inc. dba US Coachways** | | | | |
| Policy Symbol **EON** | Policy Number **G24011999 007** | Policy Period **11/09/2013 to 11/09/2014** | | Effective Date of Endorsement **11/09/2013** |
| Issued By (Name of Insurance Company) **Illinois Union Insurance Company** | | | | |

## Notice Amended (Variable Number of Days)

It is agreed that Section VI, Conditions, subsection A, Notice is amended by deleting the phrase "30 days" and inserting the phrase "60 days".

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-19252 (12/05) EO                         © 2005                                                   Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **US Bus Charter & Limo Inc. dba US Coachways** | | | |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **EON** | **G24011999 007** | **11/09/2013  to  11/09/2014** | **11/09/2013** |

| Issued By (Name of Insurance Company) |
|---|
| **Illinois Union Insurance Company** |

### Retroactive Date, Specified Layer

It is agreed that solely with respect to that portion of the Each **Claim** and Aggregate Limits of Liability set forth in Item 3 of the Declarations which is $2,000,000 excess of $3,000,000, Item 6 of the Declarations is deleted in its entirety and the following is inserted:

Item 6.     **Retroactive Date** (if applicable): 11/09/2009

All other terms and conditions of this **Policy** remain unchanged

Authorized Representative

PF-19265 (12/05) EO                        © 2005                        Page 1 of 1

## NEW YORK CHANGES - LEGAL ACTION AGAINST THE INSURER

| Named Insured US Bus Charter & Limo Inc. dba US Coachways | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol EON | Policy Number G24011999 007 | Policy Period 11/09/2013 to 11/09/2014 | Effective Date of Endorsement 11/09/2013 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The following provisions are added to the policy, and supercede any provisions to the contrary:

**Legal Action Against the Insurer**

**a.** No person or organization has a right under this policy:

**(1)** To join the insurer as a party or otherwise bring the insurer into an action asking for damages from an **Insured;** or

**(2)** To sue the insurer on this policy unless all of its terms have been fully complied with.

A person or organization may sue the insurer to recover on an agreed settlement or on a final judgment against an insured; but the insurer will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of liability. An agreed settlement means a settlement and release of liability signed by the insurer, the insured and the claimant or the claimant's legal representative.

**Failure to Give Notice**

Failure to give notice to the insurer as required under this policy shall not invalidate any Claim unless the failure to provide such timely notice has prejudiced the insurer. However, no Claim will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

All other terms and conditions of this Policy remain unchanged.

Copyright © 2009

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Named Insured<br>**US Bus Charter & Limo Inc. dba US Coachways** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G24011999 007** | Policy Period<br>**11/09/2013  to 11/09/2014** | Effective Date of Endorsement<br>**11/09/2013** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## Additional Insured Endorsement

It is agreed that Section II, Definitions, subsection I, the definition of **Insured**, is amended by adding the following:

The following entity or individual listed below shall be considered an **Insured**, but only with respect to **Damages** and **Claims Expenses** arising out of **Wrongful Acts** committed or allegedly committed by the **Named Insured** in the performance of or failure to perform **Professional Services**.

The policy will not provide any coverage for **Claims** and **Claims Expenses** arising out of any **Wrongful Act** committed by the entity or individual listed below.

East Islip School District

Additional **Insured**

All other terms and conditions of this **Policy** remain unchanged.

_____

Authorized Representative

PF-19178(12/05)  EO             © 2005             Page 1 of 1

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BULL, on behalf of himself and others similarly situated, | ) ) ) ) Case No. 1:14-cv-05789 |
| Plaintiff, | ) ) ) Judge Rebecca R. Pallmeyer |
| v. | ) ) Magistrate Judge Daniel G. Martin |
| US COACHWAYS, INC., | ) ) CLASS ACTION COMPLAINT |
| Defendant. | ) ) |

### AMENDED CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 et seq., THE TELEPHONE CONSUMER PROTECTION ACT

### Preliminary Statement

"Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, Slip Opinion, Case No. 10-1195 (United States Supreme Court January 18, 2012) (internal citations omitted). In an effort to enforce this fundamental federal right to privacy, Plaintiff files the instant class action complaint alleging violations of 47 U.S.C § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

Defendant has sent out thousands of unlawful text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently

have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

In order to redress these injuries, Plaintiff, on behalf of himself and the proposed class of similarly situated individuals, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendant has sent unwanted text messages in a manner that violates the right of privacy of the putative class members. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful text messages and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

All allegations contained herein are based upon information and belief of Plaintiff or the investigative efforts of the undersigned counsel:

<b><u>Parties</u></b>

1.    Plaintiff James Bull is a resident of the state of Ohio.

2.    Defendant US Coachways, Inc. ("USCI") is a New Jersey corporation with three office locations in the Illinois, including one at 180 N. Stetson St., Suite 3500, Chicago, IL 60601.

<b><u>Jurisdiction & Venue</u></b>

3.    The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

4.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d) because: (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

5.      This Court has personal jurisdiction in this manner because USCI does business throughout the United States, including operating multiple office locations within the State of Illinois. USCI therefore has established minimum contacts showing it has purposefully availed itself to the resources and protection of the State of Illinois.

6.      Venue is proper in the United States District Court for the District of Illinois as USCI is subject to personal jurisdiction in this district, and Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction. *See* 28 U.S.C. § 1391. In addition, Defendant has sent text messages to individuals residing in this District that are the subject of this action.

## TCPA and Text Messaging Background

7.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

8.      An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

9.      Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or

3

incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

10.    Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

11.    A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

### The TCPA prohibits telemarketing calls to numbers listed on the Do Not Call Registry, unless the caller has the recipient's signed, written consent

12.    The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

14.    A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

4

15.     The regulations exempt from liability a caller who has obtained the subscriber's

signed, written agreement to receive telephone solicitations from the caller. *See* 47 C.F.R. §

64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls

may be placed.  *Id.*

***The TCPA bans autodialer
calls to cell phones***

16.     The TCPA's most stringent restrictions pertain to computer-generated

telemarketing calls placed to cell phones.

17.     The TCPA categorically bans persons and entities from initiating telephone calls

using an automated telephone dialing system (or "autodialer") to any telephone number assigned

to a cellular telephone service. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. §

227(b)(1).

**Factual Allegations**

**THE PLAINTIFF PLACES HIS TELEPHONE NUMBER ON THE NATIONAL DO
NOT CALL REGISTRY**

18.     The Plaintiff placed his telephone number that the Defendant called, XXX-XXX-

9808 on the National Do Not Call Registry on July 17, 2005, and has not removed it at any time

since then.

**US COACHWAYS, INC.'S REPEATED TEXTS TO THE PLAINTIFF**

19.     Beginning in at least the end of 2013, while Plaintiff's telephone number was on

the National Do Not Call Registry, and continuing for months thereafter, Defendant USCI

caused mass transmissions of wireless spam to the cell phones of what they apparently hoped

were potential customers of Defendant's charter bus and limo services.

5

20.    For example, on or about December 16, 2013, Plaintiff's cell phone rang,

indicating that a text call was being received.

21.    The "from" field of the transmission was identified cryptically as "302-41" which

is an abbreviated telephone number described above as the SMS short code operated by

Defendant and/or its telemarketing agents. The body of such text message read:

> Happy Holidays from US Coachways: For holiday party rentals of buses, limos &
> mini-buses call 800-359-5991. Text HELP for help, STOP to
> end.Msg&DataRatesMayAply

22.    On January 28, 2014, Plaintiff's cell phone rang again, indicating a text call was

being received.

23.    The "from" field of the transmission was "302-41" and the body of such text

message read read:

> US Coachways: Call 800-359-5991 to learn about great winter deals! Be sure to book
> early. Msg&data rates may apply. Text HELP for help, STOP to unsubscribe.

24.    On March 5, 2014, Plaintiff's cell phone rang for a third time indicating a

message was being received from "302-41" and this time the body of the text message read:

> US Coachways: Learn about great winter deals as low as $399! Book now at
> uscoachways.com or call 800-359-5991. Text HELP for help, STOP to unsubscribe.

25.    The Defendants persistent text spamming of Plaintiff continued on April 15,

2014, when Plaintiff's cell phone rang indicating a text message was being received once again

from "302-41" and the body of the text read:

> US Coachways Bus Rentals: Book before we're sold out! Availability is limited.
> Goto http://uscoachways.com or call 800-359-5991. Text HELP for help, STOP to
> end

26.    Defendant and/or its agents' use of an SMS short code enabled Defendant's mass

transmission of wireless spam to a list of cellular telephone numbers.

6

27.     At no time did Plaintiff consent to the receipt of the above-referenced messages or any other such wireless spam text messages from Defendant.

28.     When sending text messages *en masse* "SMS Short Codes" are used. SMS short codes are essentially shortened phone numbers, and, like phone numbers, are used to identify the sender.

29.     A number of the text messages received by the Plaintiff were sent from SMS Short Code, "302-41".

30.     This fact, as well as the generic content of the text message designed to offer a location wide promotion, the impersonal advertising content of the text message received, and the fact that the Defendant harvested telephone numbers from consumers to send the text messages, demonstrate that the Defendant used an automatic telephone dialing system to place the text message to the Plaintiff.

31.     Because the text message campaign utilized by the Defendant was designed to contact potential customers *en masse*, the ATDS used by the Defendant had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

**Class Action Allegations**

32.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

33.     The Plaintiff seeks to represent two classes, which are tentatively defined, subject to modification after discovery and case development, as:

7

Class One

> All persons within the United States who received one or more text message advertisements on behalf of USCI at any time in the four years prior to the filing of the Complaint continuing through the date any class is certified;

Class Two

> All persons within the United States who received more than one text message advertisements on behalf of USCI at any time in the four years prior to the filing of the Complaint continuing through the date any class is certified while the telephone number that the text message was sent to was on the National Do Not Call Registry;

34.    Collectively, all these persons will be referred to as "Class members."

35.

36.    Excluded from the Class are all Class members who have obtained a settlement or payment from USCI in satisfaction of claims arising from the receipt of unauthorized text messages are excluded from the proposed Class.

37.    Class members are identifiable through phone records and phone number databases.

38.    Given the nature of the automated technology used to transmit the SMS text messages, the potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

39.    Plaintiff is a member of the classes.

40.    The Plaintiff and the classes have all been harmed by the actions of the Defendant.

41.    There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

      a.   Whether the Defendant violated the TCPA by advertising via unsolicited text messages;

      b.   Whether the Defendant can meet their burden of proof with respect to statutory defenses for the telemarketing calls;

      c.   Whether the Defendant conduct was knowing and/or willful;

      d.   Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendant's actions;

      e.   Whether Defendant should be enjoined from engaging in such conduct in the future.

42.    Plaintiff is an adequate representative of the classes because his interests do not conflict with class member interests, he will fairly and adequately protect class member interests, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

43.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and its agents.

44.    The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

45.    The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

46.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

9

47.     The Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

48.     Plaintiff is unaware of litigation concerning this controversy already commenced by others who meet the proposed class definition.

## CAUSES OF ACTION

### FIRST COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

49.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

50.     The foregoing acts and omissions of the Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

51.     As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute.

52.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

### SECOND COUNT

### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

53.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

54.     The foregoing acts and omissions of the Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

55.     As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute.

56.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

1.     That Defendant be restrained from engaging in future telemarketing in violation of the TCPA.

2.     That Defendant, and its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

3.     That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure.

4.     That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

5.     That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

11

PLAINTIFF,
JAMES BULL
By his attorneys,

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Pro Hac Vice*

Brian K. Murphy
Joseph F. Murray
Murray Murphy Moul + Basil LLP
1533 Lake Shore Drive
Columbus, OH 43204
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave, Third Floor
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net
*Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

# EXHIBIT C



ACE North American Claims
P.O. Box 5105
Scranton, PA 18505-0518

201-479-6349 *tel*
877-201-8787 *fax*

Caroline.kennedy@acegroup.com
www.acegroup.com

**Caroline Kennedy**
*Senior Claims Specialist*

August 18, 2014

<u>By email and certified mail</u>
Edward Telmany
US Bus Charter & Limo Inc.
1000 St. Mary's Avenue, Suite 2B
Staten Island, NY 10305
USCoachways@gmail.com

| | |
|---|---|
| **Insured:** | **US Bus Charter & Limo Inc.** |
| **ACE Claim No:** | **JY14J0426052** |
| **Claimant:** | **James Bull** |
| **Policy No:** | **G24011999 007** |

Dear Mr. Telmany:

This letter is to further acknowledge receipt of correspondence, whereby ACE North American Claims ("ACE"), on behalf of Illinois Union Insurance Company (the "Company"),was advised of the above referenced matter. This matter has been noticed by US Bus Charter & Limo Inc. (the "Insured") under its Miscellaneous Professional Liability Policy G24011999 007 (the "Policy"). If the Insured is seeking coverage under any other policies issued by the Company, please let us know as soon as possible.

A claim file has been established with the assigned claim number of **JY14J0426052.** Please refer to this claim number on all future correspondence regarding this matter. The purpose of this letter is to inform you that for the reasons detailed below, there is no coverage for this matter.

<u>Background</u>

A purported class action complaint has been filed by the Plaintiff in which it is alleged that the Insured sent unlawful text messages in violation of the Telephone Consumer Protection Act. It is further alleged that the Insured used an automatic telephone dialing system to place text messages to the Plaintiff. The following causes of action are pleaded in the Complaint: (a) knowing and/or willful violation of the Telephone Consumer Protection Act; and (b) negligent violations of the Telephone Consumer Protection Act. The Plaintiff is seeking to recover statutory damages of $500 for every negligent violation of the Act and $1,500 for each knowing violation. The Plaintiff is also seeking to restrain the Insured from engaging in future telemarketing in violation of the Act.

<u>The Policy</u>

A Miscellaneous Professional Liability Policy was issued to the Insured for the policy period November 9, 2013 to November 9, 2014. The Policy provides for a Limit of Liability of $5,000,000 each Claim and in the Aggregate. The Policy also provides for a Retention of $25,000 each Claim.

With respect to the Claim, we direct your attention to the Insuring Agreement, which provides as follows:

I.      Insuring Agreement and Defense

A.  Insuring Agreement

> The **Company** will pay on behalf of the **Insured** all sums in excess of the Retention that the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** because of a **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period** by reason of a **Wrongful Act** committed on or subsequent to the **Retroactive Date** and before the end of the **Policy Period**.

We also refer to the following definitions:

II.     Definitions

P.     **Professional Services** means only those services specified in Item 7 of the Declarations performed for others by an Insured or by any other person or entity for whom the **Insured** is legally liable.

Item 7 of the Declarations further provides "Solely in the performance of professional services as a bus charter broker for others for a fee".

T.     **Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading statement or **Personal Injury Offense** committed by the **Insured** or by any other person or entity for whom the **Insured** is legally liable in the performance of or failure to perform **Professional Services**.

**Coverage Position**

Please be advised that **there is no coverage for this matter for the following reason**: This Claim does not arise by reason of a Wrongful Act and hence falls outside the scope of coverage provided by the Insuring Agreement. Specifically, the Claim does not arise from any actual or alleged act, error, omission, misstatement, misleading statement or Personal Injury Offense committed by the Insured in the performance of professional services as a bus charter broker for others for a fee. Rather, the Claim arises from the alleged use of automatic telephone dialing system to transmit text messages and it does not contain any allegations relating to the performance of the Insured's services as a bus charter broker. We also note the Insured did not provide any services to the Plaintiff "for a fee".

We strongly recommend that you report this matter to any other insurance carrier that may afford coverage for this matter. Please note that you may request a re-evaluation of the coverage position. Any requests for re-evaluation should be accompanied by additional factual information, documentation, and/or legal precedent which you believe may apply. It should be directed to my attention. In the event of a re-evaluation, the Company reserves all rights under the Policy. Nothing herein shall be construed as a waiver of such rights.

ACE reserves the right to deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all the provisions, terms, conditions, exclusions, endorsements and definitions found in the

Policy and additional facts that may come to ACE's attention. By the same token, ACE will take into consideration any additional information that you provide. Nothing stated herein and no further action taken by ACE or on its behalf should be construed as a waiver of any of its rights under the Policy. On the contrary, by providing this or any prior correspondence to the Insured, engaging in any prior or future discussions with the Insured, or paying or agreeing to pay any amount to or on or behalf of the Insured, ACE does not waive any rights that it has under the Policy at law or in equity and understands the Insured reserves its rights as well.

Yours sincerely

Caroline Kennedy
Senior Claims Specialist
ACE North American Claims

c.c. Via email only
Mr. Brandon Testa
CRC/Crump Insurance Services, Inc.
Brandon.testa@crumpins.com

# EXHIBIT D



ACE North American Claims   201-479-6397 *tel*
Professional Risk   866-635-5687 *fax*
P.O. Box 5105
Scranton, PA 18505-0518   Diane.Fazzolari@acegroup.com
www.acegroup.com

**Diane Fazzolari**
*Claims Director*

January 13, 2015

*By certified mail and email* (USCoachways@gmail.com)
Edward Telmany
US Bus Charter & Limo Inc.
1000 St. Mary's Avenue, Suite 2B
Staten Island, NY 10305

| RE: | **Insured:** | **US Bus Charter & Limo Inc.** |
|---|---|---|
| | **ACE Claim No:** | **JY14J0426052** |
| | **Claimant:** | **James Bull** |
| | **Policy No:** | **G24011999 007** |

Dear Mr. Telmany:

ACE North American Claims ("ACE"), on behalf of Illinois Union Insurance Company (the "Company"), hereby acknowledges receipt of the amended complaint filed on December 11, 2014 in the above referenced matter. The purpose of this letter is to inform you that for the reasons detailed below, the amended complaint does not alter ACE's prior coverage determination **that there is no coverage for this matter.**

### Background

We are in receipt of the amended class action complaint filed by the Plaintiff in which it is alleged that the Insured sent unlawful text messages in violation of the Telephone Consumer Protection Act. It is further alleged that the Insured used an automatic telephone dialing system to place text messages to the Plaintiff. The amended complaint alleges that the Plaintiff placed his telephone number on the Do Not Call Registry on July 17, 2005 and has not removed it at any time since then, and thus was on the registry during the alleged time the Insured sent the purported text messages. The following causes of action are pleaded in the amended complaint: (a) knowing and/or willful violation of the Telephone Consumer Protection Act; and (b) negligent violations of the Telephone Consumer Protection Act. The Plaintiff is seeking to recover statutory damages of $500 for every negligent violation of the Act and $1,500 for each knowing violation. The Plaintiff is also seeking to restrain the Insured from engaging in future telemarketing in violation of the Act.

