UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ILLINOIS UNION INSURANCE COMPANY,

                Plaintiff,

  -against-

US BUS CHARTER & LIMO INC., doing
business as US Coachways, and JAMES
BULL,

                Defendants.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 1:16-cv-06602-FB-RLM

*Appearances*:
*For Plaintiff*:
DAVID SCOTT SHEIFFER
RICHARD WINSTON BOONE, JR.
Wilson, Elser
150 East 42nd Street
New York, NY 10017

*For Defendants*:
MATTHEW MCCUE
Law Office Of Matthew McCue
1 South Ave Third Floor
Natick, MA 01760

BRIAN KEVIN MURPHY
Murray Murphy Moul Basil LLP
1114 Dublin Road
Columbus, OH 43215

KIM RICHMAN
The Richman Law Group
81 Prospect Street
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      This insurance coverage dispute reaches the Court by way of a winding path that began in the Northern District of Illinois; it involves three lawsuits and one insurance policy. In 2014, James Bull sued US Bus Charter & Limo Inc. d/b/a US Coachways ("US Coachways") in the Northern District of Illinois on behalf of a class ("the

Underlying Class Action"). US Coachways notified its insurer, Illinois Union Insurance Company ("Illinois Union"), seeking indemnification in the Underlying Class Action under a Miscellaneous Professional Liability Policy ("the Policy") issued to US Coachways by Illinois Union. Illinois Union denied coverage. US Coachways then settled the Underlying Class Action with Bull and the class, agreeing to a Judgment in their favor of nearly $50 million. As part of the Settlement Agreement, US Coachways assigned to Bull and the class its right to challenge Illinois Union's denial of coverage in court and, if successful, to recover under the Policy.

Illinois Union beat Bull to the punch. It sued Bull and US Coachways in this Court,[1] seeking a declaration that the Policy did not cover the Judgment in the Underlying Class Action. Bull moved under Federal Rule of Civil Procedure 12(b)(2) to dismiss Illinois Union's declaratory judgment complaint for lack of personal jurisdiction, arguing that he lacked sufficient contacts with New York.

Meanwhile, Bull sued Illinois Union back in the Northern District of Illinois. His complaint is essentially the mirror image of Illinois Union's declaratory judgment action: as US Coachways's assignee, he seeks coverage under the Policy for the Judgment in the Underlying Class Action. The Northern District of Illinois transferred the case to this Court under 28 U.S.C. § 1404(a), and the Court consolidated it with Illinois Union's

---

[1] The Policy was issued in New York, and US Coachways has an office in Staten Island, NY. Although US Coachways is named as a defendant in the declaratory judgment action, it has not made an appearance.

2

declaratory judgment action.

In addition to Bull's still-pending motion to dismiss for lack of personal jurisdiction, both Bull and Illinois Union move for partial summary judgment under Rule 56(a) on the issue of coverage. For the reasons discussed below, Bull's motion to dismiss is denied and his motion for partial summary judgment is granted. Illinois Union's partial summary judgment motion is denied.

# I

The parties have jointly stipulated to and submitted evidence of the following facts.

**A. The Underlying Class Action and the Settlement Agreement**

In the Underlying Class Action, Bull alleged that US Coachways had sent him and class members unsolicited text messages promoting deals on bus and limousine rentals from December 2013 to April 2014 in violation of the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227. Illinois Union refused to participate in settlement discussions between Bull and US Coachways, insisting that the Policy did not cover the alleged TCPA violations.

On November 9, 2016, the Northern District of Illinois approved the Settlement Agreement executed by Bull and US Coachways. Pursuant to the Agreement, US Coachways accepted a $49,935,375 Judgment against it, "*provided, however*, that the Judgment [could] not be satisfied from or executed on any assets or property of

Defendants, and/or their past, present or future . . . agents . . . and assigns, other than Illinois Union." Stip. Facts Ex. 7 ¶ 5. However, US Coachways agreed to pay $50,000 to fund notice to the class. In exchange for US Coachways's assignment of the Policy rights to Bull and the class, Bull and the class agreed to seek payment of the Judgment only from Illinois Union and not US Coachways. Finally, the Agreement provided that it did not release US Coachways from the Judgment. *Id.* ¶ 11.