### The Policy

A Miscellaneous Professional Liability Policy was issued to the Insured for the policy period November 9, 2013 to November 9, 2014. The Policy provides for a Limit of Liability of $5,000,000 each Claim and in the Aggregate. The Policy also provides for a Retention of $25,000 each Claim.

With respect to the Claim, we direct your attention to the Insuring Agreement, which provides as follows:

I. Insuring Agreement and Defense

A. Insuring Agreement

The **Company** will pay on behalf of the **Insured** all sums in excess of the Retention that the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** because of a **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period** by reason of a **Wrongful Act** committed on or subsequent to the **Retroactive Date** and before the end of the **Policy Period**.

We also refer to the following definitions:

II. Definitions

P. **Professional Services** means only those services specified in Item 7 of the Declarations performed for others by an Insured or by any other person or entity for whom the **Insured** is legally liable.
Item 7 of the Declarations further provides "Solely in the performance of professional services as a bus charter broker for others for a fee".
T. **Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading statement or **Personal Injury Offense** committed by the **Insured** or by any other person or entity for whom the **Insured** is legally liable in the performance of or failure to perform **Professional Services**.

**<u>Coverage Position</u>**

Please be advised that the amended complaint does not alter ACE's prior coverage determination that there is no coverage for this matter. The amended complaint, like the original complaint, does not arise by reason of a Wrongful Act and hence falls outside the scope of coverage provided by the Insuring Agreement. Specifically, the Claim does not arise from any actual or alleged act, error, omission, misstatement, misleading statement or Personal Injury Offense committed by the Insured in the performance of professional services as a bus charter broker for others for a fee. Rather, the Claim arises from the alleged use of automatic telephone dialing system to transmit text messages and it does not contain any allegations relating to the performance of the Insured's services as a bus charter broker. We also note the Insured did not provide any services to the Plaintiff "for a fee". Accordingly, for the reasons set forth herein, as well as in our letter dated August 18, 2014, which ACE incorporates herein, ACE hereby advises **that there is no coverage for this matter.**

As previously advised, we strongly recommend that you report this matter to any other insurance carrier that may afford coverage for this matter. Please note that you may request a re-evaluation of the coverage position. Any requests for re-evaluation should be accompanied by additional factual information, documentation, and/or legal precedent which you believe may apply. It should be directed to my attention. In the event of a re-evaluation, the Company reserves all rights under the Policy. Nothing herein shall be construed as a waiver of such rights.

ACE reserves the right to deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all the provisions, terms, conditions, exclusions, endorsements and definitions found in the Policy and additional facts that may come to ACE's attention. By the same token, ACE will take into consideration any additional information that you provide. Nothing stated herein and no further action taken by ACE or on its behalf should be construed as a waiver of any of its rights under the Policy. On the contrary, by providing this or any prior correspondence to the Insured, engaging in any prior or future

discussions with the Insured, or paying or agreeing to pay any amount to or on or behalf of the Insured, ACE does not waive any rights that it has under the Policy at law or in equity and understands the Insured reserves its rights as well.

Sincerely,

Diane Fazzolari
Claims Director
ACE North American Claims

*Via email only*
cc:     Mr. Brandon Testa, CRC/Crump Insurance Services, Inc.
        brandon.testa@crumpins.com

Page 3/3

# EXHIBIT E

# BRODERICK LAW, P.C.

..............................

99 High St., Suite 304
Boston, Massachusetts 02110

Edward A. Broderick

Tel. (617) 738-7080
Fax (617) 830-0327
ted@broderick-law.com

July 23, 2015

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Ms. Susan Rivera
President
Illinois Union Insurance Company
525 West Monroe Street, Suite 400
Chicago, IL 60661

**RECEIPT NUMBER    7010 0780 0000 3218 4704**

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester
11575 Great Oaks Way, Suite 200
Alpharetta, GA 30022

**RECEIPT NUMBERS   7010 0780 0000 3218 4766, 7010 0780 0000 3218 4733**

Re:    *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
        (Northern District of Illinois)

Dear Ms. Rivera and Messrs. Kessler and Casey:

Pursuant to the provisions of N.Y. Ins. Law § 2601, et seq., Georgia Unfair Settlement
Practices Act and Unfair and Deceptive Practices Act, O,C.G.A. § 10-1-370 et seq. and O.C.G.A.
§ 33-6-1, *et seq*. and Illinois 215 ILCS 5/154, I along with my co-counsel, Brian Murphy,
Matthew McCue and Anthony Paronich, write on behalf of the plaintiff, James Bull, ("Plaintiff")
and the nationwide class of consumers he seeks to represent in the above-referenced underlying
consumer class litigation ("Class Litigation"), to make a demand upon Illinois Union Insurance
Company ("Illinois Union") to engage in settlement negotiations. I summarize the relevant law
and facts in this case below.

## BACKGROUND

This case arises under the remedial provisions of the Telephone Consumer Protection Act
("TCPA"), a statute enacted more than twenty years ago in response to consumer "outrage" over

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re:     *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
        (Northern District of Illinois)

July 23, 2015

the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991), *codified at* 47 U.S.C. § 227.

       US Coachways claims to be the largest logistic coach ways solutions company in the country. In order to drive repeat business and secure some new business, US Coachways began sending blast text messages in 2011 to individuals who had booked past trips as well as and individuals who had asked for quotes over the telephone, but decided to not book trips. In order to do this, US Coachways used a marketing platform, Gold Mobile. The Gold Mobile marketing platform allows customers to load lists of cellular telephone numbers and design the content of a text message that is then automatically sent to the entire list.

       The amount of text messages sent in this matter, over 1,000,000 in the last three years, is staggering. An example of the privacy invasions caused by this marketing is indicated in the Plaintiff's own experience with US Coachways. Over the course of three years, the Plaintiff received more than 20 unsolicited text message advertisements. This type of marketing, along with e-mail solicitations, are the two largest forms of marketing engaged in by US Coachways. As their CEO commented in a June 2014 e-mail, "Every month we do an email blast to almost 300,000 customers and text blast to almost 90,000 customers."

       However, The TCPA places restrictions on computer-generated telemarketing calls to cell phones. The general rule is that no person may make a call to a cellular telephone using an automatic telephone dialing system, period. 47 U.S.C. § 227(b)(1)(A)(iii). There is an affirmative defense available if the caller can show that it had the "prior express consent" of the call recipient to receive the call. *Id.* "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27 F.C.C.R. 1830 ¶ 7 (FCC 2012).

       Courts have explained that, "prior express consent" means that a caller is "not permitted to make an automated call to [an individual's] cell phone unless [that individual] had previously said to [the caller]…something like…: 'I give you permission to use an automatic telephone dialing system to call my cellular phone." *Edeh v. Midland Credit Mgmt., Inc.,* 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) aff'd, 413 F. App'x 925 (8th Cir. 2011); *Thrasher-Lyon v. CCS*

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re:   *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
      (Northern District of Illinois)

July 23, 2015

*Commercial, LLC*, No. 11-cv-04473, 2012 WL 3835089, at *3 (N.D. Ill. 2012). Just last year, the
FCC, at the request of the United States Courts of Appeals for the Second Circuit, provided
further guidance regarding consent for entities to use an autodialer to call cellular telephones, as
is alleged here. Notably, the FCC clearly explained the scope of prior express consent stating:

> Consumers who provide a wireless phone number for a limited purpose—for
> service calls only, for example—'do not necessarily expect to receive
> telemarketing calls that go beyond the limited purpose,' and thus have not given
> their consent to receive telemarketing calls. *2012 Rulemaking Order*, 27 FCC
> Rcd. at 1840 (¶ 25).

*See* Exhibit 1, *FCC's Response to Request from the United States Courts of Appeals for the
Second Circuit*, at 5. Courts in the district where this action is pending have interpreted this
Order consistent with protecting the privacy rights of call recipients. In *Kolinek v. Walgreen Co.*,
2014 U.S. Dist. LEXIS 91554 (N.D. Ill. July 7, 2014), Judge Kennelly held:

> The FCC has established no general rule that if a consumer gives his cellular
> phone number to a business, she has in effect given permission to be called at that
> number for any reason at all, absent instructions to the contrary. Rather, to the
> extent the FCC's orders establish a rule, it is that the scope of a consumer's
> consent depends on its context and the purpose for which it is given. Consent for
> one     purpose     does     not     equate     to     consent     for     all     purposes.
>
> This, in the Court's view, is a more natural reading of the TCPA's exception for a
> call "made with the prior consent of the called party."

*Id.* at *10-11. As another Court in the district where this matter is pending held, "the FCC's final
orders are binding on this court under the Hobbs Act." *Griffith v. Consumer Portfolio Servs.,
Inc.*, 838 F.Supp.2d 723, 726 (N.D. Ill. 2011). Here, US Coachways has failed to obtain the
requisite consent to send these individuals the text messages. In fact, US Coachways, after being
compelled in this case, confirmed that it did not have any evidence of consent to send the text
messages at issue.

Grafting phone numbers from prior customers and sending them illegal text messages is a
common tactic, but one which clearly violates the TCPA. In 2012, a Jiffy Lube franchisee agreed
to pay $47,000,000 to resolve a text message marketing suit after it took cellular telephone

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re:     *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
        (Northern District of Illinois)

July 23, 2015

numbers from old invoices and the customer database at a number of its Jiffy Lube locations. *See In re Jiffy Lube International, Inc. Text Spam Litigation*, United States District Court for the Southern District of California, Civil Action No. 11-md-02261, (final approval granted on February 20, 2013). Here, US Coachways violation of the law was not limited to interactions with prior customers, but also to individuals, such as the Plaintiff, who had never actually entered into a transaction with US Coachways, but merely obtained a quote.

## COURTS REGULARLY GRANT CLASS CERTIFICATION IN TCPA CASES

        Not surprisingly, given the scope of illegal telemarketing previously recognized by Congress in implementing the TCPA, the relatively small monetary recovery under the TCPA for each claim, and the simple elements required to prove a TCPA violation, many consumers have sought to enforce their rights under the TCPA via class actions. In fact, in January of 2012, the U.S. Supreme Court issued its opinion in *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), holding that federal courts have federal question jurisdiction under the TCPA, and recognizing that the class action vehicle is the most appropriate way to provide consumers with redress for violations covered by the TCPA, stating:

> Arrow's floodgates argument assumes "a shocking degree of noncompliance" with the Act . . . and seems to us more imaginary than real. The current federal district court civil filing fee is $350. 28 U.S.C. §1914(a). How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court? Lexis and Westlaw searches turned up 65 TCPA claims removed to federal district courts in Illinois, Indiana, and Wisconsin since . . . October 2005 . . . All 65 cases were class actions, not individual cases removed from small-claims court. There were also 26 private TCPA claims brought initially in federal district courts; of those, 24 were class actions.

*Mims*, 132 S. Ct. at 745. Thus, the Supreme Court points to the class action vehicle as an appropriate means by which TCPA claims may be pursued. Since the enactment of the TCPA, trial and appellate courts nationwide have scrutinized and approved consumers' use of the class action vehicle to combat illegal telemarketing. The Seventh Circuit Court of Appeals noted that class certification of TCPA claims is "normal" because the main questions that arise in TCPA class actions are "common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014).

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re: *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
(Northern District of Illinois)

July 23, 2015

The Kansas Supreme Court, looking at the policy behind Rule 23, summarized why TCPA cases are appropriate for class certification:

> We do not agree with the defendant's contention that over 100,000 individual small claims actions would be superior to a single class action. While the defendant in such an action might benefit if only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the TCPA, this small turnout would serve only to frustrate the intent of the TCPA and to protect junk fax advertisers from liability. It would, accordingly, not provide a "superior" method for individual plaintiffs.

*Critchfield Physical Therapy v. Taranto Group, Inc.*, 263 P.3d 767, 780 (Kan. 2011) (certifying a TCPA illegal marketing class Kansas's equivalent of Rule 23(b)(3).

## POTENTIAL EXPOSURE

The TCPA creates a private cause of "action to receive $500 in damages for each such violation,". *See* 47 U.S.C. § 227. Here, with over 1,000,000 text messages sent, US Coachways faces over **$500,000,000** in potential liability from the ATDS class alone. In the face of this level of exposure, we suggest that settlement, with the peace of mind that comes with a full release, is the only economically rational choice for US Coachways and its insurance carriers.

## APPLICABLE INSURANCE LAW

Given these facts, and the massive exposure US Coachways faces for its illegal conduct, the failure of Illinois Union to resolve this claim under these circumstances would constitute an unfair and deceptive act or practice under the law of all of the states whose law might apply— Illinois, New York and Georgia. US Coachways is headquartered in Staten Island, NY, so typically NY insurance law should apply. However, Illinois Union is headquartered in Chicago, making Illinois law possibly applicable. ACE Westchester, Illinois Insurance's parent is headquartered in Alpharetta, Georgia, making Georgia law possibly applicable. Under the law of all three states, the outright denial of coverage by Illinois Union and ACE Westchester constitutes and unfair insurance settlement practice.

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re:     *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
        (Northern District of Illinois)

July 23, 2015

### Illinois Insurance Law

Illinois insurance law defining an unfair settlement practice as:

Not attempting in good faith to effectuate prompt, fair, and equitable settlement of
claims submitted in which liability has become reasonably clear.

Illinois 215 ILCS 5/154(d). In addition, Illinois 215 ILCS 5/154(e) prohibits an insurance
company from:

Compelling insureds or beneficiaries to institute suits to recover amounts due
under its policies by offering substantially less than the amounts ultimately
recovered in suits brought by them.

While there is no common-law bad-faith tort action under Illinois law, an insured may assert a
common-law action against a liability insurer that has failed to act in good faith in responding to
a settlement offer. *Cramer v. Insurance Exchange Agency*, 174 111.2d 513, 675 N.E.2d 897, 221
Ill.Dec. 473 (1996). One of an insurer's obligations under a contract of liability insurance, arising
out of its implied duty of good faith and fair dealing, is to settle a claim that has been brought
against the insured when it is appropriate to do so. *Id.* Illinois courts have recognized that the
insurer has a duty to act in good faith in responding to such settlement offers. *See Haddick v.
Valor Insurance*, 198 I11.2d 409, 763 N.E.2d 299, 261 Ill.Dec. 329 (2001). As the court
explained in *Cramer*:

The "duty to settle" arises because the policyholder has relinquished defense of
the suit to the insurer. The policyholder depends upon the insurer to conduct the
defense properly. In these cases, the policyholder has no contractual remedy
because the policy does not specifically define the liability insurer's duty when
responding to settlement offers. The duty was imposed to deal with the specific
problem of claim settlement abuses by liability insurers where the policyholder
has no contractual remedy.

When an insurer breaches this duty, the insurer may be liable for the full amount of the judgment
against the policyholder, regardless of policy limits. *Krutsinger v. Illinois Casualty Co.*, 10 Ill.2d
518, 141 N.E.2d 16 (1957); *Swedishamerican Hospital Association of Rockford v. Illinois State
Medical Inter-Insurance Exchange*, 395 Ill.App.3d 80, 916 N.E.2d 80, 334 I11.Dec.7 (2d Dist.

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re:     *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
        (Northern District of Illinois)

July 23, 2015

2009).

### New York Insurance Law

An insurer's conduct is regulated under New York Insurance Law §2601: Unfair Claims
Settlement Practices, as well as the implied covenant of good faith and fair dealing in insurance
contracts that traces its origin to the early part of the twentieth century. *See Brassil v. Maryland
Cas. Co.*, 210 N.Y. 235 (1914) (finding that it was the obligation of the insurer to "deal fairly
and in good faith" with its insured).