**B. The Insurance Policy**

Under the Policy, Illinois Union had agreed to pay, on behalf of US Coachways, "all sums in excess of the [$25,000] Retention" that US Coachways was "legally obligated to pay as Damages and Claims Expenses . . . by reason of a Wrongful Act." Stipulated Facts Ex. 1 (Policy) ¶ I.A.

Several Policy definitions are relevant. "Wrongful Act" meant, in pertinent part, "any actual or alleged . . . Personal Injury Offense committed by [US Coachways] . . . in the performance of . . . Professional Services." *Id.* ¶ II.T. "Professional Services" meant "[s]olely in the performance of professional services as a bus charter broker for others for a fee," *id.* at 1 (Decl. 7); *see also id.* ¶ II.P (defining "Professional Services" by reference to Decl. 7).

"Professional Services" also included "Travel Agency Operations," defined as "services necessary or incidental to the conduct of travel agency business including the procurement or attempted procurement for a fee or commission of travel, lodging, or

4

guided tour accommodations[.]" *Id.* at 23 (PDF pagination) ¶ 2.

Finally, "Damages" meant "any compensatory amount which the Insured becomes legally obligated to pay on account of a covered Claim, including judgments, any award of prejudgment and post-judgment interest on that part of any judgment paid under this Policy, awards and settlements." *Id.* ¶ II.F. "Damages" did not include "any amount for which the Insured is not financially liable or legally obligated to pay." *Id.* ¶ II.F.1.

## II

**A. Bull's Motion to Dismiss for Lack of Personal Jurisdiction**

Bull's motion to dismiss for lack of personal jurisdiction was submitted to the Court before the Northern District of Illinois transferred his action for breach of the Policy to this Court. As a consequence of the transfer, the issue has become moot. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 592 (2d Cir. 2005) (denying motion to intervene as moot where consolidated claims brought intervenor's claims before the court).

Bull nonetheless argues that mootness is not apt because he is now designated as a plaintiff rather than a defendant; consequently, he asks that Illinois Union's declaratory judgment complaint be refiled as counterclaims to his complaint.

Bull's concern with labels is meritless. Both parties have moved for summary judgment on coverage, and neither party has demanded a jury trial. The Court will not be influenced by the parties' designations as plaintiff or defendant.

5

**B. Motions for Partial Summary Judgments**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

The parties agree, for purpose of the present motions, that New York law applies. Construction of an insurance contract is generally a matter of law to be determined by the court. *Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 308, 316 (N.Y. 1996). When a motion for summary judgment turns on interpretation of the language in a contract, the court "accord[s] that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir.1990)).

Where contract language is unambiguous, the court may "construe it as a matter of law and grant summary judgment accordingly." *Id.* "Whether a contract is ambiguous is a threshold question of law to be determined by the court." *Duane Reade,*

*Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005). "If the terms of a policy are ambiguous, . . . any ambiguity must be construed in favor of the insured and against the insurer." *White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007).

**1. Coverage**

The Policy unambiguously covers the TCPA violations at issue under both the "bus charter broker" provision and the "Travel Agency Operations" provision. The Court considers each in turn.

The Policy and the record shed no light on the precise nature of US Coachways's services as a bus charter broker, but dictionaries provide some guidance. A "charter" is "a travel arrangement in which transportation (such as a bus or plane) is hired by and for a specific group of people." *Webster's Third New International Dictionary, Unabridged* (2018). A "broker" is "[o]ne who acts as a middleman in bargains." *Oxford English Dictionary* (Oxford U. Press, 2018).

A federal statute is also instructive. The ICC Termination Act of 1995 governs the shipping and transportation industries and requires motor carriers and some types of brokers to register with the U.S. Department of Transportation. It defines "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out *by solicitation, advertisement, or otherwise* as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (emphasis added). Although the

ICC Termination Act is not at issue in this case, it is a significant source of information regarding the "terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000). Taking these sources together, the Court has no difficulty concluding that the services provided by a bus charter broker include advertising bus transportation to specific groups of people.