When making a determination regarding allegations of bad faith against an insurer in
failing to settle, New York law has enumerated the following factors: (a) *Proper Investigation
and/or Evaluation*: It is the obligation of the insurer to properly and thoroughly investigate the
facts and circumstances of a claim in order to be able to ascertain the potential liability and the
amount of the damages faced by the insured, which continues throughout the course of the
litigation. *See Brown v. United States Fidelity & Guar Co.*, 314 F.2d 675 (2d Cir. 1963). (b)
*Timely Negotiation of a Settlement or Failure to Negotiate*: New York courts will evaluate
whether an insurer negotiated a settlement in a timely fashion, including assessment of whether,
when a demand is within policy limits, the insurer made a fair and reasonable counter-proposal
in a timely manner. *See State v. Merchants Ins. Co. of New Hampshire*, 109 A.D.2d 935 (3d
Dep't 1985). (c) *Failure to Foresee a Verdict in Excess of the Policy Limits*: When an insurer has
adequately and diligently investigated the circumstances surrounding a claim, and has assessed
both liability and injury, the insurer may nevertheless be found to have acted in bad faith, if
based on such knowledge, it should have recognized the danger of a substantial excess verdict
being rendered against the insured. *See Knobloch v. Royal Globe Ins. Co.*, 38 N.Y.2d 471 (1976).
(d) *Failure to Inform the Insured of Settlement Negotiations*: Although an insurer has the right to
conduct settlement negotiations on behalf of its insured without consulting the insured where
there is no "consent to settle" provision in the policy, the insurer is still obligated in most
circumstances to respond accurately to requests from its insured as to the progress of
negotiations and as to settlement developments, and a failure to do so may lead to a finding of
bad faith against the insurer. *See Knobloch*, 38 N.Y.2d 471. (e) *Attempts to Obtain Contribution
to Settlement From the Insured*: It is improper for an insurer to insist upon contribution from the
insured to settle a claim, however, an insurer is permitted to discuss with its insured that
contribution to settlement is possible, especially when the settlement amount is high compared to
what the insurer is willing to pay. *See Brockstein v. Nationwide Mut. Ins. Co.*, 417 F.2d 703 (2d
Cir. 1969) (f) *Belief in Non-Coverage*: An insurer will not be held liable for an excess judgment

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re:    *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
       (Northern District of Illinois)

July 23, 2015

rendered against its insured where an insurer's refusal to settle is on the belief that there is no coverage under the applicable policy *only if* the inusrer's belief was reasonable. *See Dawn Frosted Meats, Inc. v. Ins. Co. of North American*, 99 A.D.2d 448 (1st Dep't 1984). (g) *Comparative Financial Risks*: Insurers should evaluate the potential magnitude of damages and the financial burden each party may be exposed to as a result of a refusal to settle. Bad faith may be found where an insurer takes a financial risk by not settling within policy limits, where that risk is considerably greater for the insured than for the insurer. *See Brown*, 314 F.2d at 678-79. (h) *The Insured's Conduct*: According to the *Pavia* Court, the insured's fault in delaying or ceasing settlement negotiations by misrepresenting the facts may also be taken into consideration. *See Pavia*, 82 N.Y.2d at 455. Here US Coachways promptly reported the claim and has not cooperated, all without securing coverage. Under this standard, Plaintiff submits that the denial of coverage by Illinois Union and ACE constitutes an act of bad faith.

### Georgia Insurance Law

The Georgia Unfair Settlement Practices Act, § 33-6-34, defines an unfair settlement practice as:

> "Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear"

O.C.G.A. § 33-6-34(4). In addition, O.C.G.A. § 33-6-34 prohibits an insurance company from:

> "Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them."

O.C.G.A. § 33-6-34(5). In Georgia, in addition to policy proceeds recoverable under an insurance contract, an insured may have a claim for damages to its insured for failing to settle the claim of an injured person where the insurer is guilty of negligence, fraud, or bad faith in failing to compromise the claim. *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 870 (310 S.E.2d 513) (1984). In deciding whether to settle a claim within the policy limits, the insurance company must give equal consideration to the interests of the insured. *See S. General Ins. Co. v. Holt*, 262 Ga. 267, 269 (Ga. 1992). "An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re:     *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
        (Northern District of Illinois)

July 23, 2015

the policy limits." *Cotton States Mut. Ins. Co. v. Brightman,* 276 Ga. 683, 684 (2003). Also under this standard, Plaintiff submits that the denial of coverage by Illinois Union and ACE constitutes an act of bad faith.

### Applicable Insurance

There is at least one insurance policy at issue in this case. Effective November 9, 2013 to November 9, 2014, Illinois Union/ACE issued a miscellaneous Professional Liability Policy No. G24011999 007 ("the Policy"). The Policy covers TCPA claims under the "Personal Injury Offense" section of the policy, which states, *inter alia:*

> L. **Personal Injury Offense** means one or more of the
> following offenses:
>
> ....
> 4. publication or an utterance in violation of an individual's
> right to privacy

Courts across the United States, including a number of those litigated by Plaintiff's counsel, have repeatedly recognized that the privacy invasion coverage afforded by a commercial general liability policy extends to TCPA claims. *See Park University Enterprises, Inc. v. American Casualty Company of Reading, Pennsylvania,* 442 F.3d 1239, 1243 (10th Cir. 2006) (Kansas law) *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.,* 860 N.E.2d 307, 317 (Ill. 2006); *Pekin Insurance Co. v. XData Solutions, Inc,* 958 N.E.2d 397, 401-03 (Ill. App. 1 Dist. 2011) (same); *Owners Ins. Co. v. European Auto Works, Inc.,* 695 F.3d 814, 818-22 (8th Cir. 2012); *Hooters of Augusta, Inc. v. American Global Ins. Co.,* 157 F. App'x 201, 206-07 (11th Cir. 2005) (Georgia law); *Western Rim Inv. Advisors, Inc. v. Gulf Ins. Co.,* 96 F. App'x 960 (5th Cir. 2004), *affg.* 269 F. Supp. 2d 836 (N.D. Tex. 2003); *Sawyer v. West Bend Mut. Ins. Co.,* 821 N.W.2d 250, 257-58 (Wis. App. 2012); *Penzer v. Transportation Ins. Co.,* 29 So.3d 1000, 1006-07 (Fla. 2010); *Terra Nova Ins. Co. v. Fray-Witzer,* 869 N.E.2d 565, 572-74 (Mass. 2007).

There is no TCPA exclusion in the policy and Illinois Union's denial from its January 13, 2015 denial letter is based solely on its position that the Plaintiff's claim does not relate to the "performance of Insured's services as a bus charter broker "for a fee." Illinois Union's position would apparently convert the policy into an auto liability policy. As explained above, marketing

Ms. Susan Rivera
President
Illinois Union Insurance Company

Mr. Bruce Kessler
President
Mr. Joseph Casey
Division President, Professional Risk
ACE Westchester

Re: *Bull v. US Coachways, Inc.* Civil Action No. 1:14-cv-05789
(Northern District of Illinois)

July 23, 2015

and customer retention are a vital part of the US Coachways business model, and is how US
Coachways performs services as a bus charter broker for a fee.

## COMPARABLE SETTLEMENTS

As discussed above, businesses taking telephone numbers from old invoices and using
them to send text message advertisements without the prior express consent of the recipients is
not unprecedented. *In re Jiffy Lube International, Inc. Text Spam Litigation*, United States
District Court for the Southern District of California, Civil Action No. 11-md-02261, (final
approval granted on February 20, 2013) resolved for a payment of $47,000,000 for
approximately 2,000,000 text message advertisements that were sent.

Another comparison is *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill.), a case also
handled by Plaintiff's counsel. On June 21, 2013, The Court in *Desai* granted final approval for a
settlement for $15,000,000 for 1,000,000 telemarketing calls that had been sent by a third party
agent, and an agreement from ADT to adopt changes to its telemarketing compliance policies
going forward.

In the interest of settling this case without further expense, the Plaintiff is willing to
mediate with Illinois Union to discuss resolution of this case. We expect a response to this
demand letter within 30 days. At that point, the Plaintiff will begin settlement negotiations with
the Defendant directly, including a potential assignment of rights under the applicable insurance
policies.

Sincerely yours,

/s/

Edward A. Broderick

cc:     Paul Gamboa, Esq. (pgamboa@gordonrees.com)
        Brian Murphy, Esq. (murphy@mmblaw.com)
        Matthew McCue, Esq. (mmccue@massattorneys.net)
        Anthony Paronich, Esq. (anthony@broderick-law.com)



Case: 13-14013    Date Filed: 07/17/2014    Page: 1 of 9

Federal Communications Commission
Washington, D.C. 20554
Office Of General Counsel
445 12ᵗʰ St. S.W.
Washington, D.C. 20554
Tel: (202) 418-1740 / Fax: (202) 418-2819

July 17, 2014

John Ley, Clerk of Court
United States Court of Appeals
 for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Re:** *Palm Beach Golf Center-Boca, Inc. v. Sarris,* No. **13-14013**

Dear Mr. Ley:

The Federal Communications Commission respectfully submits this letter brief in response to the Court's request of July 7, 2014. In that request, the Court asked for the FCC's position "on whether the [Telephone Consumer Protection Act (TCPA)] and its accompanying regulations allow a plaintiff to recover damages from a defendant who sent no facsimile to the plaintiff, but whose independent contractor did." As we explain, the answer is yes.

In its letter, the Court adverted to the FCC's May 9, 2013 declaratory ruling in *DISH Network,* 28 FCC Rcd 6574 (2013), *pet. for review dismissed, DISH Network, LLC v. FCC,* 552 Fed. Appx. 1 (D.C. Cir. 2014), which addressed questions regarding the availability of direct and vicarious liability for unlawful telemarketing calls under the TCPA. As the Court observed, the TCPA and the FCC's implementing regulations "use[] different language in describing facsimile transmissions and telemarketing calls."

The *DISH Network* ruling did not address or alter the treatment of facsimile transmissions under the TCPA or the Commission's implementing regulations. Under the terms of the statute and regulations, the recipient of an unsolicited facsimile advertisement may recover damages from a defendant that does not itself transmit the offending facsimile, if the defendant has hired an independent contractor to transmit facsimiles advertising the defendant's goods or services. Such liability does not depend upon the application of federal common law vicarious liability principles.

# BACKGROUND

**1. Statutory and Regulatory Background.** The Telephone Consumer Protection Act, Pub. L. No. 102-243, 105 Stat. 2394, codified at 47 U.S.C. § 227, contains an assortment of provisions designed to protect consumer privacy and prevent unwanted communications over telephone lines. Separate subsections of the statute address voice telephone calls and facsimile advertisements. Those subsections contain different language, and FCC rules implementing those provisions treat voice calls and faxes differently.

**a.** *Voice Telephone Calls.* The TCPA makes it unlawful, subject to certain exceptions, for any person within the United States to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice … without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Such artificial or prerecorded voice calls are commonly referred to as "robo-calls." The statute also authorizes the FCC to establish a national do-not-call registry that consumers can use to notify telemarketers that they object to receiving telephone solicitations. 47 U.S.C. § 227(c)(1)-(4). The FCC's implementing regulations provide – again, subject to exceptions – that no person or entity may "initiate any telephone solicitation … [to any] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

In identifying the party that "initiates" calls in violation of these robo-call and do-not-call-registry prohibitions, the Commission's rules distinguish between the "telemarketer" and the "seller." The Commission defines the "telemarketer" as "the person or entity that *initiates* a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(11) (emphasis added). By contrast, the "seller" is defined as "the person or entity *on whose behalf* a telephone call or message *is initiated* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(9) (emphasis added). Thus, for example, in the *DISH Network* context, DISH was the seller and its third-party telemarketers were the parties that initiated calls promoting DISH's satellite television services.

The *DISH Network* ruling arose in the context of primary jurisdiction referrals from TCPA litigation involving alleged violations of the robo-call and do-not-call prohibitions contained in the TCPA and associated FCC rules. In it, the FCC relied upon these regulatory definitions of "seller" and "telemarketer" to hold that the party that is directly liable for unlawfully "initiat[ing]" a robo-call or a call to a number on the do-not-call registry is the telemarketer that "takes the steps necessary to physically place a telephone call" and not the seller whose goods or services the telemarketer promotes. *DISH Network* ¶ 26; *see also id.* ¶ 27. But the Commission also ruled that although a seller is not *directly* liable for robo-call and do-not-call violations committed by its third-party telemarketers, the seller may nevertheless be *vicariously* liable for such violations under federal common law agency principles.[1] *Id.* ¶¶ 28-47.

**b.** *Facsimile Advertisements.* The TCPA uses different language governing facsimile transmissions. Specifically, the TCPA prohibits the "use [of] any telephone facsimile machine … to *send*, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added). In contrast with the Commission's construction of "initiate" in the robo-call and do-not-call contexts – where FCC rules describe the directly-liable call "initiat[or]" as the "telemarketer" that physically makes the call – the FCC defines the directly-liable "sender," for purposes of the TCPA's unsolicited facsimile advertisement prohibition, as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). In other words, under the plain text of that definition – and unlike the robo-call and do-not-call contexts – direct liability for sending an unsolicited facsimile advertisement attaches to the entity (defined as the "sender") whose goods or services are being promoted, and *not* generally to the entity that physically transmits the facsimile.[2]

---

[1] The *DISH Network* ruling addresses situations where a seller relies on third-party telemarketers; a seller could of course be directly liable if it acts as its own telemarketer.

[2] Under the FCC's rules, a party that transmits the unsolicited facsimile advertisement, but does not also meet the definition of "sender," may nevertheless be jointly and severally liable (along with the sender) "if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200(a)(4)(vii); *see Rules and Regulations Implementing the Telephone Consumer Protection Act of*

The FCC adopted the codified definition of "sender" in 2006. *Junk Fax Order*, 21 FCC Rcd at 3808 (¶ 39) ("We take this opportunity to emphasize that under the Commission's interpretation of the facsimile advertising rules, the sender is the person or entity on whose behalf the advertisement is sent."), 3822 (setting out codified definition of "sender"). That codification is consistent with the Commission's pre-existing uncodified interpretation that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd 12391, 12407 (¶ 35) (1995).

**2. The District Court Proceedings Below.** In the proceedings below, the plaintiff golf center (Palm Beach Golf) brought a private TCPA lawsuit against the defendant dental office (Sarris), alleging that Sarris had sent the golf center an unsolicited facsimile advertisement in violation of 47 U.S.C. § 227(b)(1)(C). *See District Court Order* at 10-11. The district court described the alleged link between defendant Sarris and the facsimile transmitted to the plaintiff golf center as follows: Sarris had "engaged an independent contractor" named Roberts to provide marketing services to his dental practice, giving Roberts "'free rein' to legally advertise the practice." *Id.* at 2. Roberts, in turn, allegedly contracted with an entity called Business to Business Solutions ("B2B"), which sold facsimile advertising services in the United States on behalf of a Romanian company called Macaw. *See id.* at 2-3. B2B/Macaw allegedly then transmitted the offending fax to the golf center. *See id.* at 3-4, 7-9, 11.

The golf center alleged that this link between Sarris and the fax was sufficient to create direct (as opposed to vicarious) liability on Sarris's part,

---

*1991*, 21 FCC Rcd 3787, 3808 (¶ 40) (2006) (*Junk Fax Order*). Such "high degree of involvement" by the party transmitting the facsimile may include "suppl[ying] the fax numbers used to transmit the advertisement," "mak[ing] representations about the legality of faxing to those numbers," or "advis[ing] a client about how to comply with the fax advertising rules." *Junk Fax Order*, 21 FCC Rcd at 3808 (¶ 40); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14131 (¶ 196) & n.724 (2003) (noting that requisite high degree of involvement by the party transmitting the fax may also include a "role in reviewing and assessing the content of a facsimile message").

4

because Sarris met the definition of "sender" under the FCC's rules and the fax advertisement was unsolicited. *Id.* at 14.

The district court granted summary judgment in favor of the defendant dental office. *Id.* at 33. The court rejected the golf center's direct liability claim, ruling that it could establish liability, if at all, only on the basis of vicarious liability. *Id.* at 12-13. In doing so, the court relied on the FCC's ruling, in *DISH Network,* that the "seller" generally is not directly liable for unlawful telemarketing calls initiated by third-party telemarketers on the seller's behalf. *Id.* The court acknowledged that *DISH Network* "specifically examined the meaning of the word 'initiate' as used in the [statutory] telemarketing prohibition ... instead of the word 'send' as used in the [statutory] unsolicited fax prohibition." *Id.* at 13 n.13. The court also conceded that *DISH Network* "specifically addressed the [FCC's rule defining the] term 'seller' in the telemarketing context, not [the definition of] 'sender' in the fax context." *Id.* at 13 n.13. The court nevertheless appeared to find that the Commission's analysis in *DISH Network* regarding the absence of direct seller liability in the telemarketing context also applied to foreclose direct sender liability in the fax advertising context, and hence foreclosed direct sender liability by the defendant dental office. *Id.* at 12-13.[3]

## ARGUMENT

In holding "that a party is not directly liable" under the TCPA's prohibition against "send[ing]" unsolicited facsimile advertisements "unless it actually transmits a fax," the district court acknowledged the existence of, but did not cite or discuss, "pre-*DISH Network* decisions" to the contrary. *District Court Order* at 14; *see also Addison Automatics, Inc. v. The RTC Group, Inc.*, 2013 WL 3771423 at *4 (N.D. Ill. 2013) (direct TCPA liability available against party whose goods or services are advertised in fax transmitted by others); *Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412, 415 (E.D. Mich. 2013) (same). The court

---

[3] The district court went on to conclude that summary judgment for the defendant also was warranted because Palm Beach Golf had not established a case for vicarious liability under common law agency principles, *District Court Order* at 14-23, and because the plaintiff lacked Article III standing to present its TCPA claims, *id.* at 23-29. This Court's July 7 Letter did not ask the FCC to address these bases for the district court's decision and we express no view with respect to those issues (nor to the factual disputes addressed in the parties' briefs).

5

determined, however, that the *DISH Network* ruling supplanted any prior precedent on the subject and compelled the conclusion that a party whose goods or services were promoted in an unsolicited fax transmitted by a third party could be held liable, if at all, only "under federal common law principles of agency for the actions of a third-party." *Id.* That holding was in error.

First, the *DISH Network* ruling applies only to liability for telemarketing calls and neither addresses nor alters the Commission's pre-existing regulatory treatment of unsolicited facsimile advertisements. As noted above, the FCC issued the *DISH Network* ruling in response to primary jurisdiction referrals from TCPA litigation involving alleged violations of the robo-call and do-not-call prohibitions. *See DISH Network* ¶¶ 5-23. Those provisions prohibit the "initiat[ion]" of certain robo-calls and calls to telephone numbers listed on the national do-not-call registry. *See* 47 U.S.C. § 227(b)(1)(B) (robo-call prohibition); 47 C.F.R. § 64.1200(c)(2) (do-not-call prohibition); *see* pp. 2-3, above. In clarifying which party incurs direct liability for initiating a call in that context, the FCC found guidance in its rules defining "telemarketer" as the party that "initiates" a telephone call and "seller" as the party "on whose behalf a telephone call" is initiated. *DISH Network* ¶ 27 (citing 47 C.F.R. § 64.1200(f)(11) & (9)). The Commission determined on the basis of those definitions that the party that incurs direct liability for "initiat[ing]" an unlawful call is the telemarketer that physically makes the call and not the seller on whose behalf a call is made. *Id.* ¶¶ 26-27.