That is exactly what US Coachways was doing when it committed the alleged TCPA violations at issue in the Underlying Class Action. According to the Amended Class Action Complaint, one of the text messages read, "Happy Holidays from US Coachways: For holiday party rentals of buses, limos & mini-buses call 800-359-5991." Stip. Facts Ex. 2 ¶ 21. Another message followed, promoting "great winter deals" and encouraging recipients to "book early." *Id.* ¶ 23. A third promoted "great winter deals as low as $399" and invited recipients to "[b]ook now." *Id.* ¶ 24. A final message read, "US Coachways Bus Rentals: Book before we're sold out! Availability is limited." *Id.* ¶ 25. These messages are quite clearly offering bus transportation and travel accommodations to their recipients.

Even if the TCPA violations were not covered as "charter bus broker" services, they are covered under the "Travel Agency Operations" provision. The advertisements were "necessary or incidental to the conduct of travel agency business" as "attempted procurement for a fee or commission of travel, lodging, or guided tour

8

accommodations."

Illinois Union contends that the alleged TCPA violations occurred when US Coachways was advertising not for others but for itself and that US Coachways was therefore not performing services "for others" and "for a fee." Illinois Union's interpretation would allow it to arbitrarily separate activities that are essential parts of US Coachways's services and withhold coverage if those activities were not specifically directed and paid for by someone else. That interpretation is at odds with how the modern business world operates. Service providers in virtually every industry offer services in bundles, saving consumers and other business partners the cost of mastering the nuances of a new industry each time they want to accomplish some new purpose, such as transport a group from one place to another. For US Coachways, advertising bus rentals is an essential part of the bundle of services it provides as a bus charter broker and its "travel agency business." As the Policy is written, it is sufficient for coverage that US Coachways was using those advertisements to bring its services as a "bus charter broker" and a "travel agency business" to others—members of the general public who it saw as potential customers.

It is also irrelevant that US Coachways apparently did not collect a fee for the advertising itself. The advertisements mentioned "deals," "rentals," and a specific price, demonstrating that the *services* were being offered for a fee. It makes no difference that US Coachways would not collect the fee until the proposed transaction was complete.

The services were still offered "for a fee."

Illinois Union argues, without citing any authority or relying on any Policy language, that marketing activities are not covered because they are not "unique to a bus charter broker or a travel agency." Dkt. 26 at 3. However, the Policy does not require that the activities be "unique" to such functions. By the plain language of the Policy, it is sufficient for coverage that US Coachways performed the activities as an essential part of its business.[2]

The Court therefore holds that the Policy covers the TCPA violations at issue in the Underlying Class Action.

**2. Exclusions and Limitations**

Illinois Union argues that, even if the Policy covers the Underlying Class Action, liability is limited to the $50,000 that US Coachways agreed to pay under the Settlement Agreement. It reasons that, because Bull agreed not to execute the Judgment against US Coachways, any additional amount is excluded from the Policy's definition of "Damages" as "amount[s] for which the Insured is not financially liable or legally obligated to pay."

---

[2] Illinois Union relies on *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 700 (N.Y. 1980), for the related proposition that an "errors and omissions" policy is meant only to cover "mistakes inherent in the practice of that particular profession or business." Dkt. 26 at 3 (quoting *Schiff Assocs.*). However, that case does not require covered activities to be "unique" to a particular profession, and the activities at issue there were less essential to the insured's business than the advertising at issue here. In any event, as discussed above, the advertising here was "inherent in the practice" of US Coachways's services as a "bus charter broker" and its "travel agency business."

10

The New York Court of Appeals has not addressed whether an insured's legal obligation to pay survives an assignment to a third party in exchange for a covenant not to execute against the insured. This Court therefore must predict how the New York Court of Appeals would rule by considering the rulings of other state courts and those of intermediate New York courts. *See New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 210 (2d Cir. 2006).