Because facsimile advertisements were not at issue in the *DISH Network* proceeding, the FCC had no occasion to opine on direct or vicarious liability in that context. Thus, nowhere in the *DISH Network* ruling does the FCC address the distinct prohibition against "send[ing]" unsolicited facsimile advertisements under 47 U.S.C. § 227(b)(1)(C), or the distinct definition of "sender" in the agency's rules (47 C.F.R. § 64.1200(f)(10)). The district court therefore improperly relied on the *DISH Network* ruling to hold that direct liability by the defendant dental office was foreclosed.

Second, as described above (at pp. 3-4), the FCC has defined the party that incurs direct liability for "send[ing]" an unsolicited facsimile advertisement under 47 U.S.C. § 227(b)(1)(C) very differently from the party that unlawfully "initiate[s]" a robo-call or do-not-call violation. By its plain terms, 47 C.F.R. § 64.1200(f)(10) defines the direct liability-incurring "sender" *not* as the party that physically transmits the fax, but as "the person or entity *on whose behalf* a

facsimile unsolicited advertisement is sent *or whose goods or services are advertised or promoted in the unsolicited advertisement.*" (Emphasis added.) Read in light of that binding regulatory definition,[4] the unsolicited fax prohibition in section 227(b)(1)(C) clearly "allow[s] a plaintiff to recover damages [under a theory of direct liability] from a defendant who [transmitted] no facsimile to the plaintiff, but whose independent contractor did," July 7 Letter at 1, so long as the transmitted fax constitutes an unsolicited facsimile advertisement promoting the defendant's goods or services.

## CONCLUSION

For the foregoing reasons, the district court misapplied the TCPA, the *DISH Network* ruling, and FCC regulations regarding unsolicited facsimile advertisements to the extent that it ruled, as a matter of law, that the defendant dental practice may not be directly liable under the TCPA for any unsolicited facsimile advertisement sent to the plaintiff golf center unless the defendant actually transmitted the fax.

Respectfully submitted,

*/s/ Laurence N. Bourne*

Jonathan B. Sallet
General Counsel
David Gossett
Acting Deputy General Counsel
Richard K. Welch
Deputy Associate General Counsel
Laurence N. Bourne
Counsel

---

[4] As the district court otherwise acknowledges, courts in non-Hobbs Act proceedings such as this one "must apply" – and may not entertain collateral attacks on – a final order or regulation of the FCC in deciding an issue addressed by such order or regulation. *District Court Order* at 13 n.13 (citing 28 U.S.C. § 2342(1)). *Accord CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010); *Self v. BellSouth Mobility, Inc.*, 700 F.3d 453, 461-64 (11th Cir. 2012).

In the
## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| PALM BEACH GOLF CENTER-BOCA, INC. | ) |
| APPELLANT, | ) |
| V. | ) No. 13-14013 |
| JOHN G. SARRIS, D.D.S., P.A. | ) |
| APPELLEE. | ) |

## CERTIFICATE OF SERVICE

I, Laurence N. Bourne, hereby certify that on July 17, 2014, I electronically filed the foregoing Letter Brief with the Clerk of the Court for the United States Courts of Appeals for the Eleventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Phillip A. Bock
Daniel J. Cohen
Bock & Hatch, LLC
134 N. Lasalle Street
Suite 1000
Chicago, IL 60602
*Counsel for: Palm Beach Golf Center-Boca*

Ryan M. Kelly
David M. Oppenheim
Brian J. Wanca
Anderson Wanca
3701 Algonquin Rd
Suite 760
Rolling Meadows, IL 60008
*Counsel for: Palm Beach Golf Center-Boca*

Gregory S. Weiss
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Blvd
Suite 200
Palm Beach Gardens, FL 33410
*Counsel for: Palm Beach Golf Center-Boca*

Kevin D. Franz
William S. Reese
Lane Reese Summers Ennis & Perdomo, PA
2600 S. Douglas Rd
Suite 304
Coral Gables, FL 33134
*Counsel for: John G. Sarris*

Michael Resis
Molly Arranz
Eric Samore
SmithAmundsen, LLC
150 N. Michigan Ave
Suite 3300
Chicago, IL 60601
*Counsel for: John G. Sarris*

/s/ Laurence N. Bourne

# EXHIBIT F



Richard W. Boone Jr.
212.915.5972 (direct)
Richard.Boone@wilsonelser.com

August 24, 2015

**VIA CERTIFIED MAIL & EMAIL**
**RETURN RECEIPT REQUESTED**

Edward A. Broderick
Broderick Law, P.C.
99 High Street, Suite 304
Boston, MA 02110
(ted@broderick-law.com)

|       |     |                                                              |
|-------|-----|--------------------------------------------------------------|
| Re:   |     | ***Bull v. US Coachways, Inc.***, Civil Action No. 1:14-cv-05789 (N.D. Ill.) |
|       | Insured : | US Bus Charter & Limo Inc. dba US Coachways ("US Bus") |
|       | ACE Claim No: | JY14J0426052 |
|       | Claimant : | James Bull |
|       | Policy No. : | G24011999 007 |
|       | Our File: : | 10928.00257 |

Dear Mr. Broderick:

We represent Illinois Union Insurance Company ("Illinois Union") and ACE North American Claims ("ACE") with respect to the above-referenced matter (the "TCPA Litigation"), pending against the Insured, US Bus. Your July 23, 2015 letter to our clients regarding this matter, seeking to have Illinois Union engage in settlement negotiations, has been forwarded to us for a response.

Please note that going forward, although it is not our intent to engage in a letter writing campaign, all future submission should be directed to our attention.

For the reasons more fully detailed below, because there is no coverage obligation on the part of Illinois Union for US Bus in the TCPA Litigation, our clients must decline your request that Illinois Union participate in a settlement of this matter.

As you know, this putative class action under the federal Telephone Consumer Protection Act ("TCPA") was originally filed on July 29, 2014 in the United States District Court for the Northern District of Illinois. Essentially, it is alleged that the defendant violated the TCPA by using an automated dialing system to send unsolicited text message advertisements without the recipients' prior consent.

As you are also apparently aware, Illinois Union issued Miscellaneous Professional Liability Policy No. G24011999 007 (the "Policy") to US Bus for the Policy Period from

150 East 42nd Street • New York, NY 10017 • p 212.490.3000 • f 212.490.3038

Albany • Baltimore • Boston • Chicago • Connecticut • Dallas • Denver • Garden City • Houston • Las Vegas • London • Los Angeles • Louisville • McLean
Miami • Milwaukee • New Jersey • New York • Orlando • Philadelphia • San Diego • San Francisco • Washington, DC • West Palm Beach • White Plains
Affiliates: Berlin • Cologne • Frankfurt • Munich • Paris

**wilsonelser.com**

6955050v.1

 WILSON ELSER

- 2 -

November 9, 2013 to November 9, 2014. As you further note, Illinois Union has advised US Bus that coverage is unavailable under the Policy for the TCPA Litigation.

There is, therefore, no fundamental basis for your contention that the purported violation of the TCPA alleged in the TPCA Litigation falls within the scope of coverage afforded by the subject professional liability policy. The Insuring Agreement of the policy specifically limits coverage to a Wrongful Act in the performance of Professional Services. The policy defines Professional Services to mean the performance of professional services as a bus charter broker for others for a fee. Advertising in violation of the TCPA, or otherwise, simply does not concern services unique to a bus charter broker. Further, the complaint does not allege that the wrongful conduct in dispute was in any way rendered to others for a fee, but rather includes allegations that US Bus was performing marketing services for itself. For this reason, Illinois Union must decline your invitation to participate in settlement discussions or mediation, as the allegations do not fall within the scope of the Insuring Agreement. We thus respectfully direct you to US Bus's defense counsel to discuss settlement.

Further, pursuant to both the Policy and applicable law, absent a settlement agreed to by Illinois Union or a final judgment against the Insured, matters relating to the Policy and to coverage thereunder are solely between Illinois Union and its Insured, as a plaintiff has no direct right of action against the insurer. *See Nick's Garage, Inc. v Liberty Mut. Fire Ins. Co.*, 120 A.D.3d 967, 968 (N.Y. App. Div. 4th Dep't 2014) (holding that to maintain an action against an insurer, a stranger to the underlying insurance policy must first obtain a judgment against the tortfeasor, serve the insurance company with a copy of the judgment and await payment for 30 days). Therefore, your letter to Illinois Union purporting to assert rights belonging to US Bus is inappropriate at this time.

Notwithstanding the foregoing, we are also compelled to briefly address a number of errors contained in your letter.

First, the Policy was issued to the Insured in the State of New York. Accordingly, any issues regarding the coverage provided thereunder would be governed by New York law. *See Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 24, 822 N.Y.S.2d 30, 36 (N.Y. App. Div. 1st Dep't 2006) (where the insured risk is scattered throughout multiple states, courts deem the risk to be located in the state of the insured's domicile at the time the policy was issued). Any discussion of Illinois or Georgia law is therefore immaterial.

Second, your interpretation of the coverage available under the Policy is incorrect. You assert that "[t]he Policy covers TCPA claims under the 'Personal Injury Offense' section of the policy," citing the definition at Section II.L.4. of "Personal Injury Offense" as "publication or an utterance in violation of an individual's right to privacy."

This argument, however, overlooks that definitions contained in the Policy do not themselves confer insurance coverage. Rather, the scope of the coverage afforded under the Policy is set forth in the Insuring Agreement, which states:



The **Company**[1] will pay on behalf of the **Insured** all sums in excess of the Retention that the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** because of a **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period** by reason of a **Wrongful Act** committed on or subsequent to the **Retroactive Date** and before the end of the **Policy Period**.

Policy, Section I.A.

"Wrongful Act," as used in the Policy, means "any actual or alleged negligent act, error, omission, misstatement, misleading statement or **Personal Injury Offense** committed by the **Insured** or by any other person or entity for whom the **Insured** is legally liable *in the performance of or failure to perform Professional Services*." *Id.*, Section II.T. (emphasis added). "Professional Services" means "only those services specified in Item 7 of the Declarations performed for others by an Insured or by any other person or entity for whom the **Insured** is legally liable." *Id.*, Section II.P. Item 7 of the Declarations further provides "Solely in the performance of professional services as a bus charter broker for others for a fee."

Here, there are simply no Professional Services rendered to others for a fee that are at issue in the TCPA Litigation. Thus, any reliance of "Personal Injury Offense" standing alone is of no consequence and cannot serve to trigger coverage.

In accordance with the foregoing and subject to all other terms, conditions, limitations, and exclusions contained therein, coverage is only potentially available under the Policy for a Claim arising from an actual or alleged act, error, omission, misstatement, misleading statement or Personal Injury Offense committed by the Insured in the performance of professional services as a bus charter broker for others for a fee.[2] As Illinois Union has previously explained, the instant Claim arises from the alleged use of automatic telephone dialing system to transmit text messages and it does not contain any allegations relating to the performance of the Insured's services as a bus charter broker to others for a fee. Thus, Illinois Union denied coverage for this matter and maintains that denial by this letter.

We further note your statement that "[c]ourts across the United States ... have repeatedly recognized that the privacy invasion coverage afforded by a *commercial general liability policy* extends to TCPA claims," and the cases cited in support of this proposition, have no bearing on the narrower coverage provided by this *professional liability policy*. Additionally, your implication that CGL policies – or any policy – would necessarily extend coverage for TCPA claims is incorrect. As a matter of black-letter law, the coverage afforded under any insurance contract is governed by the specific terms set forth therein. Indeed, it is well settled that a professional liability policy only insures against acts unique to the insured. Advertising is, of course, a general business function and not unique to a charter bus broker.

---

[1] Terms in bold are further defined in the Policy.

[2] In this respect, we note that, contrary to your assertion, the professional liability coverage provided under the Policy is unlike the coverage available under a typical automobile liability policy.



- 4 -

Finally, we note that your conclusory assertion that "the denial of coverage by Illinois Union and ACE constitutes an act of bad faith" is just plain wrong as a matter of law. Under New York law, "a claim of bad faith must be predicated on the existence of coverage of the loss in question." *Zurich Ins. Co. v. Texasgulf, Inc.*, 233 A.D.2d 180, 180, 649 N.Y.S.2d 153, 153 (N.Y. App. Div. 1st Dep't 1996). As explained, there is no coverage available under the Policy for the TCPA Litigation. Further, while Illinois Union's denial of coverage for the TCPA Litigation is plainly justified, under New York law "bad faith cannot be established when the insurer has an arguable basis for denying coverage." *Redcross v. Aetna Cas. & Sur. Co.*, 260 A.D.2d 908, 913, 688 N.Y.S.2d 817, 821 (N.Y. App. Div. 3d Dep't 1999).

For the foregoing reasons, we repeat that we are constrained to advise that Illinois Union must decline participating in settlement negotiations or mediation in connection with the TCPA Litigation. In so doing, we note that ACE confirms that no coverage is afforded for this matter, and continues to reserve all rights under the Policy, at law, or in equity with regard to this matter or otherwise.

Should you have any questions or comments with respect to the content of this letter or any other matter, please do not hesitate to contact me at your convenience.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

Richard W. Boone Jr.

cc:     Diane Fazzolari
        (via email: diane.fazzolari@acegroup.com)

        Edward Telmany
        (via e-mail: USCoachways@gmail.com)

        David S. Sheiffer, Esq.

# EXHIBIT G

## CLASS ACTION SETTLEMENT AGREEMENT

This class action settlement agreement (the or this "Agreement" or the or this "Settlement Agreement") is entered into as of March 9, 2016, by and among James Bull ("Bull" or "Plaintiff"), individually and on behalf of the class of persons he seeks to represent (the Settlement Class (defined below)), and US Coachways, Inc. ("US Coachways") (Plaintiff and US Coachways are collectively referred to as the "Parties"). This Settlement Agreement is intended by the Parties to conclude this action, upon and subject to the terms and conditions of the Agreement, including but not limited to the agreement for entry of a judgment, and subject to the final approval of the Court.

## RECITALS

A.     On July 29, 2014, Bull filed a putative class action complaint against US Coachways in the United States District Court for the Northern District of Illinois, captioned *Bull v. US Coachways, Inc.*, No. 1:14-cv-05789 (N.D. Ill.) (the "Action"), alleging, among other things, that US Coachways and/or others acting on its behalf sent unsolicited text advertising messages, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and the regulations promulgated by the Federal Communications Commission (the "FCC") under that statute.

B.     Illinois Union Insurance Company (Illinois Union") issued an insurance policy to US Coachways effective November 9, 2013 to November 9, 2014, identified as miscellaneous Professional Liability Policy No. G24011999 007 ("the Insurance Policy").

C.     Thereafter, US Coachways tendered the Action to Illinois Union seeking coverage under the Insurance Policy.   Illinois Union denied the claim and refused to provide US Coachways with a defense in the action.

D.      On December 14, 2014, Plaintiff filed an Amended Complaint in the action. US Coachways again tendered the Action to Illinois Union seeking coverage and again Illinois Union denied either a defense or indemnity as more fully set forth in its letter dated January 13, 2015.

E.      The TCPA creates a private cause of "action to receive $500 in damages for each such violation." *See* 47 U.S.C. § 227.  In the Action, Plaintiff obtained discovery of the volume of text messages sent on behalf of US Coachways.

F.      In discovery in the Action, Plaintiff obtained Gold Mobile's texting data, and provided the data to his expert, Jeffrey Hansen for analysis.  Mr. Hansen's analysis identified 391,459 violative text messages, yielding potential exposure for US Coachways of $195,729,500, not accounting for additional exposure for multiple text messages to class members on the National Do Not Call Registry.

G.      US Coachways is without the financial means to satisfy such a judgment, or indeed to fund a reasonable, approvable class-wide settlement.

H.      On July 23, 2015, counsel for Plaintiff sent a demand letter to Illinois Union, setting forth the facts of the case, Plaintiff's basis for liability and the potential exposure to US Coachways.  In that demand, Plaintiff requested that Illinois Union engage in mediation, and asked for a response within 30 days.  Plaintiff further cautioned that failing to engage in such mediation would constitute an unfair insurance settlement practice and that Plaintiff would pursue an assignment of rights under the Insurance Policy.

I.      On August 24, 2015, through outside counsel, Illinois Union sent a letter denying coverage, failing to cite the amended definition of Professional Services which includes "Travel Agency Operations" and declining Plaintiff's invitation to engage in mediation over the case.

- 2 -

J.     US Coachways believes that it is entitled to insurance coverage under the terms of the Insurance Policy.

K.     US Coachways lacks resources to resolve the Action.

L.     Plaintiff's counsel has investigated the relevant facts and law relating to this Action, and believes that the claims asserted in the Action have merit. Nonetheless, Plaintiff and Plaintiff's counsel recognize and acknowledge the expense, time, and risk associated with continued prosecution of the Action against US Coachways through dispositive motions, class certification, trial, and any subsequent appeals. Plaintiff and Plaintiff's counsel also have taken into account the uncertainty, difficulties, and delays inherent in litigation, especially in complex actions.

M.     After considering: (1) the benefits to the Class, (2) the inability of Defendants to satisfy a judgment if Plaintiff and the Class prevailed in the Action, (3) the attendant risks, costs, uncertainties, and delays of litigation, and (4) the Insurance Policy and the potential coverage claims, Plaintiff and its counsel have concluded the terms and conditions provided for in this Agreement are fair, reasonable and adequate, and in the best interest of the Class as a means of resolving the Action.

N.     The Parties have each represented by counsel and agree that the Action should be resolved. This resolution was accomplished in good faith, following arms' length bargaining.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Parties, by and through their respective counsel, subject to final approval by the Court after a hearing or hearings as provided for in this Settlement Agreement, and in consideration of the benefits flowing from the Settlement Agreement set forth herein, that the Action shall be resolved upon and subject to the terms and conditions of this Agreement.