As another judge in this court recently observed, intermediate New York courts have held that an insured remains "legally obligated to pay" despite an assignment of indemnification rights and a covenant not to execute a judgment, so long as the settlement agreement does not include a release of liability. *See Intelligent Digital Sys., LLC v. Beazley Ins. Co., Inc.*, 207 F. Supp. 3d 242, 246 (E.D.N.Y. 2016) (citing *Home Depot U.S.A., Inc. v. Nat'l Fire & Marine Ins. Co.*, 866 N.Y.S.2d 255, 258 (2d Dep't 2008); *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 839 N.Y.S.2d 91, 94 (2d Dep't 2007)). Illinois Union cites no contrary New York state court authority.

Moreover, a majority of courts in other jurisdictions holds that coverage exists in such a scenario. *See Intelligent Digital Sys.*, 207 F. Supp. 3d at 246 (collecting cases) ("New York courts and a majority of courts in other jurisdictions have held that an insurance company remains 'legally obligated' to pay a claim under a policy even where, as here, the claim was assigned to a third party, and the third party agreed not to execute a judgment against the insured's personal assets."); *see also* Justin A. Harris, *Judicial*

11

*Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*, 47 Drake L. Rev. 853, 857–58 & n.22 (1999) (acknowledging majority rule). Given that New York intermediate courts are in agreement with the majority rule, the Court concludes that the New York Court of Appeals would find that an insured remains "legally obligated to pay" despite an assignment of indemnification rights to a third party and the third party's covenant not to execute against the insured.

Here, application of that rule requires coverage for Bull's claim. US Coachways assigned its rights under the Policy to Bull, and Bull agreed not to execute the Judgment against US Coachways. Furthermore, the Settlement Agreement explicitly provided that Bull was not releasing US Coachways from liability. US Coachways therefore remained "legally obligated to pay" the Judgment, and it falls squarely within the Policy's definition of covered "Damages."

Illinois Union also argues that, notwithstanding a legal obligation to pay, the Policy definition of "Damages" independently excludes any amount that US Coachways is not "financially liable" to pay. The Court disagrees.

Policy exclusions are "not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984). "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject

to no other reasonable interpretation, and applies in the particular case." *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 512 (N.Y. 1993).

Here, again, the Policy excludes from the definition of covered "Damages" "any amount for which the Insured is not financially liable or legally obligated to pay." Policy ¶ II.F.1. Illinois Union interprets that language to mean that damages are excluded if the insured is either (1) not financially liable for them or (2) not legally obligated to pay them. In other words, by Illinois Union's reading, the exclusion imposes two requirements for an amount to be covered: the insured must be both "financially liable" and "legally obligated" to pay. However, the exclusion does not state in "clear and unmistakable language" that both criteria must be met. It could have done so simply by using "and" instead of "or." The altered version would thus exclude from the definition of "Damages" "any amount for which the Insured is not financially liable *and* legally obligated to pay." The Policy instead uses "or," suggesting that only one of the two criteria must be met.

The Court therefore rejects Illinois Union's proposed interpretation and concludes that either financial liability or legal obligation is sufficient to avoid the exclusion. That reading comports with the Court's obligation to construe the exclusion strictly and narrowly. *See Seaboard Sur. Co.*, 476 N.E.2d at 275. And because, as discussed above,

US Coachways has a legal obligation to pay, the exclusion does not apply.³

## III

For the foregoing reasons, Bull's motion for partial summary judgment is GRANTED, and Illinois Union's motion for partial summary judgment is DENIED. Bull's motion to dismiss Illinois Union's complaint is DENIED.

**SO ORDERED**

                                    /S/ Frederic Block
                                    FREDERIC BLOCK
                                    Senior United States District Judge

Brooklyn, New York
March 8, 2018

---

³ Illinois Union's reliance on *U.S. Bank Nat. Ass'n v. Fed. Ins. Co.*, 664 F.3d 693, 698-700 (8th Cir. 2011), is misplaced. Under Missouri law, the court there applied a policy provision that independently excluded amounts "for which the Insured Person is absolved from payment by reason of any . . . agreement." 664 F.3d at 698. Here, as discussed above, lack of financial liability alone is not sufficient to trigger the exclusion; it must be accompanied by a lack of legal obligation to pay.