## AGREEMENT

1. **Recitals**. The recitals set forth above are incorporated herein and are made part of this Agreement.

2. **For Settlement Only**. This Agreement is entered into for purposes for resolving any and all disputes between Defendant, Plaintiff and the Class. The Parties expressly agree that if this Agreement is not finally approved, this Agreement is null and void and may not be used by any party for any purpose, including any representations made in this Agreement and the Affidavit of Edward Telmany provided in connection with this Agreement.

3. **Preliminary Approval and Class Notice**. The Parties agree to jointly move the Court for the entry of an order preliminarily approving this Agreement. Plaintiff will request that the Court enter an "Order Certifying the Settlement Class, Preliminarily Approving the Class Action Settlement, and Approving the Class Notice," in substantially the form attached hereto as Exhibit 1. Additionally, Plaintiff will request that the Court approve a "Notice of Class Action and Proposed Settlement," in substantially the form attached hereto as Exhibit 2-A which will be sent via email, and by mail to class members whose email addresses register as undeliverable. The Long Form Notice attached as Exhibit 2-B will be available to class members on a settlement website maintained by the administrator.

4. **Payment for Initial Notice**. If the Court preliminarily approves the Agreement, US Coachways agrees to deposit $50,000, paid in five equal monthly payments commencing ten days following the Court's preliminary approval in escrow with Kurtzman Carson Consultants ("KCC"), the Class Administrator, as escrow agent This payment by US Coachways represents the full extent of its monetary contribution towards satisfying the Judgment. Initial notice to the Class shall be paid from this initial payment.

- 4 -

5.     **Judgment.** US Coachways agrees to the entry of judgment against it in the amount of $49,932,375 on the First Amended Complaint in favor of the Class, *provided, however*, that the Judgment may not be satisfied from or executed on any assets or property of Defendants, and/or their past, present or future officers, directors, employees, members, shareholders, agents, executors, affiliates, divisions, subsidiaries, successors and assigns, other than Illinois Union. The Judgment will be effective as of the Effective Date of this Agreement (as defined below). If the Court does not grant final approval of the settlement contemplated under this Agreement or if the Court's Order granting final approval is reversed or substantially modified on appeal, then this Judgment shall be null and void. Furthermore, Defendant does not waive any defenses and Plaintiff agrees that nothing contained in this Agreement or revealed in negotiating the same can be used in prosecuting this action if the Judgment becomes null and void for any reason. The Judgment shall indicate on its face that it may only be satisfied from Illinois Union. The Judgment may not be satisfied by attaching, executing on, or otherwise acquiring any other asset or property of Defendant and/or past, present or future officers, directors, employees, members, shareholders, agents, executors, affiliates, divisions, subsidiaries, successors and assigns (apart from US Coachways' interest in the Illinois Union Insurance Policy and any bad faith rights against Illinois Union, which US Coachways hereby assigns to Plaintiff and the Class).

6.     **Assignment of Claims and Rights Against Illinois Union**. As part of this Agreement, US Coachways assigns to the Class (as represented by Plaintiff and his attorneys) all of US Coachways' claims against and rights to payments from Illinois Union.

7.     **Covenant Not to Execute and Not to Sue.** Plaintiff and the Class agree not to seek to execute on, attach or otherwise acquire any property or assets of Defendant and/or past, present and future officers, directors, employees, members, shareholders, agents, executors, subsidiaries,

divisions, affiliates, successors and assigns of any kind other than from the Insurance Policy and claims against Illinois Union to satisfy or recover on the Judgment and agree to seek recovery to satisfy the Judgment only against Illinois Union. After preliminary approval, Class Counsel will undertake to prosecute actions to permit recovery against Illinois Union. The Parties recognize and acknowledge that it is possible that no recovery may be obtained from Illinois Union.

8. **Condition Precedent.** It shall be a condition precedent for the validity and enforceability of this Agreement that the Court shall find that:

(a) This Agreement was made in reasonable anticipation of potential liability against Defendant would arise from a finding that Defendant sent 391,459 unsolicited text advertisements in violation of 47 U.S.C. § 227.

(b) The settlement amount is fair and reasonable because it is within the range of statutory damages that could be awarded for the claims made by the Class and potential damages that could be awarded if the Class prevailed on its claims;

(c) Defendant's decision to agree to entry of judgment is reasonable based on the risk of an adverse judgment, the cost of the defense, and the uncertainties of litigation;

(d) Defendant did not believe that it was violating any laws or regulations by sending the texts;

(e) Defendant tendered a claim for the Action to Illinois Union twice for defense and indemnity and Illinois Union denied coverage to Defendant under the Insurance Policy; and

(f) Defendant lacks financial resources to withstand the potential judgment in this case, or to fund a reasonable settlement from its own funds.

If the Court does not make the above findings, this Agreement shall be null and void.

9.    **Effective Date**.  This Agreement shall be effective upon the date on which the final order, judgment and decree become a final, non-appealable order, or if an appeal has been sought, after the disposition of any such appeal which approves the Court's final order, judgment and decree.

10.    **Settlement Class**.  The Settlement Class consists

> All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date of this Settlement Agreement.

11.    **Class Recovery Solely from Illinois Union**. Plaintiff and each Class Member, and their past, present and future officers, directors, employees, members, affiliates, divisions, subsidiaries, heirs, executors, administrators, representatives, agents, successors and assigns, have covenanted with Defendant and/or its officers, directors, employees, members, shareholders, agents, executors, successors and assigns not to execute on the Judgment against Defendant and/or its past, present and future officers, directors, employees, members, shareholders, agents, executors, subsidiaries, affiliates, divisions, successors and assigns, but rather have agreed to pursue collection of the Judgment (and any bad faith claims) against Illinois Union.  This provision does not release the Judgment against Defendant to be entered herein, nor does it release the asserted claims that are the basis for the entry of the Judgment or the right to enforce the Judgment (which claims are merged into this Judgment) in favor of the Plaintiff and the Class against Illinois Union.  In the event that the Class is unsuccessful in its pursuit of recovery from Illinois Union, then the Class's sole remedy is the monies paid by US Coachways.

12.    **Relief to Plaintiff and the Class**.  The Judgment, partially satisfied by the contribution by US Coachways, and any additional recovery for bad faith claims against Illinois Union, will

- 7 -

comprise the Class recovery. Plaintiff, the Class, and their counsel, at their sole expense will pursue and attempt to recover the Judgment against Illinois Union. Brian Murphy and Joseph Murray of Murray Murphy Moul + Basil LLP, Matthew P. McCue of The Law Office of Matthew P. McCue and Anthony Paronich and Edward Broderick of Broderick Law, P.C. ("Class Counsel") shall use their best efforts to recover on the Judgment from Illinois Union. Each class member that does not opt out or exclude himself, herself or itself from the Settlement will, after a second preliminary approval of proposed distributions, a second notice to the Class, and final approval by the Court, will receive a share of the amount recovered from Illinois Union by judgment or settlement, calculated by dividing the amount of the Settlement Fund net of an incentive award, attorneys' fees, attorney expenses and administration and notice costs by the total number of violative text messages sent, with each Class member to recover the per violation share times the number of text message that Class member received. In the event checks from an initial round of payments to Class members go uncashed, if economically feasible a second round of checks on the unredeemed funds will be issued to those class members who did cash checks, calculated in the same fashion as the first round of checks. The total recovery is subject to further litigation and compromise with Illinois Union, a deduction of attorneys' fees of one third of the amount recovered plus litigation expenses for Plaintiff's attorneys, and an incentive award not to exceed $15,000 to Plaintiff for representing the Class.

Plaintiff's attorneys have determined that this settlement is a fair, reasonable and adequate compromise for the Class.

13. **Cooperation.** Plaintiff and Defendant agree to cooperate fully with one another to effect the consummation of this Agreement, including but not limited to the provision of an Affidavit signed by Edward Telmany, Chief Executive Officer of US Coachways, attesting to the

underlying facts in this case, authenticating US Coachways business records, cooperating fully with Plaintiff and its experts and class administrator to readily identify class member addresses and emails in US Coachways' database, and responding to any lawfully document subpoena and/or lawfully deposition subpoena in connection with any proceedings by Plaintiff against Illinois Union.

14.    **Attorneys' Fees, Notice Costs and Related Matters.**  Plaintiff's counsel, through the Class Administrator KCC, will issue notice of the settlement described herein within 30 days of Preliminary Approval by email and by mail to any class members for whom email notice is unsuccessful.  Plaintiff's counsel shall file with the Court an accounting of any funds received from Illinois Union.  All disbursements from the settlement fund resulting from any recovery from Illinois Union shall be approved by the Court.

15.    **Preliminary Approval.**  As soon as possible after execution of this Agreement, the Plaintiff shall apply to the Court for an order that:

    (a)    Certifies the Class;

    (b)    Preliminarily approves this Agreement;

    (c)    Finds that the transmission of Class Notice by email and first class mail to those class members whose emails are returned as undeliverable is the best notice practicable and satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure;

    (d)    Order that Notice shall be commenced within 30 days of Preliminary Approval;

    (e)    Sets the deadline for Class members to object to the proposed settlement or to exclude themselves 60 days after Preliminary Approval and setting a date for a Final Fairness hearing that is at least 100 days after the date or Preliminary Approval; and

- 9 -

(f)     Makes all of the findings set forth in Paragraph 8 above

The Parties agree to propose the form of Preliminary Approval Order attached hereto as Exhibit
1, and to request the form of Notice attached hereto as Exhibit 2-A and 2-B, and to propose a
Final Approval Order in the form attached hereto as Exhibit 3. The fact that the Court may
require non-substantive changes in the Notice, the Preliminary Approval Order or the Final
Approval Order does not invalidate this Agreement. However, this is expressly contingent upon
the Court making the findings described herein, and entering the Preliminary Approval Order
and Final Order containing the Judgment.

16.     **Final Approval.**  At the conclusion of, or as soon as practicable after the close of the
hearing on fairness, reasonableness and adequacy of this Agreement, counsel for the Parties shall
request that the Court enter a Final Order: (1) approving the terms of this Agreement; (2) making
the findings set forth in paragraph 15 above; (3) providing for the implementation of the terms
and provisions of this Agreement; (4) finding that the Notice given to the Class is the best notice
practicable and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and
due process.; (5) entering the Judgment; (6) finding that the Agreement prohibits Plaintiff and
the Class from executing against any assets or property of any kind of Defendant and/or its past,
present and future officers, directors, employees, members, shareholders, agents, executors,
subsidiaries, divisions, affiliates, successors and assigns other than against the Insurance Policy
and from bad faith claims against Illinois Union; and (7) retaining jurisdiction to enforce the
provisions of this Agreement.

17.     **Satisfaction.**  Upon the later of 30 days after payment or satisfaction in full or settlement
of the Judgment, or 30 days after the date of a final and non-appealable order entered by a Court

of competent jurisdiction in any litigation brought by Plaintiff and/or the Class against Illinois Union, Plaintiff and the Class shall file a satisfaction of that Judgment.

18.     **Mutual Non-Disparagement**. The Parties agree that each will not at any time, directly or indirectly, electronically or in writing, publicly or privately, post, publish, make or express any comment, view or opinion that criticizes, is adverse to, brings into disrepute in the eyes of the public, defames, derogates, impugns, or disparages another Party, nor shall any Party authorize any agent or representative to make or express any such comment, view, or opinion— although this provision shall not apply to such filings and statements by Plaintiff and Plaintiff's counsel in the course of pursuing recovery from Illinois Union as contemplated herein..

19.     **Objections.**  Any member of the Settlement Class who intends to object to this Agreement must file with the Court a written statement that includes: his or her full name; address; telephone number or numbers that he or she maintains were called; all grounds for the objection, with factual and legal support for each stated ground; the identity of any witnesses he or she may call to testify; copies of any exhibits that he or she intends to introduce into evidence at the Final Approval Hearing; and a statement of whether he or she intends to appear at the Final Approval Hearing with or without counsel. Any member of the Settlement Class who fails to timely file a written objection with the Court in accordance with the terms of this paragraph and as detailed in the Notice, and at the same time provide a copy of the filed objection to the Settlement Administrator, shall not be permitted to object to this Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Agreement by appeal or other means and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action or any other action or proceeding. To be timely,

the objection must be filed and sent to the Settlement Administrator on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.

20.     **Requests for Exclusion.**   Any member of the Settlement Class may request to be excluded from the Settlement Class by sending a written request for exclusion to the Settlement Administrator postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice. In order to exercise the right to be excluded, a member of the Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing his or her full name, address, and telephone numbers. Further, the written request for exclusion must include a statement that the member of the Settlement Class submitting the request wishes to be excluded from the Settlement, and the personal signature of the member of the Settlement Class submitting the request. A request to be excluded that does not include all of the foregoing information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and any Person serving such a request shall be a Settlement Class Member and shall be bound as a Settlement Class Member by the Agreement, if approved. Any member of the Settlement Class who elects to be excluded shall not: (i) be bound by the Final Approval Order and Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. So-called "mass" or "class" opt-outs shall not be allowed.


21.     **Continuing Court Jurisdiction.** Without affecting the finality of the Final Approval Order and Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and

the Final Approval Order and Judgment, and for any other necessary purpose; and to incorporate any other provisions, as the Court deems necessary and just.

22.    **MISCELLANEOUS PROVISIONS**

22.1    The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement. Plaintiff's counsel and US Coachways agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order, the Settlement Agreement, and the Final Approval Order and Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

22.2    All of the Exhibits to this Settlement Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

22.3    This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to such matters. No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

22.4    Except as otherwise provided herein, each Party shall bear its own costs and attorneys' fees.

22.5    Plaintiffs represent and warrant that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person and that they are fully entitled to release the same.

22.6    Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

22.7    This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or scanned and e-mailed signatures shall be treated as original signatures and shall be binding.

22.8    This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

22.9    This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arms' length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed.

For Plaintiff and the Settlement Class:

_____     Date: _3/9/16_
James Bull
Plaintiff

_Edward A. Broderick_     Date: March 9, 2016
Edward A. Broderick
Anthony Paronich
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, MA 02110

For US Coachways, Inc:

_____     Date: _3/9/16_
Authorized Representative
US Coachways, Inc.

_Edward Telmany CEO_
Printed Name and Title

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

JAMES BULL, on behalf of himself and ⟩
others similarly situated, ⟩
⟩
            Plaintiff, ⟩
⟩
         v. ⟩
⟩
US COACHWAYS, INC., ⟩
⟩
           Defendant. ⟩
⟩

Case No. 1:14-cv-05789

Judge Rebecca R. Pallmeyer

Magistrate Judge Daniel G. Martin

**PRELIMINARY APPROVAL ORDER**

WHEREAS, this Action is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*,

WHEREAS, Plaintiff James Bull has filed an unopposed Motion for Preliminary Approval of a Class Settlement (the "Motion");

WHEREAS, the Motion attaches and incorporates a Settlement Agreement (the "Settlement Agreement") that, together with the exhibits thereto, sets forth the terms and conditions for the settlement of claims, on a class wide basis, against US Coachways, Inc. ("US Coachways") as more fully set forth below; and

WHEREAS, the Court having carefully considered the Motion and the Settlement Agreement, and all of the files, records, and proceedings herein, and the Court determining upon preliminary examination that the Settlement Agreement appears to be fair, reasonable and adequate, and that the proposed plan of notice to the Settlement Class is the best notice practicable under the circumstances and consistent with requirements of due process and Federal Rule of Civil Procedure 23, and that a hearing should and will be held after notice to the Settlement Class to confirm that the Settlement Agreement is fair, reasonable, and adequate, and

to determine whether this Court should enter a judgment approving the Settlement and an order of dismissal of this action based upon the Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     For purposes of settlement only, the Court has jurisdiction over the subject matter of this action and personal jurisdiction over the parties and the members of the Settlement Class described below.

2.     The Court finds that:

(a)     This agreement was made in reasonable anticipation of potential liability against defendant would arise from a finding that defendant sent 391,459 unsolicited text advertisements in violation of 47 U.S.C. § 227.

(b)     The settlement amount is fair and reasonable because it is within the range of statutory damages that could be awarded for the claims made by the class and potential damages that could be awarded if the class prevailed on its claims;

(c)     Defendant's decision to agree to entry of judgment is reasonable based on the risk of an adverse judgment, the cost of the defense, and the uncertainties of litigation;

(d)     The evidence adduced during discovery supports a finding that 391,459 text message advertisements were sent by US Coachways for which US Coachways had not received prior express permission to send;

(e)     Defendant did not believe that it was violating any laws or regulations by sending the texts;

(f)     Defendant tendered a claim for the action to its insurer Illinois Union Insurance Company ("Illinois Union") for defense and indemnity and Illinois Union denied coverage to defendant under the insurance policy.

2

(g)     Defendant lacks financial resources to withstand the potential judgment in this

case, or to fund a reasonable settlement from its own funds.

**Certification of Settlement Classes**

1.     Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for purposes of

settlement only, the following "Settlement Classes" are preliminarily certified, consisting of the

following classes:

Class One

> All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date any class is certified;

Class Two

> All persons within the United States who received more than one text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date any class is certified while the telephone number that the text message was sent to was on the National Do Not Call Registry;

2.     All Persons who are members of the Settlement Class who have not submitted a

timely request for exclusion are referred to collectively "Settlement Class Members" or

individually as a "Settlement Class Member."

3.     For purposes of settlement only, the Court finds that the prerequisites for a class

action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been preliminarily satisfied

in that: (a) the number of Settlement Class Members is so numerous that joinder of all members

thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class

Members; (c) the claims of the class representative are typical of the claims of the Settlement

Class Members; (d) the class representative will fairly and adequately represent the interests of

3

the Settlement Class Members; (e) questions of law and fact common to the Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court further finds, for purposes of settlement only, that: (A) Settlement Class Members have a limited interest in individually prosecuting the claims at issue; (B) the Court is satisfied with Plaintiff's counsel's representation that they are unaware of any other litigation commenced regarding the claims at issue by members of the Settlement Class; (C) it is desirable to concentrate the claims in this forum; and (D) it is unlikely that there will be difficulties encountered in administering this Settlement.

    4.    Under Federal Rule of Civil Procedure 23, and for settlement purposes only, Plaintiff James Bull is hereby appointed Class Representative and the following are hereby appointed as Class Counsel:

> Brian K. Murphy
> Joseph F. Murray
> Murray Murphy Moul + Basil LLP
> 114 Dublin Road
> Columbus, OH 43204
>
> Matthew McCue
> THE LAW OFFICE OF MATTHEW P. MCCUE
> 1 South Avenue, Suite 3
> Natick, Massachusetts 01760
>
> Edward Broderick
> Anthony Paronich
> BRODERICK LAW, P.C.
> 99 High St., Suite 304
> Boston, MA 02110

**Notice and Administration**

    5.    The Court hereby approves of Kurtzman Carson Consultants to perform the functions and duties of the Settlement Administrator set forth in the Settlement Agreement –

including effectuating the Notice Plan, providing Notice to the Settlement Class, and to provide such other administration services as are reasonably necessary to facilitate the completion of the Settlement.

6.    The Court has carefully considered the Notice Plan set forth in the Settlement Agreement. The Court finds that the Notice Plan constitutes the best notice practicable under the circumstances, and satisfies fully the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process and any other applicable law, such that the terms of the Settlement Agreement, and this Court's final judgment will be binding on all Settlement Class Members.

7.    The Court hereby approves the Notice Plan and the form, content, and requirements of the Notice described in and attached as exhibits to the Settlement Agreement. The Settlement Administrator shall cause the Notice Plan to be completed on or before _____, **2016**. Class Counsel shall, prior to the Final Approval Hearing, file with the Court a declaration executed by the Settlement Administrator attesting to the timely completion of the Notice Plan.

8.    All costs of providing Notice to the Settlement Class shall be paid out of the Settlement Fund from the initial payment by US Coachways, as provided by the Settlement Agreement.

9.    In the event of recovery by Plaintiff and the Class from Illinois Union, further distributions from the Settlement Fund to Class members, an incentive award, will be made on additional approval by the Court, following a a second motion for preliminary approval of distributions from the Settlement Fund, including a request for an incentive award to the Class Representative, an award of attorneys' fees and costs, notice to the class and the entry of final

5

approval by the Court.

**Exclusion and "Opt-Outs"**

10.     Each and every member of the Settlement Class shall be bound by all determinations and orders pertaining to the Settlement, unless such persons request exclusion from the Settlement in a timely and proper manner, as hereinafter provided.

11.     A member of the Settlement Class wishing to request exclusion (or "opt-out") from the Settlement shall mail the request in written form, by first class mail, postage prepaid, and postmarked no later than _____, **2016**, to the Settlement Administrator at the address specified in the Notice. In the written request for exclusion, the member of the Settlement Class must state his or her full name, address, and telephone numbers. Further, the written request for exclusion must include a statement that the member of the Settlement Class submitting the request wishes to be excluded from the Settlement, and the personal signature of the member of the Settlement Class submitting the request. The request for exclusion shall not be effective unless the request for exclusion provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court. No member of the Settlement Class, or any person acting on behalf of or in concert or in participation with a member of the Settlement Class, may request exclusion of any other member of the Settlement Class from the Settlement.

12.     Members of the Settlement Class who timely request exclusion from the Settlement will relinquish their rights to benefits under the Settlement and will not release any claims against US Coachways.

13.     All Settlement Class Members who do not timely and validly request exclusion shall be so bound by all terms of the Settlement Agreement and by the Final Approval Order and

6

Judgment even if they have previously initiated or subsequently initiate individual litigation or other proceedings against US Coachways.

14.    The Settlement Administrator will promptly provide all Parties with copies of any exclusion requests, and Plaintiff shall file a list of all persons who have validly opted-out of the Settlement with the Court prior to the Final Approval Hearing.

**Objections**

15.    Any Settlement Class Member who does not file a timely request for exclusion, but who wishes to object to approval of the proposed Settlement, to the potential award of attorneys' fees and expenses, or to the compensation award to the Class Representative must file with the Court a written statement that includes: his or her full name; address; telephone numbers that he or she maintains were called; all grounds for the objection, with factual and legal support for each stated ground; the identity of any witnesses he or she may call to testify; copies of any exhibits that he or she intends to introduce into evidence at the Final Approval Hearing; and a statement of whether he or she intends to appear at the Final Approval Hearing with or without counsel. Any objecting Settlement Class Member also must send a copy of the filing to the Settlement Administrator at the same time it is filed with the Court. The Court will consider objections to the Settlement, to the award of attorneys' fees and expenses, or to the compensation award to the Class Representative only if, on or before _____, **2016**, such objections and any supporting papers are filed in writing with the Clerk of this Court and served on the Settlement Administrator.

16.    A Settlement Class Member who has timely filed a written objection as set forth above may appear at the Final Approval Hearing in person or through counsel to be heard orally regarding their objection. It is not necessary, however, for a Settlement Class Member who has

7

filed a timely objection to appear at the Final Approval Hearing. No Settlement Class Member wishing to be heard orally in opposition to the approval of the Settlement and/or the request for attorneys' fees and expenses and/or the request for a compensation award to the Class Representative will be heard unless that person has filed a timely written objection as set forth above. No non-party, including members of the Settlement Class who have timely opted-out of the Settlement, will be heard at the Final Approval Hearing.

17.    Any member of the Settlement Class who does not opt out or make an objection to the Settlement in the manner provided herein shall be deemed to have waived any such objection by appeal, collateral attack, or otherwise, and shall be bound by the Settlement Agreement, and all aspects of the Final Approval Order and Judgment. This includes the fact that US Coachways agrees to the entry of judgment against it in the amount of $49,932,375 in favor of the Class, *provided, however*, that the Judgment may not be satisfied from or executed on any assets or property of Defendants, and/or their past, present or future officers, directors, employees, members, shareholders, agents, executors, affiliates, divisions, subsidiaries, successors and assigns, other than Illinois Union.

**Final Approval Hearing**

18.    The Federal Rule of Civil Procedure 23(e) Final Approval Hearing is hereby scheduled to be held before the Court on _____, **2016 at** _____ **am** for the following purposes:

(a)    to finally determine whether the applicable prerequisites for settlement class action treatment under Federal Rules of Civil Procedure 23(a) and (b) are met;

(b)    to determine whether the Settlement is fair, reasonable and adequate, and should be approved by the Court;

8

(c)    to determine whether the judgment as provided under the Settlement Agreement should be entered, including a bar order prohibiting Settlement Class Members from further collecting on claims directly against US Coachways and shall be limited to collecting against Illinois Union in the Settlement Agreement;

(d)    to consider the application for an award of attorneys' fees and expenses of Class Counsel;

(e)    to consider the application for an compensation award to the Class Representative;

(f)    to consider the distribution of the Settlement Benefits under the terms of the Settlement Agreement; and

(g)    to rule upon such other matters as the Court may deem appropriate.

19.    On or before fourteen (14) days prior to the Final Approval Hearing, Class Counsel shall file and serve (i) a motion for final approval; and (ii) any application for a compensation award to the Class Representative. The Final Approval Hearing may be postponed, adjourned, transferred or continued by order of the Court without further notice to the Settlement Class. At, or following, the Final Approval Hearing, the Court may enter a Final Approval Order and Judgment in accordance with the Settlement Agreement that will adjudicate the rights of all class members.

20.    For clarity, the deadlines the Parties shall adhere to are as follows:

| | |
|---|---|
| **Class Notice Mailed by:** | **_____, 2016** |
| **Objection/Exclusion:** | **_____, 2016** |
| **Motion for Final Approval:** | **_____, 2016** |
| **Final Approval Hearing:** | **_____, 2016 at _____ am** |

9

21.     Settlement Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

**Further Matters**

22.     All discovery and other pretrial proceedings in the Action as between the Plaintiff and US Coachways are stayed and suspended until further order of the Court except such actions as may be necessary to implement the Settlement Agreement and this Order.

23.     In the event that the Settlement Agreement is terminated under the terms of the Settlement Agreement, or for any reason whatsoever the approval of it does not become final and no longer subject to appeal, then: (i) the Settlement Agreement shall be null and void, including any provisions related to the award of attorneys' fees and expenses, and shall have no further force and effect with respect to any party in this Action, and shall not be used in this Action or in any other proceeding for any purpose; (ii) all negotiations, proceedings, documents prepared, and statements made in connection therewith shall be without prejudice to any person or party hereto, shall not be deemed or construed to be an admission by any party of any act, matter, or proposition, and shall not be used in any manner of or any purpose in any subsequent proceeding in this Action or in any other action in any court or other proceeding, provided, however, that the termination of the Settlement Agreement shall not shield from subsequent discovery any factual information provided in connection with the negotiation of this Settlement Agreement that would ordinarily be discoverable but for the attempted settlement; (iii) this Order shall be vacated and of no further force or effect whatsoever, as if it had never been entered; and (iv) any party may elect to move the Court to implement the provisions of this paragraph, and none of the non-moving parties (or their counsel) shall oppose any such motion.

24.    The Court retains jurisdiction to consider all further matters arising out of or connected with the Settlement.

DATED: _____, 2016

_____
**Rebecca R. Pallmeyer**
**United States District Judge**

# Exhibit 2-A

**NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT**

A COURT AUTHORIZED THIS NOTICE IT IS NOT A SOLICITATION FROM A LAWYER

**If you received a text message advertisement from US Coachways, Inc. either (a) on a cellular telephone or (b) more than once within any twelve-month period to phone numbers registered on the Do Not Call Registry, you May Be Entitled to Receive a Payment From a Settlement Fund.**

1-XXX-XXX-XXXX

www._____.com

# ACH

Coachways Telemarketing Settlement
Administrator
P.O. Box xxxx
City, ST xxxxx-xxxx

First Class
Mail
US Postage
Paid
Permit #

Postal Service: Please do not mark barcode

«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «ST» «Zip»
«Country»

---

A proposed settlement (the "Settlement") *Bull v. US Coachways, Inc.*, No. 1:14-cv-05789 (N.D. Ill.) (the "Action") would resolve a lawsuit brought on behalf of persons who received text messages promoting the goods and services of US Coachways, Inc. ("US Coachways") that were directed to (a) telephone numbers listed on the National Do Not Call Registry and/or (b) to cellular telephone numbers using an automated telephone dialing system, which are alleged to have violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). US Coachways denies that it violated any laws or it did anything wrong, and has agreed to the Settlement solely to avoid the burden, expense, risk and uncertainty of continuing the Lawsuit.

**How much money can I get?** If the Court approves the Settlement, every Settlement Class will be entitled to and receive an equal payment from the $49,932,375 Settlement Fund, if any proceeds can be recovered from US Coachways' insurance company. In addition to assigning its rights against its insurer Illinois Union Insurance Company ("Illinois Union") to the Class, US Coachways will contribute $50,000 towards the Settlement, which will be used on the cost of providing notice to the class and costs of pursuing an action against Illinois Union. The Settlement Fund will be divided and distributed equally–sometimes referred to as "pro rata"–to all Settlement Class Members, based on the amount of text messages records obtained in the lawsuit state they received, after attorneys' fees, costs and expenses, an award for the Class Representative, and notice and administration costs have been deducted. You do not need to do anything to receive a payment.

**What are my options?** If you are a Settlement Class Member and you do nothing, and the Court approves Settlement, you will receive a payment and be bound by all of the Settlement terms, including the releases of claims. If you do not want to receive a payment or release any claims, you must exclude yourself from the Settlement. To exclude yourself, you must mail a request for exclusion to the Settlement Administrator, Life Insurance Telemarketing Settlement Administrator, P.O. Box xxxx, City ST xxxx-xxxx] postmarked by [INSERT DATE] that includes your full name, address, telephone number or numbers, a statement that you wish to be excluded from the Settlement, and your personal signature. Unless you exclude yourself from this Settlement, you give up your right to sue or continue a lawsuit against US Coachways arising from telemarketing calls that violate state or federal law. You may object to the Settlement by submitting a written objection postmarked by [INSERT DATE] to: (1) Class Counsel, Edward A. Broderick, Broderick Law, P.C., 99 High St., Suite 304, Boston, MA 02110; and the (2) the Settlement Administrator (address provided above). Any objection must include the case name and number (*Bull v. US Coachways, Inc.*, No. 1:14-cv-05789 (N.D. Ill.)); your full name; address; telephone numbers that you maintain were called; all grounds for your objection, with factual and legal support for each; the identity of any witnesses you may call to testify; copies of any exhibits that you intend to introduce into evidence; and a statement of whether you intend to appear at the Final Approval Hearing with or without counsel.

47825.1 ACH

ACHCRD02

Case 3:14-cv-05789 Document 72-1 Filed 02/09/16 Page 30 of 43 PageID #:45

The Court in Madison has the final approval Hearing on [date] in the United States District Court
for the Western District of Wisconsin. At the Hearing, the Court will consider whether to approve: the proposed Settlement as fair,
reasonable, and adequate; Class Counsel's request for attorney's fees of up to one-third of the amount recovered in addition to their
costs and expenses; and a $15,000 payment to the Class Representative. The Court will also hear objections to the Settlement. If
approval is denied, reversed on appeal, or does not become final, the case will continue and claims will not be paid.

**Want more information?** To determine whether you are class member, or view the Settlement Agreement and other relevant
documents, please visit [website]. Pleadings and documents filed in Court may be reviewed or copied in the office of the Clerk. Please
do not call the Judge or the Clerk of the Court. They cannot give you advice on your options.







# Exhibit 2-B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAMES BULL, on behalf of himself and others similarly situated,     ) ) ) | |
|          ) | Case No. 1:14-cv-05789 |
|      Plaintiff,     ) ) | |
|          ) | Judge Rebecca R. Pallmeyer |
|      v.     ) ) | |
|          ) | Magistrate Judge Daniel G. Martin |
| US COACHWAYS, INC.,     ) ) | |
|      Defendant.     ) ) | |

<u>**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**</u>

**THIS NOTICE CONCERNS SETTLEMENT OF A LAWSUIT THAT
MAY ENTITLE YOU TO RECEIVE A PAYMENT**

This is a Notice of a proposed Settlement in a class action lawsuit captioned *Bull v. US Coachways, Inc.*, No. 1:14-cv-05789, pending in the U.S. District Court for the Northern District of Illinois ("the Lawsuit"). The Settlement would resolve a lawsuit brought on behalf of persons who received text messages allegedly made by US Coachways, Inc. ("US Coachways") that were directed to (a) telephone numbers listed on the National Do Not Call Registry and/or (b) cellular telephones.

**WHAT IS THE LAWSUIT ABOUT?**
The lawsuit alleges that telemarketing calls made by US Coachways violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). US Coachways denies that it violated any laws or that it did anything wrong, and has agreed to the settlement solely to avoid the burden, expense, risk and uncertainty of continuing the lawsuit. The Court has preliminarily certified this matter as a class action for settlement. The Settlement Class includes:

> All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date of this Settlement Agreement.

Records in this action indicate the telephone numbers, and many of the addresses and e-mail addresses of members of the Settlement Class.

**WHAT IS A CLASS ACTION?**
In a class action, one or more people or entities, called "class representatives" (in this case, James Bull), sue on behalf of people who have similar claims. All of those people together are a "class" or "class members." The Settlement in this Lawsuit, if approved by the Court, resolves

the claims of all members of the Settlement Class, except for those who exclude themselves from the Settlement Class.

## WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of the Plaintiff or US Coachways. Instead, both sides have agreed to a Settlement. This avoids the cost, risk, and delay of trial. Under the Settlement, members of the Settlement Class will have the opportunity to obtain a payment from sums recovered in a separate, future action against the US Coachways insurer, Illinois Union Insurance Company, in exchange for giving up certain legal rights. The Class Representative and the lawyers who brought the Lawsuit ("Class Counsel") think the Settlement is best for all members of the Settlement Class.

## WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement provides for a consent judgment to be entered against the defendant, US Coachways in the amount of $49,932,375, with US Coachways paying $50,000 and assigning its rights against its insurer, Illinois Union Insurance Company to attempt to satisfy that judgment. Class Counsel believe that US Coachways has insurance coverage from Illinois Union Insurance Company, but Illinois Union has denied coverage, and further believe that US Coachways lacks sufficient resources to satisfy a judgment entered in this action. The initial payment by US Coachways will be used to fund notice to the class, and to cover costs in pursuing an action against Illinois Union. Separate proceeding will be pursued by Plaintiff and Class Counsel to recover from Illinois Union, which then be placed in Settlement Fund. Any distributions from the Settlement Fund will be made only with Court approval following a second motion for preliminary approval as to distributions. Class Counsel (listed below) will ask the Court to award them up to one third of that amount in attorneys' fees in addition to their expenses for the substantial time and effort they put into this case. The Class Representative also will apply to the Court for payment of $15,000 in recognition of his service to the Settlement Class. Any amounts awarded to Class Counsel and the Class Representative will be paid from the Settlement Fund. The Settlement Fund also will cover costs associated with notice and administration of the Settlement. These costs include the cost of mailing this Notice and publishing notice of the Settlement, as well as the costs of administering the Settlement Fund. Attorneys' fees, the Class Representative service payments, and the expenses of notice and administration will be deducted from the Settlement Fund before the balance is divided and distributed to Settlement Class Members.

## HOW MUCH WILL I BE PAID?

If the Court approves the Settlement, every Settlement Class Member will be entitled to an equal payment from the Settlement Fund, if any proceeds can be recovered from US Coachways' insurance company. That is, the amount of the Settlement Fund available for distribution will be divided equally – sometimes referred to as "pro rata" – among all Settlement Class Members.

## YOUR OPTIONS

Your choices are to:

1. **Do Nothing and Potentially Receive a Payment.** If you are a member of the Settlement Class whose number and address is within the records obtained in the case and you do nothing, and the Settlement is finally approved by the Court, you will be bound by all of the terms of the Settlement, including the releases of claims, and you will receive a payment

from the Settlement Fund if any proceeds can be recovered from US Coachways' insurance company.

2. **Exclude yourself**. You may "opt out" and exclude yourself from the Settlement. If you opt out, you will not be eligible to receive any payment, and you will not release any claims you may have – you will be free to pursue whatever legal rights you may have at your own risk and expense. To exclude yourself from the Settlement, you must mail a request for exclusion to the Settlement Administrator (address below) postmarked by **[INSERT DATE]** that includes your full name, address, telephone number or numbers, a statement that you wish to be excluded from the Settlement, and your personal signature.

3. **Object to the Settlement**. You may object to the Settlement by submitting a written objection in *Bull v. US Coachways, Inc.*, No. 1:14-cv-05789, to (1) the Clerk of Court, U.S. District Court, Northern District of Illinois, 219 South Dearborn Street Chicago, IL 60604 and (2) Class Counsel and (3) the Settlement Administrator, postmarked by **[INSERT DATE]**. Any objection to the Settlement must include your full name; address; telephone numbers that you maintain were called; all grounds for your objection, with factual and legal support for each stated ground; the identity of any witnesses you may call to testify; copies of any exhibits that you intend to introduce into evidence at the Final Approval Hearing; and a statement of whether you intend to appear at the Final Approval Hearing with or without counsel. Attendance at the hearing is not necessary; however, persons wishing to be heard orally (either personally or through counsel) in opposition to the approval of the Settlement are required to file a timely objection as set forth above.

## WHEN WILL I BE PAID?
If the Court approves the Settlement, proceeds can be recovered from US Coachways' insurance company, you will be paid as soon as possible after the court order becomes final and the funds from the insurance company are recovered. If there is an appeal of the Settlement, payment may be delayed. The Settlement Administrator will provide information about the timing of payment at **[WEBSITE]**.

## WHO REPRESENTS THE SETTLEMENT CLASS?
The attorneys who have been appointed by the Court to represent the Settlement Class are:

| | | |
|---|---|---|
| Edward A. Broderick | Matthew P. McCue | Brian K. Murphy |
| Anthony I. Paronich | The Law Office of | Joseph F. Murray |
| Broderick Law, P.C. | Matthew P. McCue | Murray Murphy Moul |
| 99 High St., Suite 304 | 1 South Ave, Third Floor | + Basil LLP |
| Boston, MA 02110 | Natick, MA 01760 | 114 Dublin Road |
| | | Columbus, OH 43204 |

## WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?
If the Court gives final approval to the Settlement, Members of the Settlement Class will be limited to recovering from any sums recovered against US Coachways insurer Illinois Union Insurance Company ("Illinois Union") in a subsequent action against Illinois Union or through a

subsequent settlement with Illinois Union, in addition to from the $50,000 contributed toward the Settlement by US Coachways. If you choose not to participate in this settlement and exclude yourself, and you file your own lawsuit for the violations alleged in this case you could recover up to $1500 per call plus an order prohibiting future calls. However, the lawyers in this case would not represent you in such a case, and US Coachways would vigorously assert all available defenses, and you could lose and receive nothing. This settlement permits class members the opportunity to obtain a smaller amount of money, risk-free.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?**
The Court will hold a Final Approval Hearing (the "Hearing") at **[TIME]** on **[DATE]**. The hearing will be held at the United States District Court for the Northern District of Illinois. At the Hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. The Court will hear objections to the Settlement, if any. At the Hearing, the Court will also decide how much to pay Class Counsel. After the Hearing, the Court will decide whether to approve the Settlement. The Hearing may be continued at any time by the Court without further notice to you. If the Court does not approve the Settlement, or if it approves the Settlement and the approval is reversed on appeal, or if the Settlement does not become final for some other reason, you will not be paid at this time and the case will continue. The parties may negotiate a different settlement or the case may go to trial.

**DO NOT ADDRESS QUESTIONS ABOUT THE SETTLEMENT OR THE LAWSUIT TO THE CLERK OF THE COURT OR TO THE JUDGE. PLEASE DIRECT QUESTIONS TO:**

**SETTLEMENT ADMINISTRATOR – [INSERT]**

**Toll-Free 1-_____**


DATED: _____, 2016

4

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

JAMES BULL, on behalf of himself and   )
others similarly situated,   )
  )   Case No. 1:14-cv-05789
               Plaintiff,   )
  )   Judge Rebecca R. Pallmeyer
         v.   )
  )   Magistrate Judge Daniel G. Martin
US COACHWAYS, INC.,   )
  )
          Defendant.   )
  )

## FINAL APPROVAL ORDER

This matter having come before the Court on Plaintiff's motion for final approval (the "Motion for Final Approval") of a proposed class action settlement (the "Settlement") of the above-captioned action (the "Action") between Plaintiff James Bull and Defendant US Coachways, Inc., pursuant to the parties' Class Action Settlement Agreement (the "Agreement" or the "Settlement Agreement"), and having duly considered all papers filed and arguments presented, the Court hereby finds and orders as follows:

1.     For purposes of settlement only, the Court has jurisdiction over the subject matter of this action and personal jurisdiction over the parties and the members of the Settlement Class described below.

2.     The Court preliminarily approved the Settlement Agreement and entered the Preliminary Approval Order dated _____, 2016, and notice was given to the Class as under the terms of the Preliminary Approval Order.

3.     The Court has read and considered the papers filed in support of the Motion, including the Settlement Agreement and the exhibits thereto, memoranda and arguments submitted on behalf of the Plaintiff, Settlement Class Members, and the Defendant, and

supporting declarations. The Court has also read and considered any written objections filed by
Settlement Class Members. [Alternatively: "The Court has not received any objections from any
person regarding the Settlement."] The Court held a hearing on _____, 2016, at which time
the parties [and objecting Settlement Class Members] were afforded the opportunity to be heard
in support of or in opposition to the Settlement. Furthermore, the Court finds that notice under
the Class Action Fairness Act was effectuated on _____, 2016, and that ninety (90) days has
passed without comment or objection from any governmental entity

    4.     The Court finds that:

    (a)     This agreement was made in reasonable anticipation of potential liability against
defendant would arise from a finding that defendant sent 391,459 unsolicited text advertisements
in violation of 47 U.S.C. § 227.

    (b)     The settlement amount is fair and reasonable because it is within the range of
statutory damages that could be awarded for the claims made by the class and potential damages
that could be awarded if the class prevailed on its claims;

    (c)     Defendant's decision to agree to entry of judgment is reasonable based on the risk
of an adverse judgment, the cost of the defense, and the uncertainties of litigation;

    (d)     The evidence adduced during discovery supports a finding that 391,459 text were
sent by US Coachways for which US Coachways had not received prior express permission to
send;

    (e)     Defendant did not believe that it was violating any laws or regulations by sending
the texts;

    (f)     Defendant tendered a claim for the action to its insurer Illinois Union Insurance
Company ("Illinois Union") for defense and indemnity and Illinois Union denied coverage to

defendant under the insurance policy.

(g)     Defendant lacks financial resources to withstand the potential judgment in this case, or to fund a reasonable settlement from its own funds.

6.     Based on the papers filed with the Court and the presentations made to the Court at the hearing, the Court now gives final approval to the Settlement and finds that the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class. This finding is supported by, among other things, the complex legal and factual posture of the Action, the fact that the Settlement is the result of arms' length negotiations, and the settlement benefits being made available to Settlement Class Members.

**Certification of Settlement Class**

7.     Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for purposes of settlement only, the following "Settlement Class" is preliminarily certified:

> All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date of the Settlement Agreement.

8.     All Persons who are members of the Settlement Class who have not submitted a timely request for exclusion are referred to collectively "Settlement Class Members" or individually as a "Settlement Class Member."

9.     For purposes of settlement only, the Court finds that the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been preliminarily satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) the claims of the class representative are typical of the claims of the Settlement Class Members; (d) the class representative will fairly and adequately represent the interests of

3

the Settlement Class Members; (e) questions of law and fact common to the Settlement Class

Members predominate over any questions affecting only individual Settlement Class Members;

and (f) a class action is superior to other available methods for the fair and efficient adjudication

of the controversy. The Court further finds, for purposes of settlement only, that: (A) Settlement

Class Members have a limited interest in individually prosecuting the claims at issue; (B) the

Court is satisfied with Plaintiff's counsel's representation that they are unaware of any other

litigation commenced regarding the claims at issue by members of the Settlement Class; (C) it is

desirable to concentrate the claims in this forum; and (D) it is unlikely that there will be

difficulties encountered in administering this Settlement.

      10.     Under Federal Rule of Civil Procedure 23, Plaintiff James Bull is hereby

appointed Class Representative and the following are hereby appointed as Class Counsel:

      Brian K. Murphy
      Joseph F. Murray
      Murray Murphy Moul + Basil LLP
      114 Dublin Road
      Columbus, OH 43204

      Matthew McCue
      THE LAW OFFICE OF MATTHEW P. MCCUE
      1 South Avenue, Suite 3
      Natick, Massachusetts 01760

      Edward Broderick
      Anthony Paronich
      BRODERICK LAW, P.C.
      99 High St., Suite 304
      Boston, MA 02110

**Notice and Administration**

      11.     The Court hereby approves of Kurtzman Carson Consultants to perform the

functions and duties of the Settlement Administrator set forth in the Settlement Agreement –

including effectuating the Notice Plan, providing Notice to the Settlement Class, and to provide

such other administration services as are reasonably necessary to facilitate the completion of the Settlement.

12.    The Court has determined that the Notice given to the Settlement Class, in accordance with the Notice Plan in the Agreement and the Preliminary Approval Order, fully and accurately informed members of the Settlement Class of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process and any other applicable law.

13.    The Court finds that the Class Administrator properly and timely notified the appropriate state and federal officials of the Settlement Agreement under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

14.    All persons whose names were included on the list supplied by Plaintiff as having made timely and valid requests for exclusion are excluded from the Settlement Class and are not bound by this Final Approval Order and Judgment.

15.    The Court orders the parties to the Settlement Agreement to perform their obligations thereunder. The Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

16.    The Court adjudges that the Plaintiff and the Class are enjoined from seeking to execute on, attach or otherwise acquire any property or assets of Defendant and/or its officers, directors, employees, members, shareholders, agents, executors, successors and assigns of any kind other than from the Insurance Policy and claims against Illinois Union to satisfy or recover on the Judgment and agree to seek recovery to satisfy the Judgment only against Illinois Union.

17.    The Court enters judgment against Defendant US Coachways, Inc. in the total

5

amount of $49,932,375 on the First Amended Complaint in favor of the Class, from which the partial payment of _____ by US Coachways, Inc. shall be deducted, *provided however,* that the Judgment may not be satisfied or executed on any assets or property of Defendant, officers, directors, employees, members, shareholders, agents, executors, successors and assigns, other than Illinois Union. The Judgment may not be satisfied by attaching, executing on, or otherwise acquiring any other asset or property of Defendant and/or its officers, directors, employees, members, shareholders, agents, executors, successors and assigns (apart from US Coachways interest in the Illinois Union Insurance Policy and any bad faith rights against Illinois Union, which US Coachways has assigned to Plaintiff and the Class). This provision does not release the Judgment against Defendant to be entered herein, nor does it release the asserted claims that are the basis for the entry of the Judgment or the right to enforce the Judgment (which claims are merged into this Judgment) in favor of the Plaintiff and the Class against Illinois Union.

18. In the event of recovery by Plaintiff and the Class from Illinois Union, further distributions from the Settlement Fund to Class members, an incentive award, and will be made on additional approval by the Court, in accordance with the distribution formula approved by the Court, or as modified by further Court order.

19. Without affecting the finality of this Final Approval Order and Judgment in any way, the Court retains jurisdiction over: (a) implementation and enforcement of the Settlement Agreement until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto pursuant to the Settlement Agreement have been performed; (b) any other action necessary to conclude the Settlement and to administer, effectuate, interpret and monitor compliance with the provisions of the Settlement Agreement; and (c) all parties to this Action and Settlement Class Members for the purpose of

6

implementing and enforcing the Settlement Agreement, including authorizing distributions from the Settlement Fund of any proceeds recovered from Illinois Union.

20. Any objections to the Settlement Agreement are overruled and denied in all respects. The Court finds that no just reason exists for delay in entering this Final Approval Order and Judgment. Accordingly, the Clerk is hereby directed forthwith to enter this Final Approval Order and Judgment.

DATED: _____, 2016

_____
**Rebecca R. Pallmeyer**
**United States District Judge**

7

# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BULL, on behalf of himself and others similarly situated, | ) )<br>) Case No. 1:14-cv-05789<br>) )<br>) Judge Rebecca R. Pallmeyer<br>) )<br>) Magistrate Judge Daniel G. Martin<br>) |
| Plaintiff, | |
| v. | |
| US COACHWAYS, INC., | |
| Defendant. | |

### PRELIMINARY APPROVAL ORDER

WHEREAS, this Action is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*,

WHEREAS, Plaintiff James Bull has filed an unopposed Motion for Preliminary Approval of a Class Settlement (the "Motion");

WHEREAS, the Motion attaches and incorporates a Settlement Agreement (the "Settlement Agreement") that, together with the exhibits thereto, sets forth the terms and conditions for the settlement of claims, on a class wide basis, against US Coachways, Inc. ("US Coachways") as more fully set forth below; and

WHEREAS, the Court having carefully considered the Motion and the Settlement Agreement, and all of the files, records, and proceedings herein, and the Court determining upon preliminary examination that the Settlement Agreement appears to be fair, reasonable and adequate, and that the proposed plan of notice to the Settlement Class is the best notice practicable under the circumstances and consistent with requirements of due process and Federal Rule of Civil Procedure 23, and that a hearing should and will be held after notice to the Settlement Class to confirm that the Settlement Agreement is fair, reasonable, and adequate, and

to determine whether this Court should enter a judgment approving the Settlement and an order of dismissal of this action based upon the Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     For purposes of settlement only, the Court has jurisdiction over the subject matter of this action and personal jurisdiction over the parties and the members of the Settlement Class described below.

2.     The Court finds that:

(a)     This agreement was made in reasonable anticipation that potential liability against Defendant would arise from a finding that Defendant sent 391,459 unsolicited text advertisements in violation of 47 U.S.C. § 227.

(b)     The settlement amount is fair and reasonable because it is within the range of statutory damages that could be awarded for the claims made by the class and potential damages that could be awarded if the class prevailed on its claims;

(c)     Defendant's decision to agree to entry of judgment is reasonable based on the risk of an adverse judgment, the cost of the defense, and the uncertainties of litigation;

(d)     The evidence adduced during discovery supports a finding that 391,459 text message advertisements were sent by US Coachways for which US Coachways had not received prior express permission to send;

(e)     Defendant did not believe that it was violating any laws or regulations by sending the texts;

(f)     Defendant tendered a claim for the action to its insurer Illinois Union Insurance Company ("Illinois Union") for defense and indemnity and Illinois Union denied coverage to Defendant under the insurance policy.

2

(g)    Defendant lacks financial resources to withstand the potential judgment in this case, or to fund a reasonable settlement from its own funds.

**Certification of Settlement Classes**

1.    Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for purposes of settlement only, the following "Settlement Classes" are preliminarily certified, consisting of the following classes:

> All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date of this Settlement Agreement.

2.    All persons who are members of the Settlement Class who have not submitted a timely request for exclusion are referred to collectively as "Settlement Class Members" or individually as a "Settlement Class Member."

3.    For purposes of settlement only, the Court finds that the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been preliminarily satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) the claims of the class representative are typical of the claims of the Settlement Class Members; (d) the class representative will fairly and adequately represent the interests of the Settlement Class Members; (e) questions of law and fact common to the Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court further finds, for purposes of settlement only, that: (A) Settlement Class Members have a limited interest in individually prosecuting the claims at issue; (B) the

3

Court is satisfied with Plaintiff's counsel's representation that they are unaware of any other litigation commenced regarding the claims at issue by members of the Settlement Class; (C) it is desirable to concentrate the claims in this forum; and (D) it is unlikely that there will be difficulties encountered in administering this Settlement.

      4.      Under Federal Rule of Civil Procedure 23, and for settlement purposes only, Plaintiff James Bull is hereby appointed Class Representative and the following are hereby appointed as Class Counsel:

> Brian K. Murphy
> Joseph F. Murray
> Murray Murphy Moul + Basil LLP
> 114 Dublin Road
> Columbus, OH 43204
>
> Matthew McCue
> THE LAW OFFICE OF MATTHEW P. MCCUE
> 1 South Avenue, Suite 3
> Natick, Massachusetts 01760
>
> Edward Broderick
> Anthony Paronich
> BRODERICK LAW, P.C.
> 99 High St., Suite 304
> Boston, MA 02110

**Notice and Administration**

      5.      The Court hereby approves of Kurtzman Carson Consultants to perform the functions and duties of the Settlement Administrator set forth in the Settlement Agreement – including effectuating the Notice Plan, providing Notice to the Settlement Class, and to provide such other administration services as are reasonably necessary to facilitate the completion of the Settlement.

      6.      The Court has carefully considered the Notice Plan set forth in the Settlement Agreement. The Court finds that the Notice Plan constitutes the best notice practicable under the

circumstances, and satisfies fully the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process and any other applicable law, such that the terms of the Settlement Agreement, and this Court's final judgment will be binding on all Settlement Class Members.

7.      The Court hereby approves the Notice Plan and the form, content, and requirements of the Notice described in and attached as exhibits to the Settlement Agreement. The Settlement Administrator shall cause the Notice Plan to be completed on or before **April 20, 2016.** Class Counsel shall, prior to the Final Approval Hearing, file with the Court a declaration executed by the Settlement Administrator attesting to the timely completion of the Notice Plan.

8.      All costs of providing Notice to the Settlement Class shall be paid out of the Settlement Fund from the initial payment by US Coachways, as provided by the Settlement Agreement.

9.      In the event of recovery by Plaintiff and the Settlement Class from Illinois Union, further distributions from the Settlement Fund to Settlement Class members, an incentive award, will be made on additional approval by the Court, following a second motion for preliminary approval of distributions from the Settlement Fund, including a request for an incentive award to the Class Representative, an award of attorneys' fees and costs, notice to the Settlement Class and the entry of final approval by the Court.

**Exclusion and "Opt-Outs"**

10.     Each and every member of the Settlement Class shall be bound by all determinations and orders pertaining to the Settlement, unless such persons request exclusion from the Settlement in a timely and proper manner, as hereinafter provided.

11.     A member of the Settlement Class wishing to request exclusion (or "opt-out")

5

from the Settlement shall mail the request in written form, by first class mail, postage prepaid, and postmarked no later than **May 30, 2016**, to the Settlement Administrator at the address specified in the Notice. In the written request for exclusion, the member of the Settlement Class must state his or her full name, address, and telephone numbers. Further, the written request for exclusion must include a statement that the member of the Settlement Class submitting the request wishes to be excluded from the Settlement, and the personal signature of the member of the Settlement Class submitting the request. The request for exclusion shall not be effective unless the request for exclusion provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court. No member of the Settlement Class, or any person acting on behalf of or in concert or in participation with a member of the Settlement Class, may request exclusion of any other member of the Settlement Class from the Settlement.

12.     Members of the Settlement Class who timely request exclusion from the Settlement will relinquish their rights to benefits under the Settlement and will not release any claims against US Coachways.

13.     All Settlement Class Members who do not timely and validly request exclusion shall be so bound by all terms of the Settlement Agreement and by the Final Approval Order and Judgment even if they have previously initiated or subsequently initiate individual litigation or other proceedings against US Coachways.

14.     The Settlement Administrator will promptly provide all Parties with copies of any exclusion requests, and Plaintiff shall file a list of all persons who have validly opted-out of the Settlement with the Court prior to the Final Approval Hearing.

**Objections**

15.    Any Settlement Class Member who does not file a timely request for exclusion, but who wishes to object to approval of the proposed Settlement, to the potential award of attorneys' fees and expenses, or to the compensation award to the Class Representative must file with the Court a written statement that includes: his or her full name; address; telephone numbers that he or she maintains were called; all grounds for the objection, with factual and legal support for each stated ground; the identity of any witnesses he or she may call to testify; copies of any exhibits that he or she intends to introduce into evidence at the Final Approval Hearing; and a statement of whether he or she intends to appear at the Final Approval Hearing with or without counsel. Any objecting Settlement Class Member also must send a copy of the filing to the Settlement Administrator at the same time it is filed with the Court. The Court will consider objections to the Settlement, to the award of attorneys' fees and expenses, or to the compensation award to the Class Representative only if, on or before **May 30, 2016**, such objections and any supporting papers are filed in writing with the Clerk of this Court and served on the Settlement Administrator.

16.    A Settlement Class Member who has timely filed a written objection as set forth above may appear at the Final Approval Hearing in person or through counsel to be heard orally regarding their objection. It is not necessary, however, for a Settlement Class Member who has filed a timely objection to appear at the Final Approval Hearing. No Settlement Class Member wishing to be heard orally in opposition to the approval of the Settlement and/or the request for attorneys' fees and expenses and/or the request for a compensation award to the Class Representative will be heard unless that person has filed a timely written objection as set forth above. No non-party, including members of the Settlement Class who have timely opted-out of

7

the Settlement, will be heard at the Final Approval Hearing.

17. Any member of the Settlement Class who does not opt out or make an objection to the Settlement in the manner provided herein shall be deemed to have waived any such objection by appeal, collateral attack, or otherwise, and shall be bound by the Settlement Agreement, and all aspects of the Final Approval Order and Judgment. This includes the fact that US Coachways agrees to the entry of judgment against it in the amount of $49,932,375 in favor of the Class, *provided, however*, that the Judgment may not be satisfied from or executed on any assets or property of Defendant, and/or its past, present or future officers, directors, employees, members, shareholders, agents, executors, affiliates, divisions, subsidiaries, successors and assigns, other than Illinois Union.

**Final Approval Hearing**

18. The Federal Rule of Civil Procedure 23(e) Final Approval Hearing is hereby scheduled to be held before the Court on **July 7, 2016 at 10:00 am** for the following purposes:

    (a) to finally determine whether the applicable prerequisites for settlement class action treatment under Federal Rules of Civil Procedure 23(a) and (b) are met;

    (b) to determine whether the Settlement is fair, reasonable and adequate, and should be approved by the Court;

    (c) to determine whether the judgment as provided under the Settlement Agreement should be entered, including a bar order prohibiting Settlement Class Members from further collecting on claims directly against US Coachways and shall be limited to collecting against Illinois Union in the Settlement Agreement;

    (d) to consider the application for an award of attorneys' fees and expenses of Class Counsel;

8

    (e)    to consider the application for an compensation award to the Class Representative;

    (f)    to consider the distribution of the Settlement Benefits under the terms of the Settlement Agreement; and

    (g)    to rule upon such other matters as the Court may deem appropriate.

19. On or before fourteen (14) days prior to the Final Approval Hearing, Class Counsel shall file and serve (i) a motion for final approval; and (ii) any application for a compensation award to the Class Representative. The Final Approval Hearing may be postponed, adjourned, transferred or continued by order of the Court without further notice to the Settlement Class. At, or following, the Final Approval Hearing, the Court may enter a Final Approval Order and Judgment in accordance with the Settlement Agreement that will adjudicate the rights of all class members.

20. For clarity, the deadlines the Parties shall adhere to are as follows:

| | |
|---|---|
| **Class Notice Mailed by:** | **April 20, 2016** |
| **Objection/Exclusion:** | **May 30, 2016** |
| **Motion for Final Approval:** | **June 23, 2016** |
| **Final Approval Hearing:** | **July 7, 2016 at 10:00 am** |

21. Settlement Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

**Further Matters**

22. All discovery and other pretrial proceedings in the Action as between the Plaintiff and US Coachways are stayed and suspended until further order of the Court except such actions as may be necessary to implement the Settlement Agreement and this Order.

23.     In the event that the Settlement Agreement is terminated under the terms of the Settlement Agreement, or for any reason whatsoever the approval of it does not become final and no longer subject to appeal, then: (i) the Settlement Agreement shall be null and void, including any provisions related to the award of attorneys' fees and expenses, and shall have no further force and effect with respect to any party in this Action, and shall not be used in this Action or in any other proceeding for any purpose; (ii) all negotiations, proceedings, documents prepared, and statements made in connection therewith shall be without prejudice to any person or party hereto, shall not be deemed or construed to be an admission by any party of any act, matter, or proposition, and shall not be used in any manner of or any purpose in any subsequent proceeding in this Action or in any other action in any court or other proceeding, provided, however, that the termination of the Settlement Agreement shall not shield from subsequent discovery any factual information provided in connection with the negotiation of this Settlement Agreement that would ordinarily be discoverable but for the attempted settlement; (iii) this Order shall be vacated and of no further force or effect whatsoever, as if it had never been entered; and (iv) any party may elect to move the Court to implement the provisions of this paragraph, and none of the non-moving parties (or their counsel) shall oppose any such motion.

24.     The Court retains jurisdiction to consider all further matters arising out of or connected with the Settlement.

DATED: March 17, 2016

_____
**Rebecca R. Pallmeyer**
**United States District Judge**

# EXHIBIT I

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES BULL, on behalf of himself and others similarly situated, | ) ) ) | |
| | ) | Case No. 1:14-cv-05789 |
| Plaintiff, | ) ) | Judge Rebecca R. Pallmeyer |
| v. | ) ) | Magistrate Judge Daniel G. Martin |
| US COACHWAYS, INC., | ) ) | |
| Defendant. | ) ) ) | |

## AMENDMENT TO PRELIMINARY APPROVAL ORDER

WHEREAS, on March 17, 2016, this Court entered a Preliminary Approval Order setting forth certain dates for a proposed plan of notice to the Settlement Class and a hearing to confirm that the Settlement Agreement in this matter is fair, reasonable, and adequate, and to determine whether this Court should enter a judgment approving the Settlement and an order of dismissal of this action based upon the Settlement Agreement;

WHEREAS, on May 5, 2016, this Court entered an Order striking the dates in its original Preliminary Approval Order to allow the parties additional time to gather additional data to maximize the effectiveness of the proposed plan of notice to the Settlement Class; and

WHEREAS, the parties are in agreement that the dates in the original Preliminary Approval Order should be revised and amended as set forth below.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.     The deadlines for the Preliminary Approval Order in this matter originally stricken by this Court are hereby replaced by the following dates:

**Class Notice Mailed by:**            **September 2, 2016**

**Objection/Exclusion:**               **October 14, 2016**

**Motion for Final Approval:**      <u>**October 28, 2016**</u>

**Final Approval Hearing:**      <u>**November 9, 2016 at 9:30 a.m.**</u>

     2.      All other provisions of the Preliminary Approval Order remain in effect to the

extent not inconsistent with the above date changes.

DATED: August 3, 2016      _____

                            **Rebecca R. Pallmeyer**
                            **United States District Judge**

# EXHIBIT J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAMES BULL, on behalf of himself and others similarly situated, )<br>)<br>) | |
| Plaintiff, )<br>) | Case No. 1:14-cv-05789 |
| )<br>) | Judge Rebecca R. Pallmeyer |
| v. )<br>) | Magistrate Judge Daniel G. Martin |
| US COACHWAYS, INC., )<br>) | |
| Defendant. ) | |

**FINAL APPROVAL ORDER**

This matter having come before the Court on Plaintiff's motion for final approval (the "Motion for Final Approval") of a proposed class action settlement (the "Settlement") of the above-captioned action (the "Action") between Plaintiff James Bull and Defendant US Coachways, Inc. ("US Coachways"), pursuant to the parties' Class Action Settlement Agreement (the "Agreement" or the "Settlement Agreement"), and having duly considered all papers filed and arguments presented, the Court hereby finds and orders as follows:

1.    For purposes of settlement only, the Court has jurisdiction over the subject matter of this Action and personal jurisdiction over the parties and the members of the Settlement Class described below.

2.    The Court preliminarily approved the Settlement Agreement and entered the Preliminary Approval Order dated August 4, 2016, and notice was given to the Class as under the terms of the Preliminary Approval Order.

3.    The Court has read and considered the papers filed in support of the Motion, including the Settlement Agreement and the exhibits thereto, memoranda and arguments submitted on behalf of the Plaintiff, Settlement Class Members, and the Defendant, and

supporting declarations. The Court has not received any objections from any person regarding the Settlement. The Court held a hearing on November 9, 2016, at which time the parties were afforded the opportunity to be heard in support of or in opposition to the Settlement. Furthermore, the Court finds that notice under the Class Action Fairness Act was effectuated on March 18, 2016, and that ninety (90) days has passed without comment or objection from any governmental entity

4. The Court finds that:

(a) This agreement was made in reasonable anticipation of potential liability against Defendant which would arise from a finding that Defendant sent 391,459 unsolicited text advertisements in violation of 47 U.S.C. § 227;

(b) The settlement amount is fair and reasonable because it is within the range of statutory damages that could be awarded for the claims made by the Class and potential damages that could be awarded if the Class prevailed on its claims;

(c) Defendant's decision to agree to entry of judgment is reasonable based on the risk of an adverse judgment, the cost of the defense, and the uncertainties of litigation;

(d) The evidence adduced during discovery supports a finding that 391,459 text were sent by US Coachways for which US Coachways had not received prior express permission to send;

(e) Defendant did not believe that it was violating any laws or regulations by sending the texts;

(f) Defendant tendered a claim for the Action to its insurer Illinois Union Insurance Company ("Illinois Union") for defense and indemnity and Illinois Union denied coverage to Defendant under the insurance policy; and

(g)     Defendant lacks financial resources to withstand the potential judgment in this case, or to fund a reasonable settlement from its own funds.

6.     Based on the papers filed with the Court and the presentations made to the Court at the hearing, the Court now gives final approval to the Settlement and finds that the Settlement is fair, adequate, reasonable, and in the best interests of the Settlement Class. This finding is supported by, among other things, the complex legal and factual posture of the Action, the fact that the Settlement is the result of arms' length negotiations, and the settlement benefits being made available to Settlement Class Members.

**Certification of Settlement Class**

7.     Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for purposes of settlement only, the following "Settlement Class" is preliminarily certified:

> All persons within the United States who received one or more text message advertisements on behalf of US Coachways, Inc. at any time in the four years prior to the filing of the Complaint continuing through the date of the Settlement Agreement.

8.     All persons who are members of the Settlement Class who have not submitted a timely request for exclusion are referred to collectively "Settlement Class Members" or individually as a "Settlement Class Member."

9.     For purposes of settlement only, the Court finds that the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been preliminarily satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) the claims of the class representative are typical of the claims of the Settlement Class Members; (d) the class representative will fairly and adequately represent the interests of the Settlement Class Members; (e) questions of law and fact common to the Settlement Class

Members predominate over any questions affecting only individual Settlement Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Court further finds, for purposes of settlement only, that: (1) Settlement Class Members have a limited interest in individually prosecuting the claims at issue; (2) the Court is satisfied with Plaintiff's counsel's representation that they are unaware of any other litigation commenced regarding the claims at issue by members of the Settlement Class; (3) it is desirable to concentrate the claims in this forum; and (4) it is unlikely that there will be difficulties encountered in administering this Settlement.

10.    Under Federal Rule of Civil Procedure 23, Plaintiff James Bull is hereby appointed Class Representative and the following are hereby appointed as Class Counsel, and find the following to be adequate representatives of the class:

> Brian K. Murphy
> MURRAY MURPHY MOUL + BASIL LLP
> 1114 Dublin Road
> Columbus, OH 43215
>
> Matthew McCue
> THE LAW OFFICE OF MATTHEW P. MCCUE
> 1 South Avenue, Suite 3
> Natick, MA 01760
>
> Edward Broderick
> Anthony Paronich
> BRODERICK & PARONICH, P.C.
> 99 High St., Suite 304
> Boston, MA 02110

**Notice and Administration**

11.    The Court hereby approves of Kurtzman Carson Consultants to perform the functions and duties of the Settlement Administrator set forth in the Settlement Agreement – including effectuating the Notice Plan, providing Notice to the Settlement Class, and to provide

4

such other administration services as are reasonably necessary to facilitate the completion of the Settlement.

12.      The Court has determined that the Notice given to the Settlement Class, in accordance with the Notice Plan in the Agreement and the Preliminary Approval Order, fully and accurately informed members of the Settlement Class of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process and any other applicable law.

13.      The Court finds that the Class Administrator properly and timely notified the appropriate state and federal officials of the Settlement Agreement under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

14.      All persons whose names were included on the list supplied by Plaintiff as having made timely and valid requests for exclusion are excluded from the Settlement Class and are not bound by this Final Approval Order and Judgment.

15.      The Court orders the parties to the Settlement Agreement to perform their obligations thereunder. The Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

16.      The Court adjudges that the Plaintiff and the Class are enjoined from seeking to execute on, attach or otherwise acquire any property or assets of Defendant and/or its officers, directors, employees, members, shareholders, agents, executors, successors and assigns of any kind other than from the Insurance Policy and claims against Illinois Union to satisfy or recover on the Judgment and agree to seek recovery to satisfy the Judgment only against Illinois Union.

17.      The Court enters judgment against Defendant US Coachways, Inc. in the total

5

amount of $49,932,375 on the First Amended Complaint in favor of the Class, from which the partial payment of $50,000 by US Coachways, Inc. shall be deducted, *provided however,* that the Judgment may not be satisfied or executed on any assets or property of Defendant, officers, directors, employees, members, shareholders, agents, executors, successors and assigns, other than Illinois Union. The Judgment may not be satisfied by attaching, executing on, or otherwise acquiring any other asset or property of Defendant and/or its officers, directors, employees, members, shareholders, agents, executors, successors and assigns (apart from US Coachways' interest in the Illinois Union Insurance Policy and any bad faith rights against Illinois Union, which US Coachways has assigned to Plaintiff and the Class). This provision does not release the Judgment against Defendant to be entered herein, nor does it release the asserted claims that are the basis for the entry of the Judgment or the right to enforce the Judgment (which claims are merged into this Judgment) in favor of the Plaintiff and the Class against Illinois Union.

18.     In the event of recovery by Plaintiff and the Class from Illinois Union, further distributions from the Settlement Fund to Class members, an incentive award, and will be made on additional approval by the Court, in accordance with the distribution formula approved by the Court, or as modified by further Court order.

19.     Without affecting the finality of this Final Approval Order and Judgment in any way, the Court retains jurisdiction over: (a) implementation and enforcement of the Settlement Agreement until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto pursuant to the Settlement Agreement have been performed; (b) any other action necessary to conclude the Settlement and to administer, effectuate, interpret and monitor compliance with the provisions of the Settlement Agreement; and (c) all parties to this Action and Settlement Class Members for the purpose of

6

implementing and enforcing the Settlement Agreement, including authorizing distributions from the Settlement Fund of any proceeds recovered from Illinois Union.

20.     The Court finds that no just reason exists for delay in entering this Final Approval Order and Judgment. Accordingly, the Clerk is hereby directed forthwith to enter this Final Approval Order and Judgment. The Court retains jurisdiction over this Action to administer any funds recovered from US Coachways' insurers.

DATED November 9, 2016

Rebecca R. Pallmeyer
United States District Judge

